UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Plaintiff,<br><br>v.<br><br>ARM OR ALLY, LLC; BLACKHAWK MANUFACTURING GROUP, INC., A/K/A 80 PERCENT ARMS, INC. OR 80 PERCENT ARMS; SALVO TECHNOLOGIES, INC., A/K/A 80P BUILDER OR 80P FREEDOM CO.; BROWNELLS, INC., A/K/A BROWNELLS OR BOB BROWNELL'S; GS PERFORMANCE, LLC, A/K/A GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM TACTICAL; PRIMARY ARMS, LLC; RAINIER ARMS, LLC; AND ROCK SLIDE USA, LLC,<br><br>Defendants. | Case No.   1:22-cv-06124<br><br><br><br><br><br><br><br>**NOTICE OF REMOVAL** |

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK:**

**PLEASE TAKE NOTICE** that Defendants Salvo Technologies, Inc., a/k/a 80P Builder or 80P Freedom Co. ("Salvo"); Brownells, Inc., a/k/a Brownells or Bob Brownell's ("Brownells"); Indie Guns, LLC ("Indie Guns"); Primary Arms, LLC ("Primary Arms"); and Rock Slide USA, LLC ("Rock Slide") (collectively, "Removing Defendants") hereby file this Notice of Removal of the above-captioned action from the Supreme Court of the State of New York, County of New York, Index No. 451972/2022, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, on the basis of the facts set forth below:

1.      On June 29, 2022, Plaintiff New York Attorney General Letitia James filed a Summons and Complaint in the Supreme Court of the State of New York, County of New York, Commercial Division, Index No. 451972/2022. A copy of the Summons and Complaint is attached hereto as Exhibit A.

2.      On July 11, 2022, Justice Joel Cohen, to whom the case had been assigned, *sua sponte* determined that the case did not fall within the jurisdiction of the Commercial Division and ordered that the case be transferred to a non-commercial part of the court. A copy of the Reassignment Order is attached hereto as Exhibit B. The case was reassigned to Judge Lucy Billings.

3.      Plaintiff served the Summons and Complaint on Defendants GS Performance, LLC, a/k/a Glockstore or GSPC, Indie Guns, and Blackhawk Manufacturing Group, Inc., a/k/a 80 Percent Arms, Inc. or 80 Percent Arms on July 6, 2022.

4.      Plaintiff served the Summons and Complaint on Defendant Primary Arms on July 7, 2022.

5.      Plaintiff served the Summons and Complaint on Defendant Rainier Arms, LLC on July 8, 2022.

6.      On July 15, 2022, Defendant Salvo consented to service of process on its counsel via electronic mail. However, Plaintiff has not yet formally served the Summons and Complaint on Salvo in this manner.

7.      On information and belief, Defendants Arm or Ally, LLC, Brownells, KM Tactical, and Rock Slide have yet to be served.

8.      This Notice is timely filed under 28 U.S.C. § 1446(b).

9. By and through the undersigned counsel, as well as through the consent forms attached hereto as Exhibits E through I, all Defendants consent to removal through counsel.

10. On July 13, 2022, Plaintiff filed a motion for a temporary restraining order and preliminary injunction for an order, in relevant part, ordering some of the Defendants to immediately cease selling, shipping, distributing, or otherwise supplying unfinished frames or receivers to any person or entity with a current New York State address. Copies of the motion, memorandum of law in support, and accompanying affidavits and exhibits are attached hereto as Exhibit C.

11. On July 14, 2022, Plaintiff filed an Amended Complaint. A copy of the Amended Complaint is attached hereto as Exhibit D ("Am. Compl.").

12. This case involves claims related to Defendants' alleged advertising, manufacturing, selling, and shipping of unfinished frames and receivers into New York State. Am. Compl. ¶¶ 1–10, 465–538. Plaintiff claims that Defendants' alleged "illegal business practices" violated state and federal law. *Id.* ¶ 4. Plaintiff specifically claims that Defendants violated New York Executive Law § 63(12) (First, Second, Third, Sixth, Seventh, Eighth, and Eleventh Causes of Action), New York General Business Law § 898-b(1) (Fourth Cause of Action), New York General Business Law § 898-b(2) (Fifth Cause of Action), New York General Business Law § 349 (Ninth Cause of Action), and New York General Business Law § 350 (Tenth Cause of Action),

13. This civil action is within this Court's original jurisdiction pursuant to 28 U.S.C. § 1331 because it raises a substantial federal question.

