# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

|  |  |
|---|---|
| Plaintiff, | Index No. _____ |
| -against- | **SUMMONS** |

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

Date of Filing: June 29, 2022

Defendants.

-------------------------------------------------------------------X

**TO**:   ARM OR ALLY, LLC
c/o James F. Tobin
6416 Providence Farm Lane Apt. 1319
Charlotte, NC 28277

**YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your
answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case
of your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Plaintiff designates New York County as the place of trial. The basis of venue is that this
action is brought by a public authority with primary offices located in New York County and
because a substantial part of the events giving rise to the claim—including Defendant's shipments

/

/

/

/

of unfinished frames and receivers—occurred within New York County.

Dated: New York, New York
June 29, 2022

LETITIA JAMES
Attorney General of the State of New York
Attorney for Plaintiff

By:

James M. Thompson
Special Counsel
28 Liberty Street
New York, New York 10005
(212) 416-6556
james.thompson@ag.ny.gov

*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
--------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

                    Plaintiff,                Index No. _____

      -against-                  **SUMMONS**

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;      Date of Filing: June 29, 2022
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

                   Defendants.
--------------------------------------------------------------------X

**TO**:    BLACKHAWK MANUFACTURING GROUP, INC.,
       A/K/A 80 PERCENT ARMS, INC. OR 80 PERCENT ARMS
       c/o 1505 Corporation 1800
       California Corporate Agents, Inc.
       16830 Ventura Blvd., Suite #360
       Encino, CA 91436

     **YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

     Plaintiff designates New York County as the place of trial. The basis of venue is that this action is brought by a public authority with primary offices located in New York County and because a substantial part of the events giving rise to the claim—including Defendant's shipments

/

/

of unfinished frames and receivers—occurred within New York County.

Dated: New York, New York
      June 29, 2022

                         LETITIA JAMES
                         Attorney General of the State of New York
                         Attorney for Plaintiff

                         By:

                         James M. Thompson
                         Special Counsel
                         28 Liberty Street
                         New York, New York 10005
                         (212) 416-6556
                         james.thompson@ag.ny.gov

*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

Case 1:22-cv-06124  Document 1-1  Filed 07/19/22  Page 6 of 115

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

        Plaintiff,        Index No. _____

    -against-         **SUMMONS**

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;   Date of Filing: June 29, 2022
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

        Defendants.
------------------------------------------------------------------X

**TO**:  SALVO TECHNOLOGIES, INC.,
    A/K/A 80P BUILDER OR 80P FREEDOM CO.
    c/o Heather Dunn
    8192 Hopewell Court
    Seminole, FL 33777

    **YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    Plaintiff designates New York County as the place of trial. The basis of venue is that this action is brought by a public authority with primary offices located in New York County and because a substantial part of the events giving rise to the claim—including Defendant's shipments

/

/

/

of unfinished frames and receivers—occurred within New York County.

Dated: New York, New York
        June 29, 2022

                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        Attorney for Plaintiff

                                        By:

                                        James M. Thompson
                                        Special Counsel
                                        28 Liberty Street
                                        New York, New York 10005
                                        (212) 416-6556
                                        james.thompson@ag.ny.gov

*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

                           Plaintiff,                   Index No. _____

                -against-                     **SUMMONS**

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;      Date of Filing: June 29, 2022
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

                        Defendants.
-------------------------------------------------------------------X

**TO:**    BROWNELLS, INC.,
        A/K/A BROWNELLS OR BOB BROWNELL'S
        c/o Corporation Service Company
        505 5th Avenue, Suite 729
        Des Moines, IA, 50309

      **YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your
answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case
of your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

      Plaintiff designates New York County as the place of trial. The basis of venue is that this
action is brought by a public authority with primary offices located in New York County and
because a substantial part of the events giving rise to the claim—including Defendant's shipments
/

/

/

Case 1:22-cv-06124 Document 1-1 Filed 07/19/22 Page 9 of 115

of unfinished frames and receivers—occurred within New York County.

Dated: New York, New York
June 29, 2022

LETITIA JAMES
Attorney General of the State of New York
Attorney for Plaintiff

By:

James M. Thompson
Special Counsel
28 Liberty Street
New York, New York 10005
(212) 416-6556
james.thompson@ag.ny.gov

*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

|                                    |                           |
|------------------------------------|---------------------------|
| Plaintiff,                         | Index No. _____     |
| -against-                          | **SUMMONS**               |
| ARM OR ALLY, LLC; BLACKHAWK        |                           |
| MANUFACTURING GROUP, INC., A/K/A 80|                           |
| PERCENT ARMS, INC. OR 80 PERCENT ARMS; | Date of Filing: June 29, 2022 |
| SALVO TECHNOLOGIES, INC., A/K/A 80P|                           |

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

Defendants.
-------------------------------------------------------------------X

**TO**:  GS PERFORMANCE, LLC,
    A/K/A GLOCKSTORE OR GSPC
    c/o Leonard L. Magill
    1930 Air Lane Dr.
    Nashville, TN 37210-3810

**YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Plaintiff designates New York County as the place of trial. The basis of venue is that this action is brought by a public authority with primary offices located in New York County and because a substantial part of the events giving rise to the claim—including Defendant's

/

/

/

shipments of unfinished frames and receivers—occurred within New York County.

Dated: New York, New York
      June 29, 2022

                    LETITIA JAMES
                    Attorney General of the State of New York
                    Attorney for Plaintiff

                    By:

                    James M. Thompson
                    Special Counsel
                    28 Liberty Street
                    New York, New York 10005
                    (212) 416-6556
                    james.thompson@ag.ny.gov

*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

Case 1:22-cv-06124  Document 1-1  Filed 07/19/22  Page 12 of 115

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

|  |  |
|---|---|
| Plaintiff, | Index No. _____ |
| -against- | **SUMMONS** |

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;        Date of Filing: June 29, 2022
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

Defendants.

------------------------------------------------------------------X


**TO**:     INDIE GUNS, LLC
            c/o Lawrence Destefano
            3000 Huntington St.
            Orlando, FL 32803


    **YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your
answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case
of your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

    Plaintiff designates New York County as the place of trial. The basis of venue is that this
action is brought by a public authority with primary offices located in New York County and
because a substantial part of the events giving rise to the claim—including Defendant's shipments

/

/

/

/

of unfinished frames and receivers—occurred within New York County.


Dated: New York, New York
          June 29, 2022

                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        Attorney for Plaintiff

                                        By:

                                        James M. Thompson
                                        Special Counsel
                                        28 Liberty Street
                                        New York, New York 10005
                                        (212) 416-6556
                                        james.thompson@ag.ny.gov


*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

|  |  |
|---|---|
| Plaintiff, | Index No. _____ |
| -against- | **SUMMONS** |

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;      Date of Filing: June 29, 2022
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

                          Defendants.
-------------------------------------------------------------------X


**TO:**   KM TACTICAL
         c/o Kyle Wayne Murphy
         19009 E 31st Terr. Ct. S.
         Independence, MO 64057


   **YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

   Plaintiff designates New York County as the place of trial. The basis of venue is that this action is brought by a public authority with primary offices located in New York County and because a substantial part of the events giving rise to the claim—including Defendant's

/

/

/

/

shipments of unfinished frames and receivers—occurred within New York County.


Dated:  New York, New York
        June 29, 2022

                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        Attorney for Plaintiff

                                        By:

                                        James M. Thompson
                                        Special Counsel
                                        28 Liberty Street
                                        New York, New York 10005
                                        (212) 416-6556
                                        james.thompson@ag.ny.gov


*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

|  |  |
|---|---|
| Plaintiff, | Index No. _____ |
| -against- | **SUMMONS** |

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;      Date of Filing: June 29, 2022
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

Defendants.
-------------------------------------------------------------------X


**TO:**   PRIMARY ARMS, LLC
          c/o Marshall Lerner
          3219 S. Sam Houston Pkwy.
          Houston, TX 77047


**YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Plaintiff designates New York County as the place of trial. The basis of venue is that this action is brought by a public authority with primary offices located in New York County and because a substantial part of the events giving rise to the claim—including Defendant's shipments

/

/

/

/

of unfinished frames and receivers—occurred within New York County.

Dated: New York, New York
      June 29, 2022

                        LETITIA JAMES
                        Attorney General of the State of New York
                        Attorney for Plaintiff

                        By:

                        James M. Thompson
                        Special Counsel
                        28 Liberty Street
                        New York, New York 10005
                        (212) 416-6556
                        james.thompson@ag.ny.gov

*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

Plaintiff,

Index No. _____

-against-

**SUMMONS**

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;          Date of Filing: June 29, 2022
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

Defendants.
-------------------------------------------------------------------X


**TO**:    RAINIER ARMS, LLC
           c/o John Hwang
           2504 Auburn Way N
           Auburn, WA, 98002-2420


    **YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    Plaintiff designates New York County as the place of trial. The basis of venue is that this action is brought by a public authority with primary offices located in New York County and because a substantial part of the events giving rise to the claim—including Defendant's

/

/

/

/

shipments of unfinished frames and receivers—occurred within New York County.


Dated:  New York, New York
        June 29, 2022

                                    LETITIA JAMES
                                    Attorney General of the State of New York
                                    Attorney for Plaintiff

                                    By:


                                    James M. Thompson
                                    Special Counsel
                                    28 Liberty Street
                                    New York, New York 10005
                                    (212) 416-6556
                                    james.thompson@ag.ny.gov


*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION
--------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

|  |  |
|---|---|
| Plaintiff, | Index No. _____ |
| -against- | **SUMMONS** |

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;      Date of Filing: June 29, 2022
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCKSLIDEUSA,

Defendants.
--------------------------------------------------------------------X


**TO**:    ROCKSLIDEUSA
        c/o Ian O. Frampton
        303 N. Main St.
        Broadway, NC 27505


    **YOU ARE HEREBY SUMMONED** to answer in this action and to serve a copy of your answer on the Plaintiff's attorney within thirty (30) days after the service is complete. In the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    Plaintiff designates New York County as the place of trial. The basis of venue is that this action is brought by a public authority with primary offices located in New York County and because a substantial part of the events giving rise to the claim—including Defendant's

/

/

/

/

shipments of unfinished frames and receivers—occurred within New York County.


Dated: New York, New York
        June 29, 2022

                                    LETITIA JAMES
                                    Attorney General of the State of New York
                                    Attorney for Plaintiff

                                    By:

                                    James M. Thompson
                                    Special Counsel
                                    28 Liberty Street
                                    New York, New York 10005
                                    (212) 416-6556
                                    james.thompson@ag.ny.gov

*Of Counsel*:

Monica Hanna
Special Counsel, Executive Division

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY, COMMERCIAL DIVISION
-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

                Plaintiff,

        -against-                        Index No. 22-_____

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB
BROWNELL'S; GS PERFORMANCE, LLC, A/K/A
GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM
TACTICAL; PRIMARY ARMS, LLC; RAINIER
ARMS, LLC; AND ROCK SLIDE USA, LLC,

                Defendants.
-------------------------------------------------------------------X

## **COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION AND VENUE .............................................................................................. 4

PARTIES ................................................................................................................................... 5

FACTUAL ALLEGATIONS .................................................................................................... 7

    I.    Hidden By Design:  Defendants' Firearm Products Are Manufactured to be Easily Converted Into Working Untraceable Firearms and Are Sold Without Background Checks or Other Public Safety Protections. ........................................................................................ 7

        A.    Defendants Actively Subvert Federal Firearms Laws that Protect the Public ............... 9

        B.    There Are Trivial Differences Between Defendants' Unfinished Frames and the Finished Frames Subject to Federal Protections. .................................................................. 12

        C.    From Unfinished Frame to Ghost Gun, In Less Than An Hour ................................. 15

    II.    The Safeguards: Ghost Guns Are Illegal Under State, Local, and Federal Law ............. 19

    III.    Cashing In:  Defendants Have Profited From Repeated and Persistent Illegal Sales of Frames and Receivers into New York. ....................................................................................... 23

        A.    Arm or Ally ................................................................................................................ 27

        B.    80 Percent Arms ........................................................................................................ 32

        C.    80P Builder ................................................................................................................ 39

        D.    Brownells ................................................................................................................... 41

        E.    Glockstore/GS Performance ..................................................................................... 52

        F.    Indie Guns ................................................................................................................. 60

        G.    KM Tactical ............................................................................................................... 62

        H.    Primary Arms ............................................................................................................ 65

        I.    Rainier Arms .............................................................................................................. 68

        J.    Rock Slide USA ......................................................................................................... 72

    IV.    The Price Paid by the People:  Defendants' Ghost Guns Have Harmed New York and Will Continue To Do So If Unabated. ........................................................................................ 73

        A.    The Rise of Ghost Guns and the Damage Done ........................................................ 74

        B.    Defendants' Conduct Is Dangerous and Directly Harms New York ........................... 76

        C.    We Need to Fix This Avoidable Crisis. ...................................................................... 80

CLAIMS FOR RELIEF ........................................................................................................ 83

i

AS AND FOR A FIRST CAUSE OF ACTION: REPEATED AND PERSISTENT FRAUD OR ILLEGALITY IN BUSINESS IN VIOLATION OF EXECUTIVE LAW § 63(12)......... 83

AS AND FOR A SECOND CAUSE OF ACTION: REPEATED AND PERSISTENT FRAUD OR ILLEGALITY IN BUSINESS IN VIOLATION OF EXECUTIVE LAW § 63(12)......... 84

AS AND FOR A THIRD CAUSE OF ACTION: REPEATED AND PERSISTENT FRAUD OR ILLEGALITY IN BUSINESS IN VIOLATION OF EXECUTIVE LAW § 63(12)......... 85

AS AND FOR A FOURTH CAUSE OF ACTION: CREATION OF A PUBLIC NUISANCE BY A GUN INDUSTRY MEMBER ...................................................................................... 87

AS AND FOR A FIFTH CAUSE OF ACTION: FAILURE TO ESTABLISH REASONABLE CONTROLS BY A GUN INDUSTRY MEMBER ................................................................ 88

AS AND FOR A SIXTH CAUSE OF ACTION: REPEATED AND PERSISTENT FRAUDULENT CONDUCT PURSUANT TO EXECUTIVE LAW 63(12)......................... 88

PRAYER FOR RELIEF ........................................................................................................ 90

ii

Plaintiff, The People of the State of New York ("New York" or "the People"), through their attorney Letitia James, Attorney General of the State of New York, allege the following, with personal knowledge of the actions of the Office of the Attorney General ("OAG") and upon information and belief as to the actions of others:

## PRELIMINARY STATEMENT

1.      New York State is grappling with a public health and safety crisis caused by gun violence.  A significant part of that crisis is attributable to an influx of homemade, unserialized guns, commonly known as "ghost guns."  These weapons are just as lethal as any other handgun or rifle, but Defendants sell them directly to consumers untraceably, without a background check, and without any federally-required record of their sale.  In many cases, Defendants sell to consumers who otherwise could not legally purchase firearms from a licensed retailer.

2.      Defendants make these sales based on the pretense that they are not selling actual firearms, but rather "unfinished" frames or receivers.  Federal law defines a frame or receiver as a firearm, subject to the same licensing and public safety requirements as a completed weapon, but the products Defendants sell are marketed as incomplete, even though the differences between an "unfinished" frame and a firearm are trivial: a tiny amount of plastic to shave down at the top of the frame and three tiny holes to be drilled on the side.  These adjustments require no guesswork. With the aid of a simple jig that precisely guides the tool work, usually sold together with the unfinished part as a kit, an individual can produce a working firearm in under an hour without any special skill or aptitude.

3.      Although these nominally unfinished frames and receivers are sold for the sole

1

purpose of being converted into a working firearm, Defendants do not follow the fundamental federal law requirements enacted by Congress to curtail gun crime. They market and sell these products without the serial numbers required to be engraved on all firearms sold in the United States, meaning that the ghost guns made from them are untraceable when recovered by law enforcement in connection with a crime. Defendants do not conduct a federally required background check to ensure they are not selling to improper persons, including felons, unlicensed persons, fugitives from justice, persons with dangerous mental illness, or those with a history of domestic violence. And Defendants do not record their sales of unfinished frames or receivers in the manner laid out in 26 U.S.C. § 5843, meaning that there is no record of the sale in law enforcement databases.

4. These products are unquestionably illegal. Under New York State law, possession or sale of an unfinished frame or receiver is a felony. *See* Penal Law §§ 265.60-265.61. So too is the possession or sale of a ghost gun made from one. *See* Penal Law §§ 265.63-265.64. Unfinished frames and receivers are also illegal to sell or possess under the law of New York City. *See* N.Y. City Admin. Code § 10-314. The sale of these products without following statutory serialization and background check requirements also violates federal law.

5. In Defendants' own words, the products they sell are "ridiculously easy" to convert into fully operable and completely untraceable firearms. Nevertheless, despite their illegality, Defendants continue to sell these products into New York State. Defendants persist in endangering the health and safety of the public by delivering to private individuals everything they need to make a deadly firearm at home. Customers can thus assemble a ghost gun using Defendants'

2

products and methods in 30 minutes and sell the weapon for as much as $2,000 on the street. As Defendant Brownells' marketing materials rhetorically ask—"Wait, it can't be that simple? Yes, it is."