14. This Court has supplemental jurisdiction over Plaintiff's claims that do not raise a substantial federal question pursuant to 28 U.S.C. § 1367.

**Federal Question Jurisdiction**

15. This case is removable to federal court because Plaintiff's claims raise a substantial federal question and, therefore, provide original federal question jurisdiction under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1441(a).

16. This Court has jurisdiction over claims that "arise[ ] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As a general matter, such jurisdiction extends "only [to] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983).

17. The well-pleaded complaint rule has a "corollary . . . —the 'artful pleading' rule— pursuant to which plaintiff cannot avoid removal by declining to plead 'necessary federal questions.'" *Romano v. Kazacos*, 609 F.3d 512, 518–19 (2d Cir. 2010). One application of this rule is the "substantial federal question doctrine," which recognizes that, even where a complaint does not plead a federal claim, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). As the Supreme Court has explained, the substantial federal question doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

18. The Supreme Court has explained that under the substantial federal question doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily

raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Removal of this case to federal court is proper under this test.

19. Although framed in the language of New York statutory law, Plaintiff's Amended Complaint raises a substantial federal question. *See, e.g.*, *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) ("Courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum." (internal quotation marks omitted)).

20. "A single claim over which federal-question jurisdiction exists is sufficient to allow removal." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005). Accordingly, Defendants need only demonstrate that *one* of New York's claims grants this Court subject-matter jurisdiction properly to remove the case. In this case, Defendants have four alternative independent grounds for removal.

21. The first basis for removal is that Plaintiff's Fourth Cause of Action, for creation of a public nuisance by a gun industry member under New York General Business Law § 898-b(1), Am. Compl. ¶¶ 488–495, raises a substantial question of federal law that provides this Court with subject-matter jurisdiction under *Grable* and *Gunn*. Specifically, in order to prevail on its Fourth Cause of Action and obtain the relief it seeks tied specifically to that claim—an order directing Defendants "jointly and severally, to endow an abatement fund with sufficient capital to eliminate the public nuisance they are responsible for creating, exacerbating, and/or perpetuating, pursuant to New York General Business Law § 898-b," *id.* Prayer for Relief ¶ 3—Plaintiff must demonstrate that the products that Defendants sold, manufactured, and marketed are firearms under federal law.

22.     Whether Defendants' products at issue in this case are firearms under federal law is necessarily raised by the Fourth Cause of Action.

23.     New York General Business Law § 898-b requires a tiered analysis to establish liability. The provision applies to "gun industry member[s]" who, among other things, sell a "qualified product." N.Y. Gen. Bus. L. § 898-b(1). A "qualified product" is defined as "hav[ing] the same meaning as defined in 15 U.S.C. section 7903(4)." *Id.* § 898-a(6). That section, in turn, provides that a "qualified product" "means a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18), . . . or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4). Finally, 18 U.S.C. § 921(a)(3)(A)–(B) provides that "[t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) the frame of any such weapon." Consequently, in order to establish that Defendants' conduct falls under New York General Business Law § 898-b(1), prevail on the claim, and obtain the abatement relief specifically tied to that claim, Plaintiff must demonstrate that Defendants' products at issue in this case were "firearms" under federal law. The federal question is thus "necessarily raised" by Plaintiff's claim.

24.     Whether Defendants' products at issue in this case are firearms under federal law is actually disputed. Plaintiff's interpretation of the word "firearm" under the Gun Control Act is contrary to the longstanding position of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").[1] Removing Defendants will vigorously dispute that the products at issue in this case qualify as firearms under federal law.