6. Defendants' ghost gun business has already resulted in death. For example, in May 2020, Defendant Brownells sold and shipped ghost gun products to a man with a "lengthy rap sheet," who was a repeat customer (and also a customer of Defendants GS Performance and Primary Arms) but legally ineligible to own or operate a firearm. That same month, that customer allegedly used a ghost gun in a triple shooting that killed one person and injured two others in the Bronx. The customer could never have passed a background check and should have never been able to purchase a gun, but Defendants' illegal market and business practices permitted the killer to acquire a working firearm without any of what they refer to as "RED TAPE."

7. State law requires Defendants and all other firearms industry members selling into the New York market to "establish and utilize reasonable controls and procedures" to prevent such tragedies, General Business Law § 898-b(2), but Defendants have no such controls or procedures in place. In fact, upon information and belief, Defendants are enjoying the spoils of a massive spike in sales of their illegal products since the start of the COVID-19 pandemic in March 2020.

8. Defendants have betrayed their obligations under New York law through a persistent course of misconduct, all while failing to take the necessary steps—or any steps at all—to keep their ghost gun products out of the hands of people who are prohibited from accessing firearms. Indeed, there are numerous common-sense, scientifically grounded policies and practices that, if implemented, would reduce the risk of Defendants' guns being used in murder,

3

suicide, or violent crime. Not only have Defendants failed to implement any such reasonable policies and practices, the very nature of their business model subverts and undermines the laws designed to protect New Yorkers' right to public safety.

9. Defendants also engage in fraudulent conduct, deception, and false advertising in violation of New York law. Through their marketing and customer communications, Defendants mislead customers directly and indirectly about the legality of possessing the unfinished frames sold by Defendants as well as the completed "ghost guns" derived from them.

10. On behalf of the People, the New York State Attorney General brings this lawsuit to stop Defendants' illegal business practices, abate the dangers posed by the public nuisance for which they are responsible, and hold them accountable in law and equity for the crisis they have inflicted on the State and its residents.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to New York Constitution, Article VI, § 7(a), and Judiciary Law § 140-b. No claim or substantial question of federal law is alleged.

12. Jurisdiction is proper under CPLR 302(a)(1) because each Defendant transacts substantial business within the State by supplying goods into New York State.

13. Jurisdiction is also proper under CPLR 302(a)(3) because each Defendant commits tortious acts outside New York State that cause injury to persons or property within New York State, and because each Defendant (1) regularly solicits business in New York State, (2) engages in persistent conduct towards New York State consumers, (3) derives substantial revenue from goods used or consumed in New York State, and (4) expects or should reasonably expect its sale

4

of its unfinished frames and receivers to have consequences in New York State and derives substantial revenue from interstate commerce.

14.     Venue in New York County is proper under CPLR 505(a) because this action is brought by a public authority with primary offices located in New York County, which is involved in the action.

15.     Venue in New York County is proper under CPLR 503(a) because Defendants' tortious conduct, including shipments of unfinished frames and receivers, occurred within New York County and is a substantial part of the events giving rise to the claim.

16.     Venue in New York County is further proper under CPLR 503(a) and 509 because it is the county designated by the Plaintiff.

17.     Adjudication in the Commercial Division is proper under Uniform Civil Rule 202.70 because this action alleges statutory violations arising out of Defendants' business dealings – in this case, their sale of ghost gun products into New York State – and because the damages caused by their conduct exceed $500,000.  *See* Uniform Civil Rule 202.70 (a) & (b)(1).

## PARTIES

18.     Plaintiff, the People of the State of New York via New York State Attorney General Letitia James, brings this action in a sovereign capacity to protect the interests of the State and its citizens.  This action is brought pursuant to the Attorney General's common-law and statutory authority including, *inter alia*, Executive Law § 63 and General Business Law § 898-d.

19.     Defendant Arm or Ally, LLC ("Arm or Ally") is a North Carolina limited liability corporation with its principal place of business in Indian Trail, NC.  It has a subsidiary named Arm

5

or Ally S LLC.

20.    Defendant Blackhawk Manufacturing Group, Inc., also known as 80 Percent Arms, Inc. ("80 Percent Arms"), is a California corporation with its principal place of business in Garden Grove, CA.

21.    Defendant Salvo Technologies, Inc., also known as 80P Builder or 80P Freedom Co. ("80P Builder"), is a Florida corporation headquartered in Clearwater, Florida, and does business as 80P Builder, which is based in Largo, Florida.

22.    Defendant Brownells, Inc. ("Brownells"), also known as Brownells or Bob Brownell's, is an Iowa corporation with its headquarters in Grinell, IA.  Its subsidiaries include Brownells International, Inc.; Brownells Manufacturing Co.; Brownells Manufacturing, Inc.; Brownell's Project Management Services, Inc.; and Brownells Properties Inc.

23.    Defendant GS Performance, L.L.C., also known as Glockstore, GSPC, and Double Diamond ("Glockstore"), is a Tennessee limited liability corporation with offices in Nashville, TN and San Diego, CA.  It is the successor of a California limited liability corporation also named GS Performance, L.L.C., headquartered in San Diego.

24.    Defendant Indie Guns LLC ("Indie Guns") is a Florida limited liability corporation with its headquarters in Orlando, FL.

25.    Defendant KM Tactical, LLC is a Missouri limited liability corporation with its registered office in Independence, MO.

26.    Defendant Primary Arms, L.L.C. ("Primary Arms") is a Texas limited liability corporation with its headquarters in Houston, TX.  Its subsidiaries include Primary Arms Optics,

6

Primary Arms Wholesale, Primary Arms Online and Primary Arms Government.

27.　　Defendant Rainier Arms, LLC ("Rainier Arms") is a Washington State limited liability corporation with its principal place of business in Auburn, WA. It has subsidiaries including Rainier Arms Holdings LLC, Rainier Arms International, Inc., and Rainier Arms Manufacturing LLC.

28.　　Defendant Rock Slide USA, LLC is a North Carolina limited liability company with its principal place of business in Broadway, NC.

## **FACTUAL ALLEGATIONS**

I.　　**HIDDEN BY DESIGN: DEFENDANTS' FIREARM PRODUCTS ARE MANUFACTURED TO BE EASILY CONVERTED INTO WORKING UNTRACEABLE FIREARMS AND ARE SOLD WITHOUT BACKGROUND CHECKS OR OTHER PUBLIC SAFETY PROTECTIONS.**

29.　　The unfinished frames and receivers marketed by Defendants and sold into New York State are designed to subvert the federal and state statutes that aim to prevent guns from falling into the hands of people who cannot and should not possess them.

30.　　As discussed further below, an "unfinished frame or receiver," also known as an "80% lower" or a "receiver blank," is the core part of a handgun, rifle, or shotgun, but missing a few drill holes and containing a small amount of extra plastic, easily convertible into the finished product, a deadly weapon.

31.　　The term "frame" generally refers to the core part of a pistol or handgun, while the term "receiver" generally refers to the core part of a rifle, shotgun, or other long gun. Current federal regulations define "firearm frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded

7

at its forward portion to receive the barrel." 27 C.F.R. § 478.11. It is this definition that Defendants' unfinished frames try to avoid simply by leaving a few key holes undrilled or plastic unfiled.

32.     Because these unfinished frames or receivers purportedly fall outside the federal definition of a "firearm" under 18 U.S.C. § 921, Defendants sell them directly to consumers without following any of the federal laws and regulations that apply to the sale of guns, and in particular without conducting a background check, placing a serial number on the gun, or entering it into a federal database so that it can be traced back to its source when used in a crime.

33.     The finished weapons made from these unfinished frames or receivers are commonly known as "ghost guns," so-named because they are untraceable and there is no record of their sale, or even their existence.[1] *Cf.* N.Y. Penal Law § 265.00(32) (defining "ghost gun" as a firearm that fails to comply with tracing and serialization requirements in Penal Law § 265.07).

34.     Because of these characteristics, unfinished frames and receivers, and the ghost guns made from them are particularly popular among (and naturally marketed to) persons who would not be able to purchase guns legally, or who want a gun that cannot be traced back to them.

35.     But although Defendants sell unfinished frames and receivers as part of this scheme to evade federal and state laws, there is little practical difference between their "unfinished"

---

[1] The term "ghost gun" is also sometimes used to refer to firearms made with a 3D printer, which are similarly unserialized and impossible to trace. Although these 3D-printed firearms generally also meet New York's statutory definition of a ghost gun, *see* N.Y. Penal Law §§ 265.00(32); 265.07, the term as used in this Complaint refers to guns made from commercially-purchased unfinished frames and receivers, such as those sold by Defendants. The ghost guns created out of Defendants' products, which are the subject of this action, create a much higher quality firearm and are far more prevalent.

8

receivers and a "finished" receiver meeting the federal definition of a firearm in 18 U.S.C. § 921(a)(3).

36.     Finishing a frame or receiver is, in the words of Defendant 80 Percent Arms, "ridiculously easy," and can be carried out by an amateur in under an hour with basic hand tools.

37.     These unfinished frames and receivers are designed to become working ghost guns; they have no other function or purpose.

38.     The result is that Defendants sell these almost-but-not-quite guns online and ship them to New York consumers, in the full knowledge that many of these consumers cannot and should not have a deadly weapon, without applying any internal controls to verify the identity of their customer and the appropriateness of their sale.

**A.      <u>Defendants Actively Subvert Federal Firearms Laws that Protect the Public.</u>**

39.     Federal law operates to protect the public's right to safety from gun violence through a series of provisions aimed at ensuring that deadly weapons are only sold by responsible sellers to responsible buyers.

40.     For instance, any firearm must be sold through a Federal Firearms Licensee ("FFL"), a person or business that has gone through an extensive investigation, review, and licensing process overseen by the Department of Justice.  *See generally* 18 U.S.C. § 923.  FFLs must adhere to specific ethical and recordkeeping obligations in connection with any and all sales.

41.     Federal law attempts to keep guns out of the hands of dangerous persons by requiring that FFLs subject each customer to a background check.  The dealer will query the National Instant Criminal Background Check System, which contains records of persons who fall

9

into one or more prohibited categories, such as convicted felons, fugitives from justice, persons who have been committed to a mental institution, or persons subject to protective orders relating to domestic violence. *See generally* 18 U.S.C. § 922(d,t).

42.     Federal law helps to mitigate or solve crimes committed with firearms by requiring that firearm manufacturers stamp each firearm with "a serial number which may not be readily removed, obliterated, or altered." 26 U.S.C. § 5842(a), 18 U.S.C. § 923(i).  Federal law also requires FFLs to keep records of the serial number of every weapon sold.  *See* 26 U.S.C. § 5843. This process ensures that when a gun is recovered in connection with a crime, law enforcement officers can query an ATF database to quickly access critical information about the gun's origin and first owner.

43.     Defendants sell unfinished receivers and other ghost gun products, which is a business that is specifically designed to circumvent these federal laws.  They do so by purporting to skirt the federal definition of a "firearm" subject to these protections.

44.     That definition is a broad one, covering "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  18 U.S.C. § 921(a)(3).  It also explicitly covers "the frame or receiver of any such weapon."  *Id.*

45.     Defendants attempt to get around this straightforward definition by marketing their frames and receivers as unfinished, and then selling to consumers directly without taking any of the precautionary steps described above.

46.     Defendants specifically market the unfinished frames and receivers as designed to evade federal gun laws.

10

47.     For instance, Defendant Rainier Arms markets the Freedom Wolf 80% Pistol Frame by telling consumers that it "is not at the stage of manufacturing to meet the ATF definition on a firearm frame.  This means that this item can ship straight to your door, with no Federal Firearms License Required.  Simply follow the instructions provided, and 48 hours later, you will be ready to assemble and shoot your home built Freedom Wolf!"[2]

48.     Defendant 80 Percent Arms similarly emphasizes that "When buying a completed AR-15 from your local gun shop, you must purchase from an authorized dealer with an FFL, undergo a thorough background check, fill out various forms and paperwork, endure a waiting period, then pay.  With an 80% lower, you add the piece to your cart when ordering online, then checkout.  It's shipped directly to your doorstep.  Simple, right?!"[3]

49.     And the "Q&A" Section of Brownells' webpage for a Polymer80 Frame Kit includes an exchange where a customer asks, "Is this unit serialized (does it have a [*sic*] engraved serial number on it)?  I want it and will buy it if it DOES NOT.  I have asked this question before but never got an answer!"  Brownells' staff expert answered: "Not serialized it's a 80% receiver."[4]

50.     The same Q&A page includes a Brownells customer care "staff expert" assuring the customer that although the ATF was issuing a new regulation (clarifying that unfinished frames and receivers are firearms, as discussed below), 80% frames "are still legal" and "will still be legal after the change but there will be new restrictions and hoops to jump through."  *Id.*

---

[2] *See* https://www.rainierarms.com/rifle-parts/receiver-parts/lone-wolf-arms-freedom-wolf-80-glock-19-compatible-pistol-frame/ (last visited June 16, 2022).
[3] *See* https://www.80percentarms.com/blog/what-is-an-80-lower/ (last visited June 17, 2022).
[4] *See* https://www.brownells.com/handgun-parts/frame-parts/frames/pf940cv1-80-frame-textured-for-glock-19-23-32-prod97837.aspx (last visited June 28, 2022).

11

51.     Similarly, in touting the Polymer80 frame kits it sells, Defendant KM Tactical points to the "blank serialization plate" as a significant feature.[5]

52.     Defendants know, or should know, that they are selling their ghost gun products to buyers who are trying to evade federal and state gun laws.

**B.     There Are Trivial Differences Between Defendants' Unfinished Frames and the Finished Frames Subject to Federal Protections.**

53.     The difference between an unfinished frame and a frame is negligible, as is the effort required to convert the former into the latter.

54.     Compare, for instance, the following two pictures.  On the left is a photograph of an "unfinished" Polymer80 Glock-compatible pistol frame recently sold and shipped into New York by Defendant Indie Guns.  On the right is a photograph of a "finished" Polymer80 Glock-compatible pistol frame taken from the website of Defendant Primary Arms, where the frame is sold as a finished firearm, complete with serialization and a background check:



---

[5] *See* https://kmtactical.net/product/polymer-80-standard-pistol-frame-kit-pf940v2-black/ (last visited June 17, 2022).

12

55.     The two weapons – one an "unfinished frame" that Defendants sell over the internet and ship into New York without serializing or conducting a background check, the other a "finished" frame that meets the definition of "firearm" under 18 U.S.C. § 921(a)(3) and is subject to these requirements – are virtually identical to the naked eye.  That's because there is virtually no difference between them.

56.     The differences amount to drilling three small holes and milling down a small amount of plastic at the top of the frame.  A "finished" frame sold by Defendant Primary Arms is illustrated as follows:



13

57.     The differences are just as minuscule in the context of an unfinished lower receiver for a rifle.  As Defendant 80 Percent Arms assures customers about building the receiver for an AR-15: "[W]hat is complete is far more than what is left for you to do, hence the term 80 percent lower."  This seller spells out the differences in detail:

> So, what are the differences between an 80 percent lower and a stripped lower? Let's take a look!
>
> To complete an 80% lower, you must:
>
> - Drill a hammer pinhole
> - Drill a trigger pinhole
> - Drill safety selector lever holes
> - Machine the fire control group cavity
>
> Here's what is already prepped for you out of the box:
>
> - Bolt catch
> - Pistol grip hole
> - Magazine well
> - Magazine release
> - Buffer detent hole
> - Trigger guard pinholes
> - Upper receiver rear lug pocket
> - Front and rear takedown holes
> - Buffer tube threads and housing

https://www.80percentarms.com/blog/what-is-an-80-lower/ (Last visited June 17, 2022).

58.     In the case of both unfinished frames (for handguns) and unfinished receivers (for rifles and shotguns), Defendants' business model is simple: sell the core of a working firearm that requires just a bit of unsophisticated finishing work. Based on the need for that tiny bit of finishing by the consumer, Defendants pretend that they are selling something that falls short of the legal definition of a "firearm," and justify selling their product to anyone over the internet, without any

14

controls or procedures to protect the public's safety.

### C.    From Unfinished Frame to Ghost Gun, In Less Than An Hour

59.    With such a small difference between an unfinished frame and a finished frame, it takes very little time, effort, or skill to convert an unfinished framer or receiver into a working ghost gun.

60.    Defendants make this ease of conversion a key part of their marketing.

61.    For instance, Defendant 80 Percent Arms explains that its jigs "make it ***ridiculously easy*** for a non-machinist to finish their 80% lower in under 1 hour with no drill press required." *See* https://www.80percentarms.com/80-lowers/ (last visited June 28, 2022) (emphasis added).[6]

62.    Defendants' customers agree.  For instance, one of the reviews on the webpage for Brownells' exclusive Polymer80 Glock-compatible pistol frame is entitled "EASY AS CAN BE," and begins, "So I bought roughly three frames from Brownells and not one of them came to me in bad condition.  I was able to mill, drill and assemble them all myself without any prior gunsmithing knowledge other then what I saw on YouTube.  And guess what they all go bang when I pull their trigger."[7]

63.    Defendants take further steps to eliminate the need for any technical skill on their customer's part by shipping the products in a "jig," a plastic setting for the frame or receiver that

---

[6] Defendant Brownells similarly says that unfinished frames (and specifically the kind marketed by Polymer80, Inc.) "ha[ve] revolutionized the custom gun world.  If you have some basic mechanical aptitude and a few simple tools found in many home workshops, you are good to go to build your own custom pistol on a Polymer80 frame."  *See* https://www.brownells.com/guntech/how-to-build-a-polymer80-for-a-glock-174-pistol/detail.htm?lid=17513 (last visited June 17, 2022).