---

[1] *See, e.g.*, *Are "80%" or "unfinished" receivers illegal?*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES (Apr. 6, 2020), https://bit.ly/2nlfssN (explaining that "ATF has long held that items such as receiver blanks, 'castings' or 'machined bodies' in which the fire-

25. Whether Defendants' products at issue in this case are firearms under federal law is a "substantial" question of federal law. The Supreme Court has explained that substantiality does not turn on whether the federal issue is significant to the particular parties in the immediate suit, but "looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Whether unfinished frames and receivers are firearms under federal law is undoubtedly important to the federal system as a whole. If Plaintiff prevails on its claim and a court agrees that unfinished frames and receivers are "firearms" under federal law, the necessary implication will be that ATF's longstanding position to the contrary was wrong. That ruling will have sweeping consequences for this important federal agency's ability to interpret the Gun Control Act and its regulatory flexibility. Furthermore, if Defendants' unfinished frames and receivers have always qualified as firearms under federal law, the upshot will be that every one of the tens of thousands of Americans who have purchased such products may have unwittingly violated federal law. *See, e.g.*, 26 U.S.C. § 5861(c) (making it unlawful "for any person . . . to receive or possess a firearm made in violation of the provisions of this chapter").

26. Whether Defendants' products at issue in this case are firearms under federal law is capable of resolution in this Court without disrupting the federal-state balance approved by Congress for many of the same reasons articulated above. The proper scope of the term "firearm" in the Gun Control Act will have sweeping consequences for the regulatory flexibility of ATF, the

---

control cavity area is completely solid and un-machined have not reached the 'stage of manufacture' which would result in the classification of a firearm according to the GCA"); ATF Ruling 2015-1, at 1, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES (Jan. 2, 2015), https://bit.ly/3PheBo4 (explaining that unfinished frames and receivers "have not yet reached a stage of manufacture in which they are classified as 'firearm frames or receivers' under the Gun Control Act of 1968 (GCA) and implementing regulations"); Am. Compl. ¶ 85 (alleging that the ATF recently issued a "new regulation" "clarifying" the definition of "firearm" under the Gun Control Act, "broaden[ing]" the definition "specifically to combat the spread of illicit . . . guns, such as the ones made from the products Defendants have sold into New York").

enforcement powers of federal prosecutors, and the potential criminal liability of thousands of individuals who possess unfinished frames or receivers. *See, e.g.*, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, 24656 (Apr. 26, 2022). The federal courts—not the New York state courts—are the proper forum to determine the question that will have these consequential effects on the federal regime.

27.   Second, removal of this case to federal court is proper under the *Grable-Gunn* test for the additional reason that the same substantial, disputed federal question that is capable of resolution in this Court without disrupting the federal-state balance approved by Congress is also necessarily raised by Plaintiff's claim that certain transactions that occurred prior to the effective dates of the state laws at issue in this case were unlawful and Plaintiff's demand for disgorgement of the profits from those transactions.

28.   Plaintiff seeks disgorgement of "all revenues [Defendants] wrongfully obtained as a result of [their] fraudulent and/or illegal practices in violation of" Executive Law § 63(12). Am. Compl. Prayer for Relief ¶ 2(b).

29.   In Plaintiff's First Cause of Action, Plaintiff alleges that Defendants' selling or shipping of unfinished frames or receivers into New York State and into New York City was illegal under New York State law (New York Penal Law §§ 265.60, 265.61), New York City local laws (N.Y. City Admin. Code § 10-314), and federal law (18 U.S.C. § 921(a)(3)). Am. Compl. ¶¶ 465–470.

30.   The First Cause of Action incorporates by reference each allegation in the preceding paragraphs of the Amended Complaint. *Id.* ¶ 465. Those preceding paragraphs include allegations that certain Defendants sold the products at issue in the case to New York State

residents in 2017, *see, e.g.*, *id.* ¶¶ 222, 224, 299, in 2018, *see, e.g.*, *id.* ¶¶ 223, 224, 257, 321, 409, and in 2019, *see, e.g.*, *id.* ¶¶ 272, 321, 364.

31.     New York Penal Law § 265.60 became effective on April 26, 2022. *See* Jose Webster Untraceable Firearms Act § 8, S.B. S14A, 2021 Reg. Sess. (N.Y. 2021) ("This Act shall take effect on the one hundred eightieth day after it shall have become a law."); Senate Bill S14A, N.Y. STATE SENATE, https://bit.ly/3zdHcW2 (bill signed by Governor on October 28, 2021).