[7] *See* https://www.brownells.com/handgun-parts/frame-parts/frames/pf940cv1-80-frame-aggressive-texture-for-glock-19-23-32-prod105856.aspx (last visited June 28, 2022).

makes it easy for even an amateur to see and follow the steps necessary to convert the unfinished frame into finished form.

64.     Here is a picture of an unfinished Glock-compatible handgun frame purchased from Defendant Indie Guns by investigators from the Office of the Attorney General, as it was packaged inside the box it came in:



65.     The unfinished handgun frame is shipped already inside the jig, and the jig itself is clearly labeled with the simple steps the consumer needs to take to "finish" the frame.  The notches on the top are clearly labelled "REMOVE" – the small pieces of plastic sticking up above them

16

are the "rails" that the consumer is to mill off, along with another small piece of plastic inside the frame where the recoil spring will go.

66.     The jig makes sure that an untrained consumer will easily be able to remove the small plastic rails – and only the small plastic rails. As Defendant Brownells explains in its how-to video, "this is pretty simple to do because, once you put this in the included jig . . . only the portions that stick up here are what you remove."

67.     Once that's done, all that's left to do is to drill the three simple holes, which are helpfully labeled as "M2" or "M3" on the jig. These correspond to two drill bits that are included in the same box:



17

68.     All the consumer needs to do is drill the three holes using a hand drill or a drill press, following the instructions on the jig.

69.     The result is a "finished" frame that would have required serialization and a background check if the Defendants had sold it to a consumer.  The finished frame can accept a few commercially-available parts (sometimes sold as a kit along with the unfinished frame) in order to become a working ghost gun.

70.     Defendant Brownells goes a step further, providing an online page with step-by-step video instructions on how to convert a nominally unfinished Polymer80 frame into a finished frame.  In the key section, entitled "How to Mill a Polymer80 Frame," Brownells writes that "'Milling' sounds way more complex than this step really is. All it takes is a drill press and an electric hand drill to complete the last '20%' of your Polymer80 pistol frame (you can also use a milling machine, if you have one). There's no complicated setup because the jig that came with your slide keeps everything properly aligned as you make simple cuts with the included drill bits. Wait, it can't be that simple? Yes, it is. Watch this video." *Id.*

71.     The viewer can watch along as a uniformed Brownells employee goes through all the steps of converting an "unfinished" Polymer80 Glock-compatible handgun frame into a "finished" version, reassuring the viewer that it is "pretty simple to do" and "usually takes about 45 minutes to an hour to complete."  If the viewer has questions or would like assistance finishing the frame, Brownells offers a telephone "tech line" where "we'll be glad to help you out."

72.     Each Defendant knows that the only purpose of the "unfinished" frames and receivers they sell is to become a "finished" frame or receiver that would have required

18

serialization or a background check, and then to be further converted into a working ghost gun. Each Defendant knows that these products are in demand from consumers who could not legally purchase firearms. If any Defendant claims ignorance of these facts, they are being willfully blind to the illicit nature of their business.

## II.   THE SAFEGUARDS: GHOST GUNS ARE ILLEGAL UNDER STATE, LOCAL, AND FEDERAL LAW

73.    Defendants' conduct in selling unfinished frames and receivers into New York is unquestionably illegal.

74.    Sections 265.63 and 265.64 of the New York Penal Law establish criminal liability for anyone who knowingly sells an unfinished frame or receiver in New York State, subject to certain exceptions not at issue here.

75.    Under the Penal Law, an "unfinished frame or receiver" is defined as "any unserialized material that does not constitute the frame or receiver of a firearm, rifle or shotgun but that has been shaped or formed in any way for the purpose of becoming the frame or receiver of a firearm rifle or shotgun, and which may readily be made into a functional frame or receiver through milling, drilling, or other means," and has not been promptly registered and serialized by a New York-licensed gunsmith. *See* N.Y. Penal Law §§ 265.00(32); 265.07.

76.    Selling one unfinished frame or receiver is a Class E felony punishable by up to four years in prison. N.Y. Penal Law §§ 265.63; 70.00(2)(e). Selling ten or more unfinished frames or receivers is a Class D felony punishable by up to seven years in prison. N.Y. Penal Law §§ 265.64; 70.00(2)(d).

77.    The ghost guns that are made from the unfinished frames and receivers that

19

Defendants sell are also illegal. Sections 265.60 and 265.61 of the New York Penal Law establish criminal liability for anyone who knowingly "sells, exchanges, gives, or disposes of a ghost gun to another person."

78.     The punishments for trafficking in ghost guns are the same as trafficking in unfinished frames or receivers: selling one is a Class E felony, N.Y. Penal Law § 265.60, and selling ten or more is a Class D felony. N.Y. Penal Law § 265.61.

79.     To the extent that one or more of the Defendants have sold or shipped unfinished frames or receivers into the five boroughs of New York City, the conduct is also criminal under local law. Section 10-314 of the New York City Administrative Code states that "no person shall dispose of or possess an unfinished frame or receiver,"[8] and establishes that a person commits a Class A misdemeanor for each such prohibited item.

80.     The sale of Defendants' almost-but-not-quite guns is also illegal under federal law. The definition of a "firearm" in the United States Code is not limited to completed guns, but also encompasses "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or receiver of any such weapon." 18 U.S.C. § 921(a)(3).

81.     Federal courts have repeatedly found that items short of a completed gun qualify as a "firearm" if they can easily be made into a functional weapon. *See, e.g.*, *United States v. Morales*,

---

[8] City law defines "unfinished frame or receiver" as "[a] piece of any material that does not constitute the frame or receiver of a firearm, rifle, shotgun or assault weapon but that has been shaped or formed in any way for the purpose of becoming the frame or receiver of a firearm, rifle, shotgun or assault weapon with modification by the user and that is not engraved with a serial number" pursuant to federal standards. N.Y. City Admin. Code § 10-301(22).

20

280 F. Supp. 2d 262, 272-73 (S.D.N.Y. 2003) (partially-disassembled pistol was a "firearm" because "[w]hether in pieces or whole, it is clear to this Court that the item . . . was clearly 'designed to,' and could 'readily be converted to' expel a projectile"); *U.S. v. 16,179 Molso Italian .22 Caliber Winler Derringer Starter Guns*, 443 F.2d 463, 465 (2d Cir.1971) (a weapon "which can be converted by a relatively simple operation taking only a few minutes is a 'firearm' and subject to federal controls."); *U.S. v. Mullins*, 446 F.3d 750, 756 (8th Cir. 2006) (starter gun that "could be converted to expel a projectile, without any specialized knowledge, in less than an hour, and in minutes by an expert" met the definition of a firearm).

82.     This holding includes items sold to consumers that would allow them to easily construct their own working guns.  *See United States v. Wick*, 697 F. App'x 507, 508 (9th Cir. 2017) (upholding denial of motion to acquit on conviction of manufacturing and selling unlicensed firearms where the evidence demonstrated that defendant "was selling complete Uzi parts kits that could 'readily be converted to expel a projectile by the action of an explosive,' thus meeting [18 U.S.C. § 921(a)(3)(A)'s] definition of a firearm").

83.     A weapon meets the definition of "firearm" even if additional parts or work is required to make it shoot.  *See, e.g.*, *United States v. John*, No. 20 Cr. 341, 2022 WL 1062998, at *1, 4-5 (E.D.N.Y. Apr. 8, 2022) (weapon was a firearm where ATF agent was only able to make it fire "by placing duct tape around the cartridge case and removing approximately half of the gun powder" and using a different caliber of bullet, a process that took "twenty to thirty minutes"); *see also Morales*, 280 F. Supp. 2d at 272-73 (collecting cases where inoperable weapons needing replacement parts were nonetheless held to be "firearms").

21

84.    Even if unfinished frames and receivers were not so easy to convert to working ghost guns, they would nonetheless meet the statutory definition. Under federal law, a weapon meets the definition of "firearm" if it is "designed" to fire a projectile, even if it cannot be readily converted to do so. *See U.S. v. Rivera*, 415 F.3d 284, 287 (2d Cir. 2005) ("The statute was clearly written in the disjunctive. The government need only show that the weapons were either 'designed to' or 'may readily be converted.' It need not demonstrate both." (citation omitted)). As pled above, every unfinished frame or receiver is designed for the sole purpose of being converted into a working weapon; it serves no other function.

85.    The Bureau of Alcohol, Tobacco, Firearms, and Explosives has issued a new regulation clarifying that the terms "frame" and "receiver" as used above include "shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." 87 Fed. Reg. 24739. The definition was broadened specifically to combat the spread of illicit ghost guns, such as the ones made from the products Defendants have sold into New York. *See* 87 Fed. Reg. 24655-60 (discussing "the substantial increase in the number of [ghost guns] recovered from crime scenes throughout the country in recent years;" the ways in which ghost guns frustrate efforts to trace weapons used in crimes; the efforts made by federal, state, and local law enforcement to combat their proliferation; and the conclusion that "wide availability of ghost guns" is "a homeland security threat"). ATF's new regulation will go into effect on August 24, 2022. *See* 87 Fed. Reg. 24652.

86.    Ultimately, the ATF's interpretation of the statute is irrelevant, since Defendants'

22

unfinished frames and receivers are "designed to" and also "may readily be converted to expel a projectile by the action of an explosive," meeting the statutory definition of a "firearm" in 18 U.S.C. § 921(a)(3)(A). "In interpreting any statute, we start with the plain meaning of the text, and absent any ambiguity, we end there too." *Ziparo v. CSX Transportation, Inc.*, 15 F.4th 153, 158 (2d Cir. 2021).

87.    Defendants have been aware that their products and the sale of those products violate New York State and local law, as well as federal law, or were willfully blind to that conclusion.

### III.    CASHING IN: DEFENDANTS HAVE PROFITED FROM REPEATED AND PERSISTENT ILLEGAL SALES OF FRAMES AND RECEIVERS INTO NEW YORK.

88.    Despite the illegality of their conduct, Defendants have intentionally and repeatedly sold and shipped unfinished frames and receivers into New York.

89.    Several of Defendants shipped unfinished frames or receivers directly to undercover investigators from the Office of the Attorney General or the New York City Sheriff's Office, demonstrating that their products are available for purchase in New York without Defendants making any effort to implement controls or verify the identity of their customers.

90.    Meanwhile, publicly available material from prosecutors, law enforcement, and media reports demonstrates that many of the perpetrators of the most serious ghost gun-related crimes were the same people who had ordered products from Defendants.

91.    For instance, in April 2022, the NYPD executed a search warrant on the Manhattan home of a man named Rene Loyola, recovering over $20,000 in ghost guns and parts, including more than 30 frames and receivers.

23

92.     And in October 2021, police officers searched the home and car of a Queens resident, named Jonathan Santos, recovering approximately 30 working firearms, many of them ghost guns, along with over 130 high-capacity magazines, approximately 150,00 rounds of ammunition, and various parts and tools used to convert ghost guns into working weapons.

93.     Loyola received at least ten different packages from Defendant Brownells, while Santos received shipments from Defendants Arm or Ally, Brownells, and KM Tactical.

94.     In each of the incidents enumerated below, Defendants sold and shipped their unfinished frames or receivers to individuals located in New York State who went on to commit crimes.

95.     In many cases, Defendants sold directly to persons with criminal records or other disqualifications who could not legally possess a firearm.

96.     On information and belief, the incidents enumerated below represent only a small fraction of Defendants' illicit shipments into New York.  The true number of unfinished frames and receivers sold by Defendants can only be established when their sales records are obtained in discovery.

97.     Although the Defendant companies ship products including unfinished frames and receivers directly to consumers, their dangerous and untraceable products also enter New York in other, less direct ways.

98.     For instance, on or around November 20, 2021 law enforcement officers observed a man named Robert Alcantara purchase approximately 45 sets of unfinished upper and lower receivers at a gun show in Morgantown, Pennsylvania.  Later that day, he drove the guns into New

24

Case 1:22-cv-06124   Document 1-1   Filed 07/19/22   Page 49 of 115

York, where he was apprehended in Bronx County.

99.     Alcantara told law enforcement officers that he and a conspirator had purchased the ghost guns for approximately $360 per pair ($16,200 in total), and that he was going to turn them into completed firearms, though he denied that he was going to sell them.

100.    Alcantara's phone included pictures of a workbench in his home in Rhode Island with various ghost guns and parts, and a set of what appear to be completed firearms on top of an advertisement from Defendant Glockstore.[9]  According to the complaint sworn to by an ATF special agent, the Glockstore advertisement included "instructions as to how to machine ghost guns."

101.    An ATF Agent averred that "I know from my training and experience that the photographs [] show that ROBERT ALCANTARA, . . . has been machining substantial numbers of 'ghost guns.'"  Another photo on Alcantara's phone show completed guns "that appear packaged for shipment or for sale."

102.    According to ATF, Alcantara purchased 68 additional ghost gun kits just between February and August 2021, in addition to the ones bought at the Pennsylvania gun show.  These purchases totaled $32,105.

103.    The Alcantara case provides an example of the tremendous amount of money to be made by purchasing unfinished frames or receivers, converting them into working ghost guns, and selling them on the black market – as well as the significant revenues derived by "legitimate"

---

[9] The federal complaint against Alcantara identifies Glockstore only as "Ghost Gun Retailer-1."  However, the Glockstore name is completely visible on one of the pictures in the complaint taken from Alcantara's phone.

25

retailers, such as Defendants who provide that market with the foundational product.

104. The scale of Defendants' activities directed toward the New York market is staggering, as is the number of unfinished frames and receivers they have directed into New York State.

105. A preliminary analysis of shipping records obtained by the Office of the Attorney General demonstrates that in the past few years Defendants have made approximately 100,000 shipments to New York addresses that are not FFLs – i.e., shipments directly to consumers.

106. The actual number of direct shipments to New York consumers will be significantly higher – well into the six-figure range – once complete records from every shipper become available.

107. On information and belief, a significant portion of these shipments contained unfinished frames and receivers.

108. The shipping records compiled to date show approximately 29,655 packages that roughly match the weight and/or dimensions of the unfinished handgun frames sent by certain of Defendants in fulfillment of OAG's undercover purchases. Many of these shipments into New York are likely to be unfinished frames, which are illegal.

109. The actual number of illegal shipments is likely to be significantly higher, for several reasons. First, the shipping data obtained by OAG is incomplete to date. Second, these shipments are only those matching the weight of an unfinished frame kit in its packaging alone. If a consumer bought more than one unfinished frame, or an unfinished frame and other parts (for instance, the parts necessary to convert the unfinished frame into a working ghost gun), the weight

26

of the shipment would be different.  And third, these are only shipments that match the weight of

an unfinished frame used to make a handgun; shipments of the unfinished receivers used to make

ghost gun rifles or shotguns will have different weights and dimensions.

110.     The true number of unfinished frames and receivers shipped by Defendants into

New York State can best be ascertained by each Defendant's sales records, but the figure can

reasonably be expected to number many thousands.

111.     On information and belief, none of these unfinished frames and receivers were

serialized according to federal and state requirements, and none of Defendants conducted a federal

background check prior to sending them.

112.     Each of the Defendants played a role in this massive influx of unfinished frames

and receivers, and in the ghost guns that were inevitably and foreseeably made from them.

**A.     <u>Arm or Ally</u>**

113.     Arm or Ally is a distributor of firearms and firearms parts located in Indian Trail,

NC.

114.     Its business focuses on parts for AR-10 and AR-15-style rifles, including unfinished

receivers that can be used to build ghost gun versions of those rifles.  It also sells unfinished

handgun frames, including into New York.

115.     Its webpages selling AR-15-compatible receiver kits proclaim, in large bold green

letters, "No FFL Required!"   *See*  https://www.armorally.com/shop/polymer80-ar15-80-lower-

receiver-kit-rl556v3/ (last visited June 23, 2022).

116.     Meanwhile in tiny, mostly-illegible text, Arm or Ally attempts to divest itself of

27

any responsibility for whether its sales are legal, throwing it onto the consumer instead. Its boilerplate text reads, "It is your responsibility to know and understand your state and local laws regarding the ownership and possession of this product. We do not provide legal advice; if you are uncertain, consult with an attorney prior to purchasing." *Id.*

117. Although its AR-15-compatible unfinished lower receiver page says in similarly tiny text that "[w]e do not provide advice or assistance with the manufacturing process," the page in fact links to a set of "milling instructions," providing a step-by-step guide to convert the "unfinished" receiver into the core of an AR-15 rifle. *Id.*

118. Arm or Ally's sales pages discuss "State Restrictions" in New Jersey, Connecticut, Washington State, and Washington, DC, but not New York.

119. In fact, Arm or Ally has sold and continues to illegally sell unfinished frames and receivers directly to consumers in New York State.

120. On or around April 28, 2022, an investigator from the New York City Sheriff's Office conducted an undercover purchase of a Glock-compatible Polymer80 PF940C unfinished frame kit from Arm or Ally. Arm or Ally's website acknowledged that the company was shipping directly to consumers, and in fact stated that the order of an unfinished frame was "required to ship to your credit card's billing address." Arm or Ally accepted the order and shipped the frame into New York County.

121. On or around May 12, 2022, an investigator from the New York City Sheriff's Office conducted an undercover purchase of parts sufficient to convert the unfinished frame into a ghost gun, including a G19-compatible slide parts kit, a G19-compatible threaded barrel, and a

28

G19-compatible slide, all manufactured by Arm or Ally.  The City also purchased a Polymer80 9mm frame parts kit.  Arm or Ally accepted the order and shipped the parts into New York County.