32.     New York Penal Law § 265.61 became effective on April 26, 2022. *See* Jose Webster Untraceable Firearms Act § 8, S.B. S14A, 2021 Reg. Sess. (N.Y. 2021) ("This Act shall take effect on the one hundred eightieth day after it shall have become a law."); Senate Bill S14A, N.Y. STATE SENATE, https://bit.ly/3zdHcW2 (bill signed by Governor on October 28, 2021).

33.     New York City Administrative Code § 10-314 became effective on February 23, 2020. Int. No. 1553-A § 3, N.Y. CITY COUNCIL, https://on.nyc.gov/3yDBhIc ("This local law takes effect 120 days after it becomes law . . . ."); *id.* (stating that the local law's enactment date was October 26, 2019).

34.     Consequently, the only way that New York will be able to prevail on its First Cause of Action for the sales that occurred in 2017, 2018, and 2019, and to obtain disgorgement from Defendants of the profits of those sales, will be to demonstrate that Defendants violated *federal* law when they engaged in those transactions. In light of the effective dates of the relevant state and city laws, the Amended Complaint can only be reasonably understood to allege that the 2017, 2018, and 2019 transactions were unlawful exclusively under federal law.

35.     Accordingly, the issue of whether Defendants' products are firearms under federal law and whether Defendants' transactions in 2017, 2018, and 2019 violated federal law is

necessarily raised by Plaintiff's First Cause of Action, and this case is properly removable to this Court.

36.     Third, removal of this case to federal court is proper under the *Grable-Gunn* test for the further additional reason that the same substantial, disputed federal question that is capable of resolution in this Court without disrupting the federal-state balance approved by Congress is also necessarily raised by Plaintiff's claim that Defendants have "[m]isrepresent[ed], directly or by implication, in their advertising and elsewhere, the legal requirements applicable to their sales of guns, including that only completed guns need to be sold by a dealer with an FFL, that purchasers of the guns sold by Defendants are not subject to background checks or waiting periods and that the guns sold need not be serialized or recorded," Am. Compl. ¶¶ 504(c), 508(c), 516, 523, 526(c), and Plaintiff's seeking public corrective statements for those allegedly "false and misleading public statements and omissions," *id.* Prayer for Relief ¶ 1(d).

37.     Plaintiff seeks an order, pursuant to New York Executive Law § 63(12), enjoining Defendants "[t]o issue public corrective statements regarding their false and misleading public statements and omissions." Am. Compl. Prayer for Relief ¶ 1(d).

38.     In Plaintiff's Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, Plaintiff alleges that Defendants "[m]isrepresent[ed], directly or by implication, in their advertising and elsewhere, the legal requirements applicable to their sales of guns, including that only completed guns need to be sold by a dealer with an FFL, that purchasers of the guns sold by Defendants are not subject to background checks or waiting periods and that the guns sold need not be serialized or recorded." *Id.* ¶¶ 504(c), 508(c), 516, 523, 526(c).

39.     Each of these Causes of Action incorporates by reference each allegation in the preceding paragraphs of the Amended Complaint. *Id.* ¶¶ 501, 505, 510, 518, 524. Those preceding

10

paragraphs include allegations that federal law requires that "any firearm must be sold through a Federal Firearms Licensee," *id.* ¶ 40, that in order to sell a firearm to a customer, a Federal Firearms Licensee must perform a background check on that customer, *see id.* ¶ 41, and that firearms must be stamped with a serial number, *id.* ¶ 42.

40. The Amended Complaint also repeatedly alleges that Defendants advertised unfinished frames and receivers "as a means to get around *federal* registration and background check requirements." *Id.* ¶ 148 (emphasis added); *see also, e.g., id.* ¶¶ 211, 294, 394.

41. The only way that New York will be able to prevail on the claim that certain of Defendants' alleged representations, either directly or by implication, misrepresented the federal legal requirements applicable to their sale of the products at issue in this case, thereby violating various New York state laws, and to obtain an order enjoining Defendants to issue public corrective statements regarding the federal legal requirements applicable to said products, will be to demonstrate that Defendants' products qualify as firearms under federal law. Otherwise, Defendants' alleged representations regarding the federal legal requirements applicable to the products at issue in this case would not be misrepresentations.

42. Accordingly, the issue of whether Defendants' products are firearms under federal law is necessarily raised by Plaintiff's Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, and this case is properly removable to this Court.