122.    The webpage viewed by the investigator demonstrated that the company understood that its products would be converted into working weapons, stating that "[i]n the comfort and privacy of your own home you can assemble your own firearm for personal-use with nothing more than simple hand-tools."

123.    Arm or Ally accepted the order and shipped the parts into New York County.

124.    On or around May 27, 2022, investigators from the Office of the Attorney General conducted an undercover purchase of a Polymer80 PF940C Glock-compatible unfinished frame from Arm or Ally's website, as part of a pistol frame kit.

125.    The Arm or Ally website said of the product that "[t]his system is a complete kit. There are no additional jigs and parts to purchase.  Polymer80 Spectre system is a complete, all-inclusive package including the jig and drill bits required to finish your Glock project."  *See* https://www.armorally.com/shop/polymer80-pf940c-pistol-frame-kit/ (last visited June 6, 2022).

126.    Although the Arm or Ally website said that "NY residents must send copy of valid state-issued Driver's License," *see* https://www.armorally.com/shop/polymer80-pf9ss-g43-pistol-frame-kit/ (last visited June 28, 2022), they did not actually require investigators to do so.

127.    Arm or Ally accepted the order and shipped the frame into Kings County.

128.    Arm or Ally's illegal sales of unfinished frames and receivers have led to a number of instances where its products have been used in crimes or by persons who cannot legally possess a gun.

129. On or around July 8, 2021 Arm or Ally sent a package to Rene Loyola at an address on East 6th Street in Manhattan.

130. On information and belief, the package from Arm or Ally contained unfinished frames or receivers and/or the parts to make them into ghost guns.

131. As discussed further below, the NYPD later executed warrants on Loyola's home and storage locker, discovering an arsenal of unfinished frames and receivers and material used to convert them into working ghost guns.

132. Loyola was indicted on approximately 289 separate violations of New York's firearms laws.

133. Between approximately April 25, 2021 and June 7, 2021, Arm or Ally sent seven packages to Jonathan Santos at an address on 102nd Street in the Richmond Hill area of Queens, NY.

134. On information and belief, the packages Arm or Ally sent to Santos contained unfinished frames or receivers and/or the parts to make them into ghost guns.

135. On October 18, 2021, police officers observed Santos loading guns into the trunk of his car. See https://queensda.org/queens-man-charged-with-possessing-arsenal-of-illegal-ghost-guns/.

136. After pulling Santos over, they discovered nine ghost guns, including two assault rifles, one other assault rifle, 25 high-capacity magazines, and 500 rounds of ammunition.

137. When NYPD officers executed a search warrant on Santos' home on 102nd Street, they recovered 21 working firearms, many made from unfinished frames or receivers, two rapid-

30

fire modification devices, 110 high-capacity magazines, three silencers, approximately 15,000 rounds of ammunition, and various parts and tools commonly used to convert unfinished frames or receivers into working weapons.

138.   Santos did not have a license to possess or own firearms.

139.   A portion of the weapons recovered from Santos is pictured below:



140.   Santos was charged with 252 separate violations of New York's firearms laws.

141.   On or around October 7, 2021, Arm or Ally sent a package to David Goldberg at an address on Bullet Hole Road in Mahopac, NY.

142.   On information and belief, the package Arm or Ally sent to Goldberg contained unfinished frames or receivers and/or the parts to make them into ghost guns.

143.   The Putnam County Sheriff's Department, as part of a multi-agency investigation into ghost guns and other illegal weapons that led to more than 100 weapons seized, arrested Goldberg in late-January 2022 on four felony charges, including first-degree criminal possession

31

of a weapon (10 or more).  See https://www.westchestergov.com/home/all-press-releases/9204-more-than-100-firearms-seized-following-lengthy-investigation-into-ghost-guns-and-other-illegal-weapons-in-westchester-and-putnam-counties.

144.    On or around August 18, 2021, Arm or Ally sent a package to Andrew Lopez at an address on Fair Street in Carmel, NY.

145.    On information and belief, the package Arm or Ally sent to Lopez contained unfinished frames or receivers and/or the parts to make them into ghost guns.

146.    The Putnam County Sheriff's Department, as part of a multi-agency investigation into ghost guns and other illegal weapons that led to more than 100 weapons seized, arrested Lopez in late-January 2022 for second-degree criminal possession of a weapon.  *Id.*

**B.    80 Percent Arms**

147.    Blackhawk Manufacturing Group, Inc., also known as 80 Percent Arms, Inc. or 80 Percent Arms, is a California entity with its principal office in Garden Grove, CA.

148.    As indicated by its name, 80 Percent Arms' business is focused on selling unfinished frames and receivers, and the company explicitly sells its products as a means to get around federal registration and background check requirements.

149.    Its page on 80% lowers emphasizes that "an unfinished receiver is not subject to the same regulations as any other complete firearm.  This means no RED TAPE including: NO Registering an 80% Lower, NO Transfer fees like a typical firearm, NO FFL Required, Ships right to your door."  *See* https://www.80percentarms.com/80-lowers/ (last visited June 6, 2022)

150.    Clicking on "No FFL Required" takes a consumer to a webpage explaining how

32

the company's unfinished frames and receivers are exceptions to the Gun Control Act of 1968 and the Brady Handgun Act of 1993. The page also explains that "80% lowers are popular for numerous reasons. For one, with an 80% lower there is no background check or registration involved; saving you time and headaches. Also, when using an FFL to transfer firearms, there is generally a fee involved. Since you obviously don't need an FFL for an 80% lower- congratulations you just saved yourself money! (a valuable selling point when telling the wife you bought more gun parts.) And again, 80% lowers are shipped right to your door, which is convenience that can't be beat." *See* https://www.80percentarms.com/blog/buying-guns-online-without-an-ffl/ (last visited June 6, 2022).

151.     Meanwhile, the header of 80 Percent Arms' webpage emphasizes that converting its unfinished frames and receivers into a working firearm is "ridiculously easy," explaining that its jigs "make it ridiculously easy for a non-machinist to finish their 80% lower in under 1 hour with no drill press required." *See* https://www.80percentarms.com/80-lowers/ (last visited June 6, 2022)

152.     80 Percent Arms' website falsely tells consumers that its unfinished frames and receivers are legal to purchase in New York.

153.     Its page on "80 Lower Laws" includes a map of the United States with New York State colored yellow. When a consumer puts his or her mouse pointer over New York, it displays text reading, "New York's attorney general sent cease and desist letters to 80% manufacturers to stop the sale and shipment of AR lowers however, 80% pistols can still be purchased. Do your own research before purchasing to ensure compliance." *See*

33

https://www.80percentarms.com/pages/california-laws-80-lower (last visited June 6, 2022).

154.    Shipping data obtained by the Office of the Attorney General indicates that from March 2020 to the present, 80 Percent Arms sent approximately 155 packages to non-FFL addresses in New York State each month, with approximately 106 of those packages roughly matching the weight and dimensions of the unfinished frames obtained in undercover purchases.

155.    On or around March 3, 2022 80 Percent Arms sent a package to Rene Loyola at an address on Hart Street in Brooklyn.

156.    On information and belief, the package from 80 Percent Arms contained unfinished frames, unfinished receivers, and/or the tools to convert them into working ghost guns.

157.    As discussed, the NYPD later executed warrants on Loyola's home and storage locker, discovering an arsenal of ghost guns, unfinished frames and receivers, and tools used to convert them into working weapons.

158.    Loyola was indicted on approximately 289 separate violations of New York's firearms laws.

159.    On or around August 27, 2020 and January 4, 2021, 80 Percent Arms sent packages to Jonathan Santos at an address on 102nd Street in the Richmond Hill area of Queens, NY.

160.    On information and belief, the packages 80 Percent Arms sent to Santos contained unfinished frames, unfinished receivers, and/or the tools to convert them into working ghost guns.

161.    As discussed, when NYPD officers searched Santos' home and car, they found dozens of working ghost guns, along with parts, ammunition, and tools used to convert unfinished frames and receivers into working weapons.

34

162. Santos was charged with 252 separate violations of New York's firearms laws.

163. On or around October 2, 2020 and October 30, 2020, 80 Percent Arms sent packages to a man named Kurt Therkelsen at an address on Ward Road in Salt Point, NY.

164. Therkelsen was a supporter of the "Boogaloo Boys," a far-right militia-style organization with a well-documented history of political violence. *See* https://nypost.com/2022/02/01/boogaloo-boys-supporter-kurt-therkelsen-gets-4-years-in-nyc-ghost-guns-case/.

165. On information and belief, the packages 80 Percent Arms sent to Therkelsen contained unfinished frames, unfinished receivers, and/or the tools to convert them into working ghost guns.

166. On December 15, 2020, the Joint Terrorism task force and the NYPD raided an AirBNB on First Avenue in Manhattan, where Therkelsen was staying.

167. The NYPD recovered two unserialized Polymer80 ghost guns, 11 high-capacity magazines, four additional unfinished frames and receivers, as well as various parts, gunmaking tools, and other paraphernalia.

168. Investigators also recovered Kevlar body armor and a shirt that said, "Kill Cops."

169. Therkelsen pled guilty to firearms charges in December 2021 and was sentenced to four years in prison.

170. On or around August 24, 2021, and September 27, 2021, 80 Percent Arms sent packages to Dexter Taylor at an address on Eldert Street in Brooklyn, NY.

171. On information and belief, the packages 80 Percent Arms sent to Taylor contained

35

Case 1:22-cv-06124 Document 1-1 Filed 07/19/22 Page 60 of 115

unfinished frames, unfinished receivers, and/or the tools to convert them into working ghost guns.

172. When NYPD officers raided the Eldert Street location, they recovered four completed ghost gun assault weapons, five completed ghost gun handguns, four completed ghost gun rifles, eight unfinished receivers, five unfinished frames, eleven magazines, and various parts and tools used to convert unfinished frames and receivers into working firearms. See http://www.brooklynda.org/2022/04/22/bushwick-man-indicted-for-illegal-possession-of-ghost-guns/.

173. Taylor was indicted on 37 counts of violations of New York's firearms laws.

174. On or around July 12, 2021 and October 26, 2021, 80 Percent Arms sent packages to Chaz McMillan at an address on 162nd Street in the Flushing Area of Queens, NY.

175. On information and belief, the packages 80 Percent Arms sent to McMillan contained unfinished frames, unfinished receivers, and/or the tools to convert them into working ghost guns.

176. On December 8, 2021, investigators executed a search warrant on McMillan's 162nd Street address.

177. They found 25 working ghost guns, including 19 semiautomatic pistols, 5 assault weapons, and 1 semiautomatic shotgun. They also found four additional unfinished frames or receivers that had not yet been constructed into working weapons. See https://queensda.org/queens-man-charged-with-possessing-arsenal-of-illegal-ghost-guns-2/.

178. McMillan also had 31 large-capacity magazines, 670 rounds of ammunition, and various parts and tools used to convert unfinished frames and receivers into working ghost guns.

36

179. McMillan did not have a license to possess or own firearms.

180. McMillan was charged with 125 counts of criminal violations of New York's firearms laws.

181. On or around August 24, 2020, 80 Percent Arms sent a package to Domingo Valle at an address on East Tremont Avenue in the Bronx, NY.

182. On information and belief, the package 80 Percent Arms sent to Valle contained unfinished frames, unfinished receivers, and/or the tools to convert them into working ghost guns.

183. As discussed below, Valle was a convicted felon who could not legally purchase a firearm and would have failed a background check if he had tried to do so. When law enforcement agents later searched Valle's address, they found several ghost guns concealed throughout his apartment.

184. On or around August 20, 2020, and January 14, 2021, 80 Percent Arms sent packages to a woman with the initials N.S. at an address on Baisley Avenue in the East Rockaway section of Queens, NY.

185. On information and belief, the packages sent to the residence contained unfinished frames or receivers and/or the parts to make them into ghost guns.

186. As discussed below, on February 19, 2022, Thomas Saxton, from the same address, was arrested after threatening to shoot his wife while she held her child. When police stopped Saxton, he was carrying two ghost guns, as well as additional ammunition and a plastic bag of cocaine.

187. On or around October 21, 2020, 80 Percent Arms sent a package to Kai Zhao at an

37

address on 167th Street in the Flushing area of Queens, NY.

188.  Between approximately July 20, 2021 and September 22, 2021, 80 Percent Arms sent five packages to Seongwoo Chung at an address on Crocheron Avenue in the Flushing area of Queens, NY.

189.  On information and belief, the packages 80 Percent Arms sent to Zhao and Chung contained unfinished frames or receivers and/or the parts to make them into ghost guns.

190.  On or around March 1, 2022, Zhao, Chung, and two codefendants were arrested as part of an NYPD investigation into firearms trafficking.  *See* https://queensda.org/four-queens-residents-charged-with-possessing-arsenals-of-illegal-ghost-guns-in-bayside-and-flushing-homes-photos/.

191.  Search warrants executed on Zhao, Chung, and their alleged accomplices resulted in the seizure of 27 ghost guns, including 22 semiautomatic pistols, 4 assault weapons, and 1 assault shotgun.

192.  The search warrants also resulted in the NYPD seizing 16 unfinished receivers, 78 large capacity magazines, approximately 10,000 rounds of ammunition, silencers, sites, components and tools to assemble unfinished frames and receivers into working firearms, and more than $50,000 in cash.

193.  Zhao, Chung, and their codefendants did not have a license to own or possess firearms.

194.  Zhao was charged with approximately eight counts of violations of New York's firearms laws.  Chung was charged with approximately eight counts of violations of New York's

38

firearms laws.

195.     Between approximately December 12, 2021 and January 13, 2022, 80 Percent Arms sent three packages to Gregory Lopez at an address on Rosman Road in Thiells, NY.

196.     On information and belief, the packages 80 Percent Arms sent to Lopez contained unfinished frames or receivers and/or the parts to make them into ghost guns.

197.     On or around April 27, 2022, police executed a search warrant on Lopez' Rosman Road address.   They discovered two loaded, unserialized AR-15-style ghost gun rifles, ammunition,   magazines,   and   multiple   unfinished   frames   and   receivers.     _See_ https://hudsonvalleypost.com/historic-hudson-valley-man-arrested-under-new-yorks-new-gun-law/.

198.     A Rockland County grand jury indicted Lopez on twelve counts of violating New York's firearms laws.

**C.**     **80P Builder**

199.     80P Builder, a division of Salvo Technologies, Inc. also known as 80P Freedom Co., is a Florida corporation that claims to "specialize in aftermarket parts while also offering Polymer80 frames." _See_ https://80pbuilder.com/ (last visited June 23, 2022).

200.     Despite the fact that selling unfinished frames and receivers is a core part of its business model, its website touts a claim that "**80P Freedom Co. does NOT sell firearms**" in bold, oversize letters. _Id._

201.     80P Builder sells unfinished receivers in tandem with the "lower parts kit" containing the parts necessary to make it the fully-functional lower part of a handgun. _See, e.g.,_

39

https://80pbuilder.com/pf940sc-frame (last visited June 23, 2022).  Its webpage touts the "Blank Serialization Plate" as one of the key features of the product, as well as the fact that a "Complete Finishing Jig and Drill bits [are] Included."  *Id.*

202.     80P Builder knows that these products are illegal, and in fact it informs consumers that it will not ship to New Jersey.  As to other states, it simply says, "[a]t 80P Builder, we by no means provide legal advice or legal counsel.  Every builder needs to research their respective State laws and Federal laws."

203.     Despite New York State law, 80P Builder has shipped, and continues to ship unfinished frames and receivers into New York State.

204.     Although the Office of the Attorney General has not yet obtained records of the shipments sent by 80P Builder, its sale of unfinished frames into the New York market is evidenced by the fact that it sent an unfinished frame to New York City investigators in response to an undercover purchase.

205.     On or around May 11, 2022, an employee of the New York City Sheriff's office conducted an undercover purchase of a Polymer80 PF940v2 unfinished frame from 80pbuilder.com, along with a lower parts kit; a Glock-17-compatible slide, barrel, and guide rod, an upper parts kit, and a set of high-definition sights.

206.     80P Builder accepted the order and shipped the ghost gun into New York County.

207.     On information and belief, this undercover purchase was just one of many instances when 80P Builder sent prohibited unfinished frames into New York, without conducting a background check or implementing any other controls to prevent improper persons from turning

40

its products into working ghost guns.

**D.**     **Brownells**

208.     Brownells, Inc., also known as Brownells or Bob Brownell's, is an Iowa corporation with its headquarters in Grinell, IA.

209.     Although Brownells sells a wide variety of different firearms, parts, and paraphernalia, it has taken to selling unfinished frames and receivers with particular gusto, marketing them based in large part on the lack of compliance with federal firearms law and the ease with which they can be converted into working ghost guns.

210.     For instance, in an October 2017 press release announcing that the company would market a set of exclusive Polymer80 unfinished frames unique to Brownells, the company said that the unfinished frames could be used "to make instant custom handguns at home," and that "[w]ith a drill press or similar tool, an 80% frame can be finished into a firearm in just minutes." Press Release, "Brownells Announces Exclusive Polymer80 Frames," (Oct 11, 2017), available at https://www.theoutdoorwire.com/story/1507676814jseq2774930.

211.     The same press release also advertised the legal conclusion that "[b]ecause they are not complete firearms, [unfinished frames] can be shipped straight to a customer's home without an FFL." *Id.*

212.     As discussed above, Brownells' online materials go to great lengths to promote unfinished frames to consumers, saying that they "ha[ve] revolutionized the custom gun world. If you have some basic mechanical aptitude and a few simple tools found in many home workshops, you are good to go to build your own custom pistol on a Polymer80 frame." *See*

41

https://www.brownells.com/guntech/how-to-build-a-polymer80-for-a-glock-174-pistol/detail.htm?lid=17513 (last visited June 28, 2022).