43. Fourth, Plaintiff's Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action are all based on the allegation that Defendants falsely represented "that it is legal to sell and possess" the products that are the subject of this lawsuit. Am. Compl. ¶¶ 504, 508, 514, 521, 526. One element that Plaintiff must prove to prevail on any of these causes of action is that Defendants'

alleged statements about the lawfulness of sale and possession of these products were false. *See, e.g.*, *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 314–15 (1st Dep't 2003).

44. The Amended Complaint alleges that the products that are the subject of this lawsuit are not legal to sell and possess under federal statutes, New York State statutes, and a New York City ordinance. However, the United States Constitution is the supreme law of the land and preempts any contrary federal statute, state statute, or local ordinance. Therefore, if the Second Amendment to the United States Constitution establishes a right to sell and possess these products, Defendants' alleged statements would not be false. Accordingly, to prevail on a necessary element of Plaintiff's Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, Plaintiff must establish that the Second Amendment confers no such right.

45. To be sure, federal defenses are not necessarily raised on the face of a well-pleaded complaint and so cannot be the basis for removal under the *Grable-Gunn* test. *See Louisville & Nashville R. Co. v. United States*, 282 U.S. 740 (1931). But by suing Defendants for allegedly making *misrepresentations* about the lawfulness of sale and possession of unfinished frames and receivers, Plaintiff has made the ultimate status of these products under the Second Amendment an issue that it must prevail on as part of its affirmative case. The Second Amendment issue is therefore necessarily raised by Plaintiff's Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action.

46. Whether the Second Amendment protects a right to possess and sell unserialized, unfinished frames and receivers is actually disputed. Based upon recent Supreme Court precedent, Removing Defendants will argue in this case that the Second Amendment confers such rights. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) (making history and tradition the touchstone for Second Amendment analysis and overturning contrary Second Circuit precedent);

Joseph Greenlee, *The American Tradition of Self-Made Arms*, 54 ST MARY'S L.J. (2022) (forthcoming), https://bit.ly/3uXZx6S (documenting history and tradition demonstrating "that Americans have long enjoyed and depended on the unregulated right to build arms since the colonial days").

47.  The status of unfinished frames and receivers under the Second Amendment is a substantial issue of federal law. This issue has important implications for the constitutionality of federal statutes as well as ATF regulations and guidance. Furthermore, adjudicating this important Second Amendment issue would not disrupt any federal-state balance approved by Congress. Indeed, the federal courts routinely adjudicate such Second Amendment issues, and closely related issues are already before the Second Circuit in a pending appeal. *See Nat'l Shooting Sports Found., Inc. v. James*, No. 22-1374 (2d. Cir.).

## Conclusion

48.  This action may be removed by Defendants pursuant to 28 U.S.C. § 1441. Removal to the United States District Court for the Southern District of New York is proper because the Southern District of New York embraces New York County.

49.  Promptly upon the filing of this Notice of Removal, Removing Defendants shall file a copy with the Clerk of the New York County Supreme Court and serve a copy upon all parties.

**WHEREFORE**, Removing Defendants hereby remove this Action from New York County Supreme Court to this Court.

Dated: July 19, 2022  
   New York, New York

Respectfully Submitted,

/s/ David H. Thompson  
**COOPER & KIRK PLLC**  
David H. Thompson, Esq.*  
Brian W. Barnes, Esq.*  
1523 New Hampshire Ave., NW  
Washington, DC 20036  
Phone: (202) 220-9600  
* Application for leave to appear *pro hac vice* forthcoming

*Attorneys for Defendants Salvo Technologies, Inc., a/k/a 80P Builder or 80P Freedom Co.; Brownells, Inc., a/k/a Brownells or Bob Brownell's; Primary Arms, LLC; and Rock Slide USA, LLC*

/s/ Christian W. Waugh  
**CHRISTIAN W. WAUGH, Esq.***  
Florida Bar No. 71093  
**WAUGH GRANT, PLLC**  
201 E. Pine Street, Ste. 315  
Orlando, FL 32801  
Telephone: 321-800-6008  
Fax:   844-206-0245  
Email: cwaugh@waughgrant.com  
Email: mnorberg@waughgrant.com  
Email: rwood@waughgrant.com  
* *Pro Hac Vice Admission Forthcoming*

*Attorney for Defendant Indie Guns, LLC*