213.    Brownells provides an online page with step-by-step video instructions on how to convert a nominally unfinished Polymer80 frame into a finished frame.  In the key section, entitled "How to Mill a Polymer80 Frame," Brownells writes that "'Milling' sounds way more complex than this step really is. All it takes is a drill press and an electric hand drill to complete the last "20%" of your Polymer80 pistol frame (you can also use a milling machine, if you have one). There's no complicated setup because the jig that came with your slide keeps everything properly aligned as you make simple cuts with the included drill bits. Wait, it can't be that simple? Yes, it is. Watch this video." *Id.*

214.    The viewer can watch along as a uniformed Brownells employee goes through all the steps of converting an "unfinished" Polymer80 Glock-compatible handgun frame into a "finished" version, reassuring the viewer that it is "pretty simple to do" and "usually takes about 45 minutes to an hour to complete."  If the viewer has questions or would like assistance finishing the frame, Brownells offers a telephone "tech line" where "we'll be glad to help you out."

215.    Brownells has sold and continues to illegally sell unfinished frames and receivers directly to consumers in New York State.

216.    Shipping data obtained by the Office of the Attorney General indicates that from March 2020 to the present, Brownells sent approximately 1,300 packages to non-FFL addresses in New York State each month, with approximately 328 of those packages roughly matching the weight and dimensions of the unfinished frames obtained in undercover purchases.

42

217.     Brownells' sale of unfinished frames into the New York market is evidenced by the fact that it sent an unfinished frame to New York State investigators in response to an undercover purchase.

218.     On or around May 27, 2022, investigators from the Office of the Attorney General conducted an undercover purchase of a Polymer80 PF940Cv1 unfinished frame kit from Brownells' website.

219.     Brownells accepted the order and shipped the unfinished frame kit into Kings County.

220.     Brownells has sold a massive number of unfinished frames and receivers into New York State, many of which have been converted into ghost guns used in crimes or by persons who could not and should not legally possess a firearm.

221.     Between October 2016 and May 2020, Brownells sent approximately 17 shipments to Jason Ramirez in New York County.

222.     On or around September 18, 2017, Brownells sold Ramirez a Polymer80 PF940CV1-OD Glock-compatible pistol frame and shipped it to his home in New York. Brownell's gave Ramirez a $10 promotional discount on the sale.

223.     On or around February 20, 2018, Brownells sold Ramirez another Polymer80 PF940CV1 Glock-compatible pistol frame, along with a part to build the gun, and shipped it to his home in New York. Brownells again gave Ramirez a discount on the sale.

224.     On or around December 27, 2018, Brownells sold Ramirez a Polymer80 PF940SC Glock-compatible pistol frame and shipped it to his home in New York. Brownells again gave

43

Ramirez a discount on the sale.

225.    Ramirez also purchased several sets of tools from Brownells to make unfinished frames into working ghost guns, along with accessories for the completed weapons.

226.    Brownells' records indicate that the company knew that Ramirez was not a Federal Firearm Licensee.

227.    Ramirez was indicted and pled guilty to violations of New York's firearms laws.

228.    On or around December 5, 2017, Brownells sent a shipment to Brandon Glaski in East Nassau, NY.

229.    Approximately six months later, law enforcement officers from the ATF and the New York State Police executed a search warrant on Glaski's residence.  In addition to dozens of other weapons, the officers found seventeen unfinished frames and receivers, all without serial numbers, including two that had been converted into working rifles.

230.    Glaski had a prior felony conviction and would not have been eligible to purchase a gun legitimately.

231.    Glaski pled guilty to federal gun charges in the Northern District of New York, and was sentenced to 30 months in prison.[10]

232.    On information and belief, the shipment sent from Brownells to Glaski contained unfinished frames or receivers and/or the parts to make them into ghost guns.

233.    Between approximately November 16, 2020, and October 26, 2021, Brownells sent

---

[10] *See* https://www.justice.gov/usao-ndny/pr/rensselaer-county-felon-sentenced-30-months-firearms-convictions (last visited June 28, 2022).

44

at least ten shipments to Rene Loyola at an address on East 6th Street in Manhattan.

234.    On information and belief, the shipments sent from Brownells to Loyola included unfinished frames or receivers and/or the parts to make them into ghost guns.

235.    On or around April 20, 2022, the New York Police Department executed search warrants on Loyola's residence in Brooklyn and his storage unit in Manhattan.

236.    The police discovered approximately $20,000 worth of ghost guns and ghost gun parts, including more than 30 frames and receivers, nearly 300 high-capacity magazines, and other tools used to manufacture and modify ghost guns, including tools to convert them to fire automatically.

237.    A portion of the ghost guns and paraphernalia recovered from the search warrants on Loyola are pictured below:



45

238.   On or around May 6, 2022, Loyola was indicted in New York County on approximately 264 different counts of violations of state firearms laws.

239.   On or around May 12, 2022, Loyola was indicted in Kings County on an additional 25 criminal violations.

240.   On or around December 11, 2020, Brownells sent a package to Kurt Therkelsen at an address on Bergen Street in Brooklyn.

241.   As discussed, Therkelsen was a supporter of the "Boogaloo Boys," a far-right militia-style organization.  When the NYPD raided his apartment, they recovered a host of weapons, including ghost guns, high-capacity magazines, and unfinished frames and receivers, as well as various parts, gunmaking tools, and other paraphernalia.  Therkelsen pled guilty to firearms charges in December 2021 and was sentenced to four years in prison.

242.   Between approximately August 5, 2021, and March 16, 2022, Brownells sent at least 28 packages to Dexter Taylor at an address on Eldert Street in Brooklyn, NY.

243.   Brownells' shipments to Taylor only stopped after the NYPD executed a search warrant on his apartment on April 6, 2022.[11]

244.   On information and belief, the packages Brownells sent to Taylor contained unfinished frames or receivers and/or the parts to make them into ghost guns.

245.   Officers recovered ghost guns including four completed assault weapons, five completed handguns, and  four  completed  rifles,  as  well  as  eight  unfinished  receivers,  five

---

[11] *See* http://www.brooklynda.org/2022/04/22/bushwick-man-indicted-for-illegal-possession-of-ghost-guns/ (last visited June 28, 2022).

unfinished frames, eleven magazines, and various parts and tools used to convert unfinished frames and receivers into working firearms.

246.     Taylor was indicted on 37 counts of violations of New York's firearms laws.

247.     Between approximately November 17, 2020, and May 28, 2021, Brownells sent four packages to Jonathan Santos at an address on 102nd Street in the Richmond Hill area of Queens, NY.

248.     On information and belief, the packages Brownells sent to Santos contained unfinished frames or receivers and/or the parts to make them into ghost guns.

249.     As discussed, when NYPD officers searched Santos' home and car, they found dozens of working ghost guns, along with parts, ammunition, and tools used to convert unfinished frames and receivers into working weapons.  Santos was charged with 252 separate violations of New York's firearms laws.

250.     On or around August 4, 2021, Brownells sent a package to Chaz McMillan at an address on 162nd Street in the Fresh Meadows area of Queens, NY.

251.     On information and belief, the package Brownells sent to McMillan contained unfinished frames or receivers and/or the parts to make them into ghost guns.

252.     As discussed, on December 8, 2021, investigators executed a search warrant on McMillan's 162nd Street address.  They found 25 working ghost guns, including 19 semiautomatic pistols, 5 assault weapons, and 1 semiautomatic shotgun.  They also found four additional unfinished frames and receivers.  McMillan also had 31 large-capacity magazines, 670 rounds of ammunition, and various parts and tools used to convert unfinished frames and receivers into

47

working weapons.

253.    McMillan did not have a license to possess or own firearms.

254.    McMillan was charged with 125 criminal violations of New York's firearms laws.

255.    On or around December 28, 2020, Brownells sent a package to Ricardi Kiem at an address on Hook Creek Boulevard in the Rosedale area of Queens, NY.

256.    As discussed further below, police executed a search warrant on the Hook Creek Boulevard location and found an arsenal of ghost guns and the parts and tools to make them.  Kiem and his partner were charged with 39 criminal counts, including violations of the firearms laws and endangering the welfare of a child.

257.    Between approximately August 22, 2018, and May 11, 2020, Brownells sent at least five packages to Matthew Gerwitz at addresses in Tonawanda, NY.

258.    On information and belief, the packages Brownells sent to Gerwitz contained unfinished frames or receivers and/or the parts to make them into ghost guns.

259.    According to the Erie County District Attorney's Office, on or around May 26, 2020, Gerwitz carried out a drive-by shooting near his home, wounding a man in the stomach.[12]

260.    When Tonawanda police began to investigate the area, Gerwitz opened fire with a high-powered rifle, shooting a police detective multiple times.

261.    The Erie County District Attorney described the pistol used by Gerwitz as "a homemade, off-the-internet 9 mm," noting that the gun was illegal because it was unserialized and

---

[12] *See* https://buffalonews.com/news/local/da-suspect-in-police-shooting-accused-of-using-homemade-guns-in-attacks/article_0ccc4699-a340-53b9-a87e-26a278dd7fc8.html (last visited June 28, 2022).

48

did not have a permit.

262.    Police found three more ghost guns when searching Gerwitz' home, and the Erie County District Attorney stated that Gerwitz had a "little gun shop in his house."

263.    On or around May 5, 2020, Brownells sent a package to Craig Bubak at an address on Riggs Street in Franklinville, NY.

264.    On information and belief, the package Brownells sent to Bubak contained unfinished frames or receivers and/or the parts to make them into ghost guns.

265.    On May 13, 2022, New York State Troopers responded to a report of shots fired in Franklinville.  Officers located Bubak, who was holding a "9mm polymer-based style pistol," which the Troopers described as a "ghost gun," without a serial number.  Further investigation revealed that Bubak had threatened multiple people in that area and fired at a victim but missed.

266.    Troopers arrested Bubak for attempted murder and other charges.

267.     Between approximately June 24, 2020, and May 4, 2022, Brownells sent at least seven packages to Edison Cruz at an address on Andrews Avenue in the Bronx, NY.

268.    On information and belief, the packages Brownells sent to Cruz included unfinished frames or receivers and/or the parts to make them into ghost guns.

269.    Edison Cruz was not legally permitted to possess a firearm.  According to a report from NBC 4 New York, he had "a lengthy rap sheet, and was previously arrested in June 2020 after allegedly walking down the street with a flamethrower and wearing a ballistic vest, a senior law enforcement official said. Later that year, he was arrested again after throwing something at his mother's head, and police found he had an ax, a loaded ghost gun, multiple gun parts and

49

another ballistics vest."[13]

270.    In May 2022, Cruz was arrested for a triple shooting that left one person dead and two others hospitalized.

271.    The *New York Post* reported that Cruz was "a nut for illegal 'ghost guns'" and that he "used one of the untraceable weapons in the shooting."

272.    Between approximately May 29, 2019, and December 7, 2020, Brownells sent at least seven packages to Theodore Brois at an address on Tallwoods Road in Armonk, NY.

273.    On information and belief, the packages from Brownells contained unfinished frames or receivers and/or the parts to make them into ghost guns.

274.    The North Castle Police Department arrested Brois in late-January 2022 for first-degree criminal possession of a weapon (10 or more weapons).  The Somers Daily Voice reported that about 60 guns, gun parts, and a "large amount" of ammunition were seized from Brois's home. North Castle Police Chief Peter Simonsen said the various gun parts could have been used to build additional firearms and that he was "quite surprised with the number of guns and ammunition found in the quiet neighborhood."

275.    On or around March 20, 2021, Brownells sent a package to Steven Salerna-Sanchez at an address on Claudette Court in Cheektowaga, NY.

276.    On information and belief, the package from Brownells contained unfinished frames or receivers and/or the parts to make them into ghost guns.

---

[13] *See* https://www.nbcnewyork.com/news/local/crime-and-courts/25-year-old-man-in-custody-after-bronx-shooting-leaves-1-dead-2-hurt/3672700/ (last visited June 28, 2022).

50

277.     On June 13, 2022, police arrested Salerna-Sanchez, also known as "Gunsmith," on felony weapons charges following a search of the apartment on Claudette Court that netted guns, including an AR-15, along with thousands of rounds of ammunition and kits to make untraceable guns, the Buffalo News reported.[14]

278.     Police Commissioner Joseph Gramaglia described Salerna-Sanchez as a high-level gun dealer who has been implicated in selling dozens of guns on the streets of Buffalo and, possibly, surrounding communities, the Buffalo News reported.  Gramaglia told the newspaper it takes about 30 minutes to assemble the kits into an operational firearm that can be sold for as much as $2,000 on the street.

279.     "This is what feeds the everyday gun violence that we see in our community and in communities across America – not just in Buffalo," Gramiglia said.

280.     On or around April 14, 2022, Brownells sent a package to Joshua Gotthart at an address on Wright Avenue in Buffalo, NY.

281.     On information and belief, the package Brownells sent to Gotthart contained unfinished frames or receivers and/or the parts to make them into ghost guns.

282.     On April 28, 2022, police pulled over Gotthart as he drove from his house on Wright Avenue.

283.     He had a loaded ghost gun in a holster strapped to his right hip and was wearing a bulletproof vest, according to the Erie County District Attorney's Office.

---

[14] *See* https://buffalonews.com/news/local/crime-and-courts/police-raid-nets-weapons-and-ghost-gun-kits-this-is-what-feeds-everyday-gun-violence/article_afc1a5da-eb52-11ec-97a7-1bb3d1b8c1dd.html (last visited June 28, 2022).

51

284.     Around the same time, Buffalo Police SWAT, joined by officers from multiple agencies, raided Gotthart's house, the Buffalo News reported. Using a search warrant, they said they found three unregistered handguns in a bedroom and what the DA's office described as an "arsenal" of rifles, shotguns, and magazines. They also found tools used to assemble ghost guns and a large amount of ammunition in the house, the DA's office said in a statement.[15]

285.     Gotthart was arraigned on one count of Criminal Possession of a Weapon in the Second Degree (Class "C" violent felony), three counts of Criminal Possession of a Firearm (Class "E" felonies), and one count of Unlawful Wearing of a Body Vest (Class "E" felony).

**E.     Glockstore/GS Performance**

286.     GS Performance, LLC, also known as Glockstore and GSPC, is a Tennessee entity with offices in Nashville, TN and San Diego CA.  It is the successor or affiliate of a California entity also named GS Performance, LLC.

287.     To look at Glockstore's website and marketing materials now, one would think the company has nothing to do with selling unfinished frames or receivers.  Its website no longer offers the products, and a consumer visiting today will find no mention of unfinished frames, 80% lowers, or Polymer80's main product line.

288.     But in fact, unfinished frames and receivers were central to Glockstore's business model for many years, and the company was one of the most significant manufacturers and distributors of these deadly products.

---

[15] *See* https://buffalonews.com/news/local/crime-and-courts/gunning-for-the-guns-police-cracking-down-in-buffalo-to-reduce-shootings/article_376afcfe-cc7a-11ec-ae52-efb7dcf5267c.html (last visited June 28, 2022).

52

289.    Glockstore was less than fully thorough in erasing the evidence of its prior business model.  For instance, one still-online blog post talks about how a new model of unfinished pistol frame is "one of the most talked about firearm products ever!"  Glockstore goes on to explain that the product "is specifically designed to straddle the line between an ATF firearm classification and a DIY project that's easily accomplished by anyone even moderately handy."[16]

290.    The same blog post explains that one of the main reasons a consumer might like to buy an unfinished frame is "the fact that you can build a completely legal handgun without any 'government oversight,' aka interference."    Further down, Glockstore sums up its value proposition: "[n]o fuss, no muss, no registration, no records… what's not to like?"  *Id.*

291.    The blog post appears to have embedded a video of Glockstore owner Lenny Magill walking the consumer through how to "transform this 'not a firearm' into a fully functioning 9mm handgun."[17]  The video itself has been removed for violating YouTube's terms of service.  *Id.*

292.    Another blog post Glockstore missed in its whitewashing attempt is still available at the URL http://community.glockstore.com/no-need-to-register-your-handgun-with-the-spectre-polymer80/ (last visited June 28, 2022).  The post is entitled "[100% Legal] Build a Non-Registered Handgun With a Spectre Polymer80."

293.    The post describes the unfinished frame in question as "[o]ne of the most exciting and fastest selling items at the GlockStore." The blog focuses both on the frame's usefulness for

---

[16] *See* http://community.glockstore.com/i-can-build-my-own-gun-with-this/ (last visited June 28, 2022).
[17] *See also* http://community.glockstore.com/lenny-magill-completes-the-new-polymer-80-full-size-v2-80-lower-using-glock-factory-parts/ (another blog post describing the contents of Mr. Magill's video) (last visited June 28, 2022).

53

Case 1:22-cv-06124 Document 1-1 Filed 07/19/22 Page 78 of 115

evading registration requirements and on the ease of converting it into a working ghost gun, explaining that "[o]ne can simply purchase them as a 'non-firearm' part and then 'finish' the frame into a functioning lower. You then assemble then with readily available parts and legally own a firearm that does not have to be 'registered.'" *Id.* (quotation marks in the original).

294. According to Glockstore, "[t]his is completely legal and acceptable based on Federal laws that have been on the record for many years that state an individual can actually make a firearm for personal use." *Id.* The blog post does not acknowledge the existence of state laws, licensing requirements, or longstanding prohibitions against firearm possession by felons or other dangerous persons.

295. Glockstore's illicit sales of unfinished frames and receivers stopped only after the State of California filed suit against it based on several consumer protection statutes. *See* Amended Complaint, *People of the State of California v. Blackhawk Mfg. Grp., et al.*, Case No. CGC-21-594577 (Cal. Super. Ct.).

296. California's pleading details several undercover purchases from Glockstore, as well as how Glockstore's marketing falsely "leads consumers to believe that ATF has approved the sale" of its products and falsely projects "the conclusion the [unfinished frame] is unregulated." *See id.* ¶¶ 106-112, 133-36.

297. California specifically cited Glockstore's failure to inform consumers of the unfinished frame's illegality under California law, and of the legal requirements for the gun to be serialized and for the consumer to pass a background check. *Id.* ¶¶ 138-40.

298. Glockstore shipped large numbers of its illegal products into New York as well,

54

again based on a manifest disregard for state law.

299.    Between November 13, 2017, and July 2, 2020, Defendant Glockstore shipped at least five packages to Domingo Valle in Bronx County.

300.    On information and belief, the packages from Defendant Glockstore to Valle contained unfinished frames or receivers and/or the parts to make them into ghost guns.

301.    Valle had been previously convicted of a gun crime and served time in jail for it. He could not legally purchase a firearm and would have failed a background check if he had tried to do so.  See https://www.justice.gov/usao-sdny/pr/bronx-man-who-possessed-five-ghost-guns-charged-possessing-firearm-and-ammunition.

302.    When law enforcement agents executed a search warrant on Valle's address in the Bronx, on or around October 4, 2021, they found two "ghost gun" pistols and an AR-style "ghost gun" rifle inside a concealed shelf in the living room, as well as another AR-style "ghost gun" rifle in the master bedroom.

303.    On information and belief, these weapons were assembled from the shipments sent by Defendant Glockstore.

304.    Valle was charged with being a felon in possession of a firearm and ammunition in the U.S.  District Court for the Southern District of New York.

305.    On or around December 14, 2021, GS Performance sent a package to a woman with the initials N.S. at an address on Baisley Avenue in the East Rockaway area of Queens, NY.

306.    On information and belief, the package sent to the residence contained unfinished frames or receivers and/or the parts to make them into ghost guns.

55

307. On February 19, 2022, Thomas Saxton, from the same address, was arrested after threatening to shoot his wife while she held her child. When police stopped Saxton, he was carrying two ghost guns that had been converted to working firearms, as well as additional ammunition and a plastic bag of cocaine. *See* https://www.liherald.com/stories/east-rockaway-man-indicted-for-possession-of-ghost-guns,141297,

308. Between approximately August 21, 2020, and March 19, 2021, GS Performance sent at least five packages to Ricardi Kiem at an address on Hook Creek Boulevard in the Rosedale area of Queens, NY.

309. On October 12, 2021, police executed a search warrant on the Hook Creek Boulevard location that Kiem shared with his partner and their ten-year-old daughter.

310. Police found six fully assembled ghost gun pistols, three additional unfinished frames and the parts necessary to convert them into working pistols, two unfinished receivers capable of conversion to an AR-15 style rifle, an additional unfinished receiver, four large capacity magazines, approximately 650 rounds of ammunition, 23 additional pistol magazines, and various other components and parts used to convert unfinished frames and receivers into working weapons.

311. Some of the firearms were found in the dresser drawer of the child's bedroom.

312. Kiem did not have a license to possess or own firearms.

56

313.     A portion of the firearms recovered from Kiem and his partner are pictured below:



314.     Kiem and his partner were charged with 39 criminal counts, including violations of the firearms laws and endangering the welfare of a child.

315.     On or around August 7, 2020, and October 29, 2020, GS Performance sent packages to Kai Zhao at an address on 167th Street in the Flushing area of Queens, NY.

316.     On information and belief, the packages GS Performance sent to Zhao contained unfinished frames or receivers and/or the parts to make them into ghost guns.

317.     On or around August 17, 2020, GS Performance sent a package to Seongwoo Chung at an address on Crocheron Avenue in the Flushing area of Queens, NY.

318.     On information and belief, the package GS Performance sent to Chung contained

57

unfinished frames or receivers and/or the parts to make them into ghost guns.

319.     On or around March 1, 2022, Zhao, Chung, and two codefendants were arrested as part of an NYPD investigation into firearms trafficking.

320.     As discussed above, search warrants executed on Zhao, Chung, and their alleged accomplices resulted in the seizure of 27 ghost guns, including 22 semiautomatic pistols, 4 assault weapons, and 1 assault shotgun. The search warrants also resulted in the NYPD seizing 16 unfinished receivers, 78 large capacity magazines, approximately 10,000 rounds of ammunition, silencers, sites, components and tools to assemble unfinished frames and receivers into working firearms, and more than $50,000 in cash. Zhao, Chung, and their codefendants did not have a license to own or possess firearms.

321.     Between approximately November 26, 2018, and December 6, 2019, GS Performance sent at least four packages to Matthew Gerwitz at an address on Morgan Street in Tonawanda, NY.

322.     On information and belief, the packages GS Performance sent to Gerwitz contained unfinished frames or receivers and/or the parts to make them into ghost guns.

323.     As discussed above, Gerwitz conducted a drive-by shooting and shot a police officer multiple times, using weapons the Erie County District Attorney described as "homemade" and "off-the-internet."

324.     On or around January 12, 2022, and February 7, 2022, GS Performance sent packages to Gregory Lopez at an address on Rosman Road in Thiells, NY.

325.     On information and belief, the packages GS Performance sent to Lopez contained

58

unfinished frames or receivers and/or the parts to make them into ghost guns.

326.    On or around April 27, 2022, police executed a search warrant on Lopez' Rosman Road address.    They discovered two loaded, unserialized AR-15-style ghost gun rifles, ammunition, magazines, and multiple ghost gun parts.

327.    A Rockland County grand jury indicted Lopez on twelve counts of violating New York's firearms laws.

328.    On or around July 10, 2020 and March 8, 2021, GS Performance sent packages to Edison Cruz at an address on Anderson Avenue in the Bronx, NY.

329.    On information and belief, the shipments from GS Performance to Cruz contained unfinished frames or receivers and/or the parts to make them into ghost guns.

330.    As discussed, Edison Cruz was man with a "lengthy rap sheet" who was not legally permitted to buy or possess a firearm.  In May 2022, Cruz committed a triple shooting that left one person dead and two others hospitalized.  The New York Post reported that Cruz was "a nut for illegal 'ghost guns'" and that he "used one of the untraceable weapons in the shooting."

331.    On or around August 18, 2021, GS Performance sent a package to David Goldberg at an address on Bullet Hole Road in Mahopac, NY.

332.    On information and belief, the package GS Performance sent to Goldberg contained unfinished frames or receivers and/or the parts to make them into ghost guns.

333.    The Putnam County Sheriff's Department arrested Goldberg in late-January 2022 on four felony charges, including first-degree criminal possession of a weapon (10 or more), as part of a multi-agency investigation into ghost guns and other illegal weapons.

59

334.     On or around November 4, 2021, GS Performance sent a package to Andrew Lopez at an address on Fair Street in Carmel, NY.

335.     On information and belief, the package GS Performance sent to Lopez contained unfinished frames or receivers and/or the parts to make them into ghost guns.

336.     The Putnam County Sheriff's Department, arrested Lopez in late-January 2022 for second-degree criminal possession of a weapon as part of a multi-agency investigation into ghost guns and other illegal weapons.

**F.      Indie Guns**

337.     Indie Guns LLC is a Florida limited liability company with its principal place of business in Orlando, Florida.  It appears to be affiliated with another Florida limited liability company named Indie Group LLC, also with its principal place of business in Orlando.

338.     Indie Guns' business focuses on ghost guns and the parts for them, particularly unfinished frames and receivers.  It touts itself as the "[p]remiere distributor of high quality USA made polymer gun frames, 80% lowers, and build kits."

339.     Its website advertises a wide variety of unfinished frames, frame kits and full build kits.

340.     The company touts a "blank serialization plate" as one of the key features of the unfinished frames it sells.

341.     Indie Guns also sells unfinished frames as part of "LSB Kits" (the acronym standing for "lock, stock, and barrel"), which the company describes as "everything needed to build a complete pistol in a discounted bundle package."  *See* https://indieguns.com/kangal-17-urban-

60

camo-lsb-kit-lock-stock-barrel-for-g17-gen3/ (last visited June 28, 2022).

342.    The company ships these LSB kits directly to the consumer, without going through an FFL that would follow federal serialization, background check, and recordkeeping requirements.  The company knows and intends that these consumers will convert the LSB kits into working firearms – as Indie Guns itself explains, "When done with your build, just grab a box of rounds and you're good to go…"  *Id.*

343.    Indie Guns has sold and continues to sell and ship illegal unfinished frames and receivers into New York State.

344.    Although the Office of the Attorney General has not yet obtained records of the shipments sent by Indie Guns, its sale of unfinished frames into the New York market is evidenced by the fact that it sent unfinished frames to New York State and City investigators in response to undercover purchases.

345.    On or around May 18, 2022, an investigator from the New York City Sheriff's Office conducted an undercover purchase of a Polymer80 PF940V2 Glock-compatible unfinished frame from Indie Guns, as part of a complete frame assembly kit including a trigger assembly, a magazine, and a complete slide with barrel.  Indie Guns accepted the order and shipped the product into New York County.

346.    On or around May 27, 2022, investigators from the Office of the Attorney General conducted an undercover purchase of a Polymer80 PF940V2 Glock-compatible unfinished frame from Indie Guns' website, as part of a complete frame assembly kit.

347.    The Indie Guns website said that "Indie Guns is pleased to present the CFA-17

61

(COMPLETE FRAME ASSEMBLY-17) The CFA-17 contains all necessary parts, as detailed below, to build a complete G17 Gen3 lower." Indie Guns also touted the frame's "blank serialization plate."[18]

348.    Indie Guns accepted the order and shipped the unfinished frame into Kings County.

349.    On information and belief, these undercover purchases were just two of many instances when Indie Guns sent prohibited unfinished frames and receivers into New York, without conducting a background check or implementing any other controls to prevent improper persons from turning its products into working ghost guns.

### G.    KM Tactical

350.    KM Tactical is a Missouri-based online retailer of gun parts and paraphernalia, focusing on AR-15, AR-10, and Glock components.

351.    Categorized under the "Goodies" section of the site, KM Tactical offers an extensive selection of unfinished frames and receivers divided between AR and Glock platforms.[19]

352.    According to KM Tactical owner Kyle Murphy in an October 2020 interview, "[n]othing we sell does damage, we don't sell serialized parts."[20]

353.    Mr. Murphy is correct that the unfinished frames and receivers his business sells into New York are unserialized, but the damage has been extensive.

---

[18] *See* https://indieguns.com/complete-frame-assembly-for-g17-g17l-g22-g24-g31-g34-g35/ (last visited June 6, 2022).

[19] *See* https://kmtactical.net/product-category/default-category/accessories/80-lowers/ar-platform/ and https://kmtactical.net/product-category/default-category/accessories/80-lowers/glock-platform/ (last visited June 28, 2022).

[20] https://www.leessummit.org/husband-wife-duo-move-business-home-to-lees-summit/

354.     Shipping data obtained by the Office of the Attorney General indicates that from March 2020 to the present, KM Tactical sent approximately 246 packages to non-FFL addresses in New York State each month, with approximately 222 of those packages roughly matching the weight and dimensions of the unfinished frames obtained in undercover purchases.

355.     On or around July 29, 2021, KM Tactical sent a package to Jonathan Santos at an address on 102nd Street in the Richmond Hill area of Queens, NY.

356.     On or around September 22, 2021, KM Tactical sent a package to Jonathan Santos at an address on 102nd Street in the Richmond Hill area of Queens, NY.

357.     On information and belief, the packages KM Tactical sent to Santos contained unfinished frames or receivers and/or the parts to make them into ghost guns.

358.     As discussed above, when NYPD officers searched Santos' home and car, they found dozens of working ghost guns, along with parts, ammunition, and tools used to convert unfinished frames and receivers into working weapons.

359.     Santos was charged with 252 separate violations of New York's firearms laws.

360.     On or about April 10, 2020, KM Tactical sent a package to Craig Bubak at an address on Riggs Street in Franklinville, NY.

361.     On information and belief, the package KM Tactical sent to Bubak contained unfinished frames or receivers and/or the parts to make them into ghost guns.

362.     On May 13, 2022, New York State Troopers responded to a report of shots fired in Franklinville. Officers located Bubak, who was holding a "9mm polymer-based style pistol," which the Troopers described as a "ghost gun," without a serial number. Further investigation

63

revealed that Bubak had threatened multiple people in that area and fired at a victim but missed.

363. Troopers arrested Bubak for attempted murder and other charges.

364. Between approximately October 28, 2019, and May 22, 2020, KM Tactical sent 11 packages to Matthew Gerwitz at addresses on Morgan Street and Grove Street in Tonawanda, NY.

365. On information and belief, the packages KM Tactical sent to Gerwitz contained unfinished frames or receivers and/or the parts to make them into ghost guns.

366. According to the Erie County District Attorney's Office, on or around May 26, 2020, Gerwitz carried out a drive-by shooting near his home, wounding a man in the stomach. When Tonawanda police began to investigate the area, Gerwitz opened fire with a high-powered rifle, shooting a police detective between multiple times.[21]

367. The Erie County District Attorney described the pistol used by Gerwitz as "a homemade, off-the-internet 9 mm," noting that the gun was illegal because it was unserialized and because Gerwitz did not have a permit.

368. Police found three more ghost guns when searching Gerwitz' home, and the Erie County District Attorney stated that Gerwitz had a "little gun shop in his house."

369. Between approximately April 23, 2020 and April 30, 2020, KM Tactical sent two packages to Brandon Glaski at an address on Adams Crossing Road in East Nassau, NY.

370. On information and belief, the packages sent from KM Tactical to Glaski contained unfinished frames or receivers and/or the parts to make them into ghost guns.

---

[21] *See* https://buffalonews.com/news/local/tonawanda-man-indicted-in-drive-by-slaying-attempted-murder-of-cop/article_fff58d82-e7b7-11ea-a7fe-7f8ba091a3f4.html (last visited June 28, 2022).

64

371.    On June 12, 2018, law enforcement officers from the ATF and the New York State Police executed a search warrant on Glaski's residence.  In addition to dozens of other weapons, the officers found seventeen unfinished frames and receivers, all without serial numbers, including two that had been converted into working rifles.

372.    Glaski had a prior felony conviction and would not have been eligible to purchase a gun legitimately.

373.    Glaski pled guilty to federal gun charges in the Northern District of New York, and was sentenced to 30 months in prison.[22]

374.    Between approximately September 24, 2020, and September 29, 2020, KM Tactical sent two packages to David Goldberg at an address on Bullet Hole Road in Mahopac, NY.

375.    On information and belief, the packages KM Tactical sent to Goldberg contained unfinished frames or receivers and/or the parts to make them into ghost guns.

376.    As discussed above, Goldberg was later arrested by the Putnam County Sheriff's Department as part of an ongoing investigation into illegal ghost guns.

**H.    <u>Primary Arms</u>**

377.    Defendant Primary Arms is a Houston-based online retailer of firearms, parts, and paraphernalia.

378.    Although Primary Arms now appears to sell their unfinished frames and receivers serialized and through a FFL, for many years the company shipped unfinished frames and receivers

---

[22] *See* https://www.justice.gov/usao-ndny/pr/rensselaer-county-felon-sentenced-30-months-firearms-convictions (last visited June 28, 2022).

directly to New York consumers, with no serialization and no background check.

379.    Shipping data obtained by the Office of the Attorney General indicates that from March 2020 to the present, Primary Arms sent approximately 790 packages to non-FFL addresses in New York State each month, with approximately 332 of those packages roughly matching the weight and dimensions of the unfinished frames obtained in undercover purchases.

380.    On or around November 27, 2021, Primary Arms sent a package to a woman with the initials N.S.  at an address on Baisley Avenue in the East Rockaway area of Queens, NY.

381.    On information and belief, the package sent to the Residence contained unfinished frames or receivers and/or the parts to make them into ghost guns.

382.    As discussed above, on February 19, 2022, Thomas Saxton, from the same address, was arrested after threatening to shoot his wife while she held her child.  When police stopped Saxton, he was carrying two ghost guns that had been converted to working firearms, as well as additional ammunition and a plastic bag of cocaine.

383.    Between approximately March 17, 2021, and September 13, 2021, Primary Arms sent at least four packages to Ricardi Kiem at an address on Hook Creek Boulevard in the Rosedale area of Queens, NY.

384.    As discussed above, police executed a search warrant on the Hook Creek Boulevard location and found an arsenal of ghost guns and the parts and tools to make them.  Kiem and his partner were charged with 39 criminal counts, including violations of the firearms laws and endangering the welfare of a child.

385.    On or around August 22, 2021, and December 28, 2021, Primary Arms sent

66

packages to Edison Cruz at an address on Anderson Avenue in the Bronx, NY.

386. As discussed above, Cruz had "a lengthy rap sheet" and was not legally permitted to own or operate a firearm. In May 2022, Cruz committed a triple shooting that left one person dead and two others hospitalized. The New York Post reported that Cruz was "a nut for illegal 'ghost guns'" and that he "used one of the untraceable weapons in the shooting."

387. On or around December 17, 2021, Primary Arms sent a package to Theodore Brois at an address on Tallwoods Road in Armonk, NY.

388. On information and belief, the package Primary Arms sent to the Brois residence contained unfinished frames or receivers and/or the parts to make them into ghost guns.

389. As described above, police in Westchester County seized about 60 ghost guns, gun parts, and a "large amount" of ammunition from Brois's home. North Castle Police Chief Peter Simonsen said the various gun parts could have been used to build additional firearms and was "quite surprised with the number of guns and ammunition found in the quiet neighborhood."

390. On or around May 26, 2021, Primary Arms sent a package to Adam DiMaggio at an address on Lincoln Drive in Carmel, NY.

391. On information and belief, the package Primary Arms sent to DiMaggio contained unfinished frames or receivers and/or the parts to make them into ghost guns.

392. The FBI Safe Streets Task Force and Putnam County Sheriff's Office, arrested DiMaggio in late-January 2022 for unlawful possession or receipt of a firearm or ammunition by a prohibited person.

67

### I.     Rainier Arms

393.    Rainier Arms is a Washington State-based online retailer that describes itself as "the ultimate stop for AR-15 rifles and AR-15 parts."

394.    When Rainier Arms markets its unfinished frames or receivers, the company portrays them as exempt from public safety laws.  For instance, Rainier Arms explains that "80% receivers are almost-completed pieces of machined metal or plastics that are not classified as firearms by the ATF.  As such, they can be bought, sold, and transported without restriction, as the government jut considers them pieces of metal and/or plastic and not guns."[23]

395.    Rainier Arms also sells unfinished handgun frames, including the Glock-compatible Lone Wolf Arms Freedom Wolf 80% Pistol Frame.  Rainier Arms' product description for the unfinished frame claims the product "is not at the stage of manufacturing to meet the ATF definition on a firearm frame. This means that this item can ship straight to your door, with no Federal Firearms License required."[24]

396.    Rainier Arms is aware of state-law restrictions on the sale of unfinished frames or receivers to consumers, declaring that it will not ship them to New Jersey or sell them in-store within Washington State.  However, the company acknowledges no restrictions on shipping to New York consumers.

---

[23]     https://www.rainierarms.com/manufacturers/polymer80/  (last visited June 28, 2022).  *See also* https://www.rainierarms.com/lower/filter/category2:stripped-lower-receivers/  (representing that "80% Lower Receivers are components that require the completion of the last 20% of milling. Due to this fact, 80% Lowers are not treated as firearms") (last visited June 28, 2022).
[24]     https://www.rainierarms.com/lone-wolf-arms-freedom-wolf-80-glock-19-compatible-pistol-frame/  (last visited June 28, 2022).

68

397.     Rainier Arms has sold and continues to sell unfinished frames and receivers into New York State.

398.     Rainier Arms' sale of unfinished frames into the New York market is evidenced by the fact that it sent an unfinished frame to New York City investigators in response to an undercover purchase.

399.     On or around April 27, 2022, an investigator from the New York City Sheriff's Office conducted an undercover purchase of a Polymer80 PF940SC Glock-compatible unfinished pistol frame from Ranier Arms.

400.     Ranier Arms accepted the order and shipped the frame into New York County.

401.     On or around May 12, 2022, an investigator from the New York City Sheriff's Office conducted an undercover purchase of a 24-round magazine[25] and two parts kits for the Polymer80 ghost gun.

402.     Rainier Arms accepted the order and shipped the parts into New York County.

403.     On or around May 18, 2022, an investigator from the New York City Sheriff's Office conducted an undercover purchase of a Polymer80 PF940v2 Glock-compatible unfinished pistol frame from Ranier Arms, along with a Glock 17-compatible slide and barrel.

404.     Ranier Arms accepted the order and shipped the frame and parts into New York County.

405.     Shipping data obtained by the Office of the Attorney General indicates that from

---

[25] The large-capacity magazine Rainier Arms sold was separately illegal under New York State law.  *See* Penal Law § 265.00(23).

March 2020 to the present, Rainier Arms sent approximately 131 packages to non-FFL addresses in New York State each month, with approximately 106 of those packages roughly matching the weight and dimensions of the unfinished frames obtained in undercover purchases.

406.    Between approximately July 2, 2021, and September 1, 2021, Rainier Arms sent at least seven packages to Chaz McMillan at an address on 162nd Street in Queens, NY.

407.    On information and belief, the packages Rainier Arms sent to McMillan contained unfinished frames, unfinished receivers, and/or the parts to convert them into ghost guns.

408.    As discussed above, when law enforcement searched McMillan's house, they found 25 working ghost guns, including 19 semiautomatic pistols, 5 assault weapons, and 1 semiautomatic shotgun.  They also found four additional unfinished frames and receivers that had not yet been constructed into working weapons.  McMillan did not have a license to possess or own firearms.

409.    On or around March 12, 2018, Rainier Arms sent a shipment to Brandon Glaski in East Nassau, NY.

410.    On information and belief, the package Ranier Arms sent to Glaski contained unfinished frames or receivers and/or the parts to make them into ghost guns.

411.    As discussed above, Glaski had a felony conviction and could not purchase a gun legally.  When law enforcement officers from the ATF and the New York State Police executed a search warrant on Glaski's residence, they found seventeen unfinished frames and receivers, all without serial numbers, including two that had been converted into working rifles.

412.    Between approximately April 1, 2021, and May 22, 2021, Rainier Arms sent at

70

least three packages to Ricardi Kiem at an address on Hook Creek Boulevard in the Rosedale area of Queens, NY.

413.    On information and belief, the packages Ranier Arms sent to Kiem contained unfinished frames or receivers and/or the parts to make them into ghost guns.

414.    As discussed above, police executed a search warrant on the Hook Creek Boulevard location and found an arsenal of ghost guns and the parts and tools to make them.  Kiem and his partner were charged with 39 criminal counts, including violations of the firearms laws and endangering the welfare of a child.

415.    On or around February 1, 2022, Rainier Arms sent a package to a woman with the initials N.S. at an address on Baisley Avenue in the East Rockaway area of Queens, NY.

416.    On information and belief, the package sent to the residence contained unfinished frames or receivers and/or the parts to make them into ghost guns.

417.    As discussed above, on February 19, 2022, Thomas Saxton, from the same address, was arrested after threatening to shoot his wife while she held her child.  When police stopped Saxton, he was carrying two ghost guns, as well as additional ammunition and a plastic bag of cocaine.

418.    On or around July 20, 2021, Rainier Arms sent a package to Adam DiMaggio at an address on Lincoln Drive in Carmel, NY.

419.    On information and belief, the package Rainier Arms sent to DiMaggio contained unfinished frames or receivers and/or the parts to make them into ghost guns.

420.    The FBI Safe Streets Task Force and Putnam County Sheriff's Office arrested

71

DiMaggio in late-January 2022 for unlawful possession or receipt of a firearm or ammunition by a prohibited person.

### J.     Rock Slide USA

421.    Defendant Rock Slide USA, LLC is a North Carolina limited liability company with its principal place of business in Broadway, NC.

422.    Rock Slide USA specializes in manufacturing "uppers," the part of the gun that fits on top of the "lower" part containing the frame.  Rock Slide USA also sells Polymer80 brand Glock-compatible unfinished frames, and touts their compatibility with its own "upper" products.

423.    Rock Slide USA describes the unfinished frames they sell as "com[ing] with everything needed to make your own custom, Glock compatible pistol at home.  Various colors available.  No license required."[26]

424.    Although the Office of the Attorney General has not yet obtained records of the shipments sent by Rock Slide USA, its sale of unfinished frames into the New York market is evidenced by the fact that it sent an unfinished frame to New York City investigators in response to an undercover purchase.

425.    On or around May 11, 2022, an investigator from the New York City Sheriff's Office conducted an undercover purchase of a Polymer80 PF940C Glock-compatible unfinished frame from Rock Slide USA, along with Rock Slide-brand upper and the remaining parts necessary to convert the unfinished frame into a working ghost gun.

426.    The checkout page included the words "No license required.  Ships anywhere in

---

[26] *See* https://rockslideusa.com/shop/ (last visited June 28, 2022).

72

the USA."

427.    Rock Slide USA accepted the order and shipped the frame into New York County.

428.    On information and belief, this undercover purchase was just one of many instances when Rock Slide USA sent prohibited unfinished frames into New York, without conducting a background check or implementing any other controls to prevent improper persons from turning its products into working ghost guns.

## IV.    THE PRICE PAID BY THE PEOPLE: DEFENDANTS' GHOST GUNS HAVE HARMED NEW YORK AND WILL CONTINUE TO DO SO IF UNABATED.

429.    The influx of ghost guns into New York is a significant threat to public health and safety.  New York's legislature has passed laws to serve this purpose, but by the conduct described in detail above, Defendants not only undermine those laws, they affirmatively harm New Yorkers by (i) increasing the number of firearms likely to be used in the commission of a crime, (ii) diminishing or unwinding the effect of on-point legal protections, including those relating to intimate partner violence, (iii) increasing the number of murders and suicides, and (iv) creating a new primary and secondary market for illicit guns in New York.

430.    As a result, to date, New York has had to (i) invest in ghost gun-specific law enforcement initiatives, technology, and resources, (ii) expend increasing amounts of resources on law enforcement investigative efforts to solve specific crimes involving assembled ghost guns, and (iii) research and implement other measures to quell the crisis, including expanding relevant community support and services and equipping more public hospitals with resources to treat gun-related injuries.

73

A.     **The Rise of Ghost Guns and the Damage Done**

431.     The available data shows that ghost guns are proliferating – and are being used in crimes – at an exponential pace.  According to the Bureau of Alcohol, Tobacco, Firearms and Explosives, the number of ghost guns recovered at crime scenes nationwide has increased more than elevenfold in just six years, from 1,758 in 2016 to 19,344 in 2021.[27]  Notably, according to the ATF, "[t]hese numbers are likely far lower than the actual number of [ghost guns] recovered from crime scenes" because some law enforcement agencies trace ghost guns incorrectly, while others do not attempt to trace guns that have no serial numbers or identifiable markings.[28]

432.     The number of ghost guns recovered at crime scenes in New York likely follows this disturbing upward national trend.

433.     Specifically, New York law enforcement is recovering an increasing number of crime guns each year.  In 2018, law enforcement made 6,559 crime gun recoveries, but in 2021, that number rose to 10,132 crime guns—an increase of 54.5%.[29]

434.     Ghost guns are an increasingly disturbing part of this growing pool.  Throughout New York State, including New York City's five boroughs, the number of assembled ghost guns

---

[27] *See* 87 Fed. Reg. 24656 (citing internal figures from the ATF Office of Strategic intelligence and Information).

[28] *See id.* at n. 18.  Law enforcement officers often confuse ghost guns with "defaced" firearms.  The latter is a term of art that relates only to serialized firearms which had the serial number scraped, covered, or otherwise impeded from view.  Law enforcement agencies, including NYPD, have laboratory capabilities and processes to recover serial numbers on defaced firearms, and in some instances, a recovering officer may designate a recovered ghost gun as "defaced" so that the agency can take a closer look and determine whether a serial number may be recovered.  After subsequent review, a ghost gun initially misidentified as a defaced firearm will not be re-identified by law enforcement.  This accounts for a potentially significant undercount of recovered ghost guns.

[29] These figures include all firearms identified as "defaced," whether they are in fact defaced with potentially recoverable serial numbers or in actuality ghost guns with no serial number at all

74

law enforcement recovered (and properly identified as such) increased from just 44 in 2018 to 641 in 2021—a 1,357% increase. Moreover, as of June 17, 2022, there have been 373 recoveries of assembled ghost guns, putting New York on pace to recover over 800 ghost guns over the full year.[30]

435. When considering the rate of ghost guns in the context of all gun recoveries across the State, the trend is deeply disturbing. In 2018, assembled ghost guns constituted only 0.67% of all guns recovered by law enforcement. That rate increased to 1.5% in 2019, then 3.6% in 2020, then further to 6.32% in 2021. Upon information and belief, from January 1 through June 20, 2022, law enforcement has recovered an assembled ghost gun 8.7% of the time they made a gun recovery. Senior law enforcement officials expect the prevalence of ghost guns to continue to increase unless steps are taken to restrain illicit trafficking.

436. The number of assembled ghost guns in New York —including those created from Defendants' illegal products—has reached crisis levels and continues to climb.

437. The pandemic has exasperated the issue. Gun manufacturers have generally reported massive sales of ghost gun kits since March 2020. Upon information and belief, Defendants' sales of unfinished frames and receivers have likewise increased exponentially over that same time period, with a significant number of those products being shipped directly into New York State or easily finding their way into New York State—leading to significant profits for

---

[30] Notably, these numbers do not count recovered unfinished frames and receivers, nor do they count completed "major components" of a firearm, which are also illegal and harmful to New Yorkers. For example, these numbers do not account for the NYPD's recovery of 50 unfinished frames or receivers incident to arrests in 2020, 125 in 2021, and 100 for this calendar year through May 31st.

75

Case 1:22-cv-06124 Document 1-1 Filed 07/19/22 Page 100 of 115

Defendants from this illicit market.

438.   Upon information and belief, that increase in sales has coincided with a massive uptick in gun murders, as approximately 79% of U.S. murders committed in 2020 involved a firearm, which represents a 34% increase from 2019, a 49% increase from 2015, and a 75% increase from 2010.[31]

439.   Defendants' business practices, which at bottom increase the number of illegal operable firearms in New York, are also related to an increase in suicide deaths, as approximately half of all suicide deaths involve a firearm.  Like gun murders, gun-related suicides in the U.S. increased 10% between 2015 and 2020, and 25% when measured against 2010.[32]

440.   While New York was among the states with the lowest rates of gun fatalities in 2020, Defendants' products and practices are changing the tide.  Indeed, Defendants' business practices and conduct are significant contributors to New York's increasing rates of gun-related fatalities.

**B.**     **Defendants' Conduct Is Dangerous and Directly Harms New York**

441.   The evidence that Defendants have caused and continue to cause great harm to New York's public health and safety by their conduct and business practices is not anecdotal or limited to instances of sales where their products were ultimately used in crimes or found in the possession of convicted felons.

442.   Rather, guns recovered at crime scenes are statistically related to gun manufacturer

---

[31] https://www.pewresearch.org/fact-tank/2022/02/03/what-the-data-says-about-gun-deaths-in-the-u-s/
[32] *Id.*

76

practices in the aggregate.  Available public health research indicates that manufacturers can lessen the use of their guns in crime by implementing certain reasonable policies and practices.  For example, a manufacturer may have an authorized dealer program, maintain records of sales to individual dealers or visit dealers frequently, maintain distributor agreements, or impose location-related controls over where their advertising appeared.  The more of these practices that a manufacturer has followed, the less frequently their products were recovered from crime scenes.  By these practices, a manufacturer aligns its business practices with its responsibilities under the law and incentivizes its dealer or distributor customers to do the same.

443.    Defendants' conduct, as described in more detail above, is entirely at odds with such reasonable policies and practices.  Defendants here do nothing to geographically restrain the marketing of their prohibited products, and they employ policies and practices that result in sales of these illegal products directly to unknown and unchecked individuals in New York.

444.    Moreover, Defendants are aware that criminals are an important segment of the gun industry market.  To that end, a significant percentage of handguns that have been used in crimes in New York have historically originated in states that have weaker gun laws.  Indeed, according to the ATF, 74% of firearms used by individuals in the commission of a crime in New York were purchased outside of New York.  By the conduct described above, Defendants exacerbate the challenges New York has in preventing illegal firearms from entering our communities by providing criminals and other individuals who either know or suspect they are ineligible to legally purchase a firearm with a direct avenue to illicitly purchase one that is virtually untraceable.  Thus, Defendants' conduct and business practices have created a new and more easily accessible market

77

for illegal operable firearms in New York. (*See also, e.g.*, *supra* ¶¶ 97-103).

445.    Moreover, ATF trace data has also long-established certain dealer characteristics that indicate serious problems. For example, guns purchased by individuals who bypassed a geographically closer dealer constitute the vast majority of traced firearms. That risky characteristic is exponentially amplified by individuals who can not only bypass geographically closer dealers but can bypass any and all dealers entirely.

446.    In the context of domestic violence, an intimate partner is 5 times more likely to be murdered when the violent partner has access to a firearm.[33] New York law addresses this very real and substantial risk by, among other ways, suspending a violent partner's firearms license, rendering the individual ineligible for such a license, and requiring the immediate surrender of any firearms he or she possesses or owns when certain conditions are present. *See* N.Y. Fam. Ct. Act § 842-a (McKinney). These laws are effective. Limitations, like those imposed by N.Y. Fam. Ct. Act § 842-a, have been studied and are linked to significant reductions in intimate partner homicide rates. Defendants' sale of ghost gun products and their refusal to conduct background checks undermine these important protections, *increasing* the already-significant risk that a protected person or persons will be murdered.

447.    Defendants' sale of unfinished frames and receivers directly to consumers also undermines New York's licensing laws, which play a major role in protecting the public. Research indicates that comprehensive background checks are most effective in lowering firearm homicide

---

[33] Zeoli AM, McCourt A, Buggs S, Frattaroli S, Lilley D, Webster DW. Analysis of the Strength of Legal Firearms Restrictions for Perpetrators of Domestic Violence and Their Associations With Intimate Partner Homicide. Am J Epidemiol. 2018 Nov 1;187(11):2365-2371. Doi: 10.1093/aje/kwy174. PubMed PMID: 30383263.

78

and suicide rates when they are implemented in conjunction with handgun purchaser licensing laws.[34] Notably, when Missouri repealed its handgun purchaser licensing law, there was an "estimated [] 47.3% overall increase in firearm homicides and a 23.5% increase in firearm suicides."[35] Consistent with that result, permit to purchase laws like New York's have been studied and demonstrated to meaningfully decrease firearm homicides.[36]

448. But by their conduct, Defendants are nullifying those benefits. Defendants are stripping New York's effective licensing and permit laws of their impact, and consequently the number and rate of homicides and suicides will continue to rise.

449. Accordingly, given the nature of Defendants' business practices and products, together with the known nature of the gun industry market and the statistical relationship between a gun manufacturer's conduct and crime gun outcomes, Defendants are knowingly and/or recklessly causing harm to New York's public health and safety.

450. With every sale Defendants have made and continue to make, they circumvent and undermine New York's firearms public safety measures for their own profit.

---

[34] McCourt AD, Crifasi CK, Stuart EA, Vernick JS, Kagawa RMC, Wintemute GJ, Webster DW. Purchaser Licensing, Point-of-Sale Background Check Laws, and Firearm Homicide and Suicide in 4 US States, 1985-2017. Am J Public Health. 2020 Oct;110(10):1546-1552. Doi: 10.2105/AJPH.2020.305822. Epub 2020 Aug 20. PubMed PMID: 32816544; PubMed Central PMCID: PMC7483089.

[35] *Id.*

[36] Crifasi CK, Merrill-Francis M, McCourt A, Vernick JS, Wintemute GJ, Webster DW. Association between Firearm Laws and Homicide in Urban Counties. J Urban Health. 2018 Jun;95(3):383-390. Doi: 10.1007/s11524-018-0273-3. PubMed PMID: 29785569; PubMed Central PMCID: PMC5993701; Crifasi CK, Merrill-Francis M, McCourt A, Vernick JS, Wintemute GJ, Webster DW. Correction to: Association between Firearm Laws and Homicide in Urban Counties. J Urban Health. 2018 Oct;95(5):773-776. Doi: 10.1007/s11524-018-0306-y. PubMed PMID: 30117057; PubMed Central PMCID: PMC6181823.

79

### C.    We Need to Fix This Avoidable Crisis.

451.    The rise of gun violence in New York is a public health crisis, as declared both by the 2021-2022 legislative session and by the Governor's recent Executive Order.  *See* N.Y. Executive Order 3.9 (declaring a disaster emergency across the State due to gun violence).

452.    As described further here, Defendants have created, maintained, or contributed to a substantial interference with the public's right to health and safety, exacerbating the ongoing public health crisis.

453.    New York's Penal Law establishes that the unlawful possession, sale, or use of an unfinished frame or receiver constitutes a nuisance.  N.Y. Penal Law §§ 265.07, 400.05.

454.    New York law permits civil enforcement actions based on such a nuisance. Specifically, in New York, and as described in more detail above, "given the specific harm illegal firearm violence causes certain New Yorkers, those responsible for the sale, manufacture, importing, or marketing of firearms should be held liable for the public nuisance caused by such activities."  New York Sponsors Memorandum, 2021 S.B. 7196; *see also* N.Y. Gen. Bus. Law § 898-d.

455.    Further, "[n]o gun industry member, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain or contribute to a condition in New York state that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product." N.Y. Gen. Bus. Law § 898-b(1).

456.    Moreover, "[a]ll gun industry members who manufacture, market, import or offer

80

Case 1:22-cv-06124 Document 1-1 Filed 07/19/22 Page 105 of 115

for wholesale or retail sale any qualified product in New York state shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state." *Id.* § 898-b(2). A "qualified product" is a firearm or a component part of a firearm that has been shipped in interstate commerce. *See id.* § 898-a(6) (incorporating the federal definition from 15 U.S.C. § 7903(4)).

457. Here, and as described more fully above, each Defendant has engaged in conduct prohibited by General Business Law § 898-b.

458. For example, as detailed above, several Defendants sent several shipments to individual consumers in a short period of time, making no effort to determine whether those consumers were engaged in firearms trafficking, shipped unfinished frames and receivers to individuals who were not eligible to legally own a firearm, and for those Defendants who sold unfinished frames or receivers to undercover employees of New York City or the Office of the Attorney General, they made no attempt to conduct a background check or otherwise verify that the purchaser was legally permitted to purchase a gun in this State. (*See supra* at ¶¶ 113-430) Upon information and belief, each and every sale of Defendants' prohibited ghost gun products to a New York customer or to a customer who could foreseeably bring that product into New York likewise lacked any background check or meaningful verification process.

459. Each Defendant's misconduct is ongoing and continuous.

460. Each Defendant's misconduct has resulted in significant ongoing harm and costs to the People. For example, in February 2020, New York City established an NYPD team dedicated exclusively to stopping the flow of ghost guns before they reach city streets. At New York City's

81

expense, that team, among other things, works with federal, state, and local law enforcement and prosecutors on in-depth ghost gun investigations, search warrant executions, and arrests, and conducts ghost gun-related trainings for police officers and prosecutors. Other jurisdictions across the State have similarly had to redirect law enforcement resources to confront the growing threat posed by the proliferation of products like those sold by the Defendants.

461. The People believe that abating the public health and safety crisis caused by Defendants' products will require extensive additional resources, including those necessary to (i) develop and execute policies and procedures to locate, recover, and destroy unfinished frames and receivers and/or the ghost guns made from them, (ii) research and implement processes sufficient to identify, trace, and link unserialized firearms used in the commission of multiple crimes, and (iii) support communities hard hit by gun violence and crimes.

462. Some of this work has already begun. In January 2022, Governor Kathy Hochul announced that New York must, among other things:

    a.    Triple the New York State Police's gun violence intelligence resources by adding a team of analysts who process gun tracing data to the New York State Intelligence Center;

    b.    Increase the State Police's ability to partner with local law enforcement to combat community-specific crime problems;

    c.    Increase funding for the Gun Involved Violence Elimination (GIVE) program, which uses evidence-based strategies to reduce gun crimes in the State's 17 counties that account for more than 80 percent of the violent crime that occurs in the State outside of New York City;

    d.    Increase investments in New York's Crime Analysis Centers, which collect and share criminal intelligence and data with local law enforcement;

    e.    Establish Crime Gun Intelligence Centers in every region of the State;

82

f. Create the Interstate Gun Tracing Consortium, which facilitates the exchange of intelligence between localities and neighboring states; and

g. Triple the State's investment in community-based prevention and response efforts that have been proven to alleviate gun violence, including expanding hospital-based gun violence specialists to all 22 of the State's trauma centers and launch a the nation's first program to recruit and retain outreach workers.[37]

463. These expenditures are necessary due in no small part to the dangerous conditions caused by Defendants' self-serving and illegal business practices.

464. Despite enacting evidence-based gun control laws and effective enforcement strategies, New York finds itself in a gun violence crisis. Defendants caused, maintained, and/or contributed to this crisis for their own profit, and must be held accountable.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CAUSE OF ACTION
### REPEATED AND PERSISTENT FRAUD OR ILLEGALITY IN BUSINESS IN VIOLATION OF EXECUTIVE LAW § 63(12)
Selling and Shipping Unfinished Frames and Receivers

465. The People reallege each and every allegation in the paragraphs above as though fully set forth herein.

466. Executive Law § 63(12) authorizes the Attorney General to seek injunctive and other relief when any person engages in repeated or persistent illegal conduct in the carrying on, conducting, or transaction of business.

467. Selling or shipping unfinished frames or receivers into New York State is illegal under New York State law. *See* New York Penal Law §§ 265.60, 265.61. Those shipments sent

---

[37] https://www.governor.ny.gov/news/governor-hochul-announces-three-part-agenda-prevent-and-reduce-gun-violence-and-violent-crime

83

into New York City are also illegal under City Law.  *See* N.Y. City Admin. Code § 10-314.  And because unfinished frames and receivers are "designed to" and "may readily be converted" into working firearms, 18 U.S.C. § 921(a)(3); *see also id.* (including "the frame or receiver of any such weapon" in the definition), it is illegal to sell them under federal law unless they are serialized, subject to a background check, and sold through a federal firearms licensee.

468.    As set forth above, each Defendant has repeatedly sold unfinished frames or receivers and shipped them directly to New York consumers, in violation of these laws.

469.    By reason of the foregoing, each Defendant has engaged in repeated or persistent illegal conduct in violation of Executive Law § 63(12).

470.    As discussed above, Defendants' illegal business conduct has done significant damage to New York in the form of increased crime, undermined public safety protections, and increased expenditures on public health and law enforcement.

### AS AND FOR A SECOND CAUSE OF ACTION
### REPEATED AND PERSISTENT FRAUD OR ILLEGALITY IN BUSINESS IN VIOLATION OF EXECUTIVE LAW § 63(12)
Aiding and Abetting the Possession of Firearms By Convicted Persons

471.    The People reallege each and every allegation in the paragraphs above as though fully set forth herein.

472.    Executive Law § 63(12) authorizes the Attorney General to seek injunctive and other relief when any person engages in repeated or persistent illegal conduct in the carrying on, conducting, or transaction of business.

473.    Federal law prohibits possession of a firearm by anyone who has been convicted of a felony.  *See* 18 U.S.C. § 922(g)(1).

84

474.    New York State similarly prohibits the possession of a firearm by anyone who has been convicted of a crime. *See* Penal Law § 265.02; *see also People v. Hughes*, 83 A.D.3d 960, 961 (2d Dep't 2011) (prohibition applies to those convicted of "a misdemeanor or a felony").

475.    As discussed above, each Defendant sold unfinished frames or receivers into New York State knowing, intending, or being willfully blind to the fact that these products would be converted into working firearms.

476.    As discussed above, each Defendant knew, intended, or was willingly blind to the fact that that by selling their unfinished frames and receivers without following federal serialization, background check, and recordkeeping requirements, they would be purchased by convicted persons and others who could not buy a firearm through legitimate channels.

477.    By reason of the foregoing, each Defendant aided and abetted convicted persons in possessing a prohibited firearm.

478.    By reason of the foregoing, each Defendant has engaged in repeated or persistent illegal conduct in violation of Executive Law § 63(12).

479.    Defendants' illegal business conduct has done significant damage to New York in the form of increased crime, undermined public safety protections, and increased expenditures on public health and law enforcement.

### AS AND FOR A THIRD CAUSE OF ACTION
### REPEATED AND PERSISTENT FRAUD OR ILLEGALITY IN BUSINESS IN VIOLATION OF EXECUTIVE LAW § 63(12)
Aiding and Abetting the Possession of Firearms By Unlicensed Persons

480.    The People reallege each and every allegation in the paragraphs above as though

85

fully set forth herein.

481.    Executive Law § 63(12) authorizes the Attorney General to seek injunctive and other relief when any person engages in repeated or persistent illegal conduct in the carrying on, conducting, or transaction of business.

482.    New York State law prohibits the possession of a firearm without a valid license. *See* Penal Law §§ 265.01(1), 265.20(3).

483.    As discussed above, each Defendant sold unfinished frames or receivers into New York State knowing, intending, or being willfully blind to the fact that these products would be converted into working firearms.

484.    As discussed above, each Defendant knew, intended, or was willfully blind to the fact that that by selling their unfinished frames and receivers without performing a background check or otherwise confirming that the buyer had a valid license, they would be purchased by unlicensed persons, including persons who could not legitimately obtain a license.

485.    By reason of the foregoing, each Defendant aided and abetted unlicensed persons in possessing a prohibited firearm.

486.    By reason of the foregoing, each Defendant has engaged in repeated or persistent illegal conduct in violation of Executive Law § 63(12).

487.    Defendants' illegal business conduct has done significant damage to New York in the form of increased crime, undermined public safety protections, and increased expenditures on public health and law enforcement.

86

## AS AND FOR A FOURTH CAUSE OF ACTION
## CREATION OF A PUBLIC NUISANCE BY A GUN INDUSTRY MEMBER
New York General Business Law § 898-b(1)

488.    The People reallege each and every allegation in the paragraphs above as though fully set forth herein.

489.    The Attorney General acts within her authority to bring an action in this Court to enjoin and restrain each Defendant from its ongoing violations and to obtain restitution and damages, pursuant to N.Y. Gen. Bus. Law § 898-d.

490.    Each Defendant constitutes a "gun industry member," subject to N.Y. Gen. Bus. Law § 898-b.

491.    Each Defendant has sold and continues to sell; has manufactured and continues to manufacture; has marketed and continues to market "qualified product[s]," as defined in N.Y. Gen. Bus. Law § 898-a.

492.    By the conduct described above, each Defendant has acted unlawfully by advertising, manufacturing, selling, and shipping unfinished frames and receivers directly into New York State.

493.    By the conduct described above, each Defendant has acted unlawfully by advertising, manufacturing, selling, and shipping unfinished frames and receivers that may foreseeably make their way into New York State.

494.    These actions have created, maintained, or contributed to a condition in New York State that endangers the safety and health of the public.

495.    Under state law, Defendants' activities constitute a public nuisance.  *See* General

87

Business Law § 898-c(1).

### AS AND FOR A FIFTH CAUSE OF ACTION
### FAILURE TO ESTABLISH REASONABLE CONTROLS BY A
### GUN INDUSTRY MEMBER
New York General Business Law § 898-b(2)

496.   The People reallege each and every allegation in the paragraphs above as though fully set forth herein.

497.   Each Defendant constitutes a "gun industry member," that is required to "establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed, or sold unlawfully."  General Business Law § 898-b(2).

498.   These required procedures include, but are not limited to "instituting screening, security, inventory and other business practices to prevent . . . sales of qualified products to . . . traffickers, persons prohibited from possessing firearms under state or federal law, or persons at risk of injuring themselves or others."  General Business Law § 898-a(2).

499.   Each defendant fails to have any policy or procedure that constitutes adequate measures to screen security or inventory, or otherwise prevent its prohibited products from being possessed, used, marketed, or sold unlawfully in New York.

500.   Each Defendant's failure to have reasonable controls and procedures has resulted and continues to result in ongoing harm to the public and constitutes a public nuisance.  *See* General Business Law § 898-c(1).

### AS AND FOR A SIXTH CAUSE OF ACTION
### REPEATED AND PERSISTENT FRAUDULENT CONDUCT PURSUANT TO
### EXECUTIVE LAW 63(12)

501.   The People reallege each and every allegation in the paragraphs above as though

88

fully set forth herein.

502.     Executive Law § 63(12) authorizes the Attorney General to seek injunctive and other relief when any person engages in repeated or persistent fraudulent conduct.

503.     Executive Law § 63(12) defines "fraud" or "fraudulent" to "include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions."

504.     Defendants have engaged in repeated and persistent fraudulent conduct by engaging in acts and practices, including but not limited to:

  a. Misrepresenting, directly or by implication, in their advertising and elsewhere, that it is legal to sell and possess the firearms sold by Defendants in the State of New York and/or the City of New York;

  b. Misrepresenting, directly or by implication, in their advertising and elsewhere, that it is legal to sell or possess unfinished frames, unfinished receivers, and/or ghost guns in the State of New York and/or the City of New York;

  c. Misrepresenting, directly or by implication, in their advertising and elsewhere, the legal requirements applicable to their sales of guns, including that only completed guns need to be sold by a dealer with an FFL, that purchasers of the guns sold by Defendants are not subject to background checks or waiting periods and that the guns sold need not be serialized or recorded.

89

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the People of the State of New York, respectfully requests that the Court enter an order and judgment that:

1.    Enjoins each Defendant, pursuant to Executive Law § 63(12):

        a.    From selling, shipping, distributing, or otherwise supplying unfinished frames or receivers to any person or entity with a current New York State address;

        b.    From selling, shipping, distributing, or otherwise supplying unfinished frames or receivers to any person whom the Defendant knows or should know intends to bring, ship, sell, or otherwise transport, carry, or transfer any such unfinished frame or receiver, or an operable, unserialized firearm assembled therefrom, to New York State or to any person or entity with a current New York State address;

        c.    From manufacturing, distributing, selling, or marketing unserialized firearms or products that are used to form or create operable, unserialized firearms within the State unless such conduct complies with heightened, independently-monitored safeguards against the recurrence of the Defendant's fraudulent, illegal, and/or unlawful practices, which are to be set forth in a compliance plan reviewed and approved by Plaintiff and the Court; and

        d.    To issue public corrective statements regarding their false and misleading public statements and omissions;

2.    Directs each Defendant, pursuant to Executive Law § 63(12), to:

        a.    Pay restitution and damages for its fraudulent and/or illegal practices that violated that statute and caused compensable injuries to Plaintiff or any other person; and

        b.    Disgorge all revenues it wrongfully obtained as a result of its fraudulent and/or illegal practices in violation of that statute;

3.    Directs Defendants, jointly and severally, to endow an abatement fund with sufficient capital to eliminate the public nuisance they are responsible for creating, exacerbating, and/or perpetuating, pursuant to New York General Business Law § 898-b;

4.    Awards Plaintiff its costs; and

90

5.      Grants such other and further relief as the Court deems just and proper.


Dated:  New York, New York
        June 29, 2022

                        LETITIA JAMES
                        Attorney General of the State of New York


                        By:
                            James M. Thompson
                            Monica Hanna
                            Special Counsel
                            28 Liberty Street
                            New York, New York 10005
                            (212) 416-6556
                            (212) 416-8227
                            james.thompson@ag.ny.gov
                            monica.hanna@ag.ny.gov

91