UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
THE STATE OF NEW YORK, :
:
Plaintiff, :
: 22-CV-6124 (JMF)
-v- :
: OPINION AND ORDER
ARM OR ALLY, LLC et al., :
:
Defendants. :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In this case, the State of New York (the "State") sues ten Defendants allegedly involved in the manufacture or sale of "unfinished" firearm frames and receivers that can be quickly and easily converted into functional firearms.[1] Such firearms are commonly known as "ghost guns" because they are not stamped with serial numbers or otherwise registered and, thus, "are untraceable when recovered by law enforcement in connection with a crime." ECF No. 1-5 ("Am. Compl."), ¶ 3. The State contends that Defendants' products are illegal and contribute "significant[ly]" to "a public health and safety crisis caused by gun violence." *Id.* ¶¶ 1, 4. It alleges various violations of New York State law and seeks damages, injunctive relief, restitution, and disgorgement on behalf of the People of the State of New York.

At this stage of the case, however, the merits of the State's claims are not at issue. Instead, the question is *where* the parties' disputes should be resolved. The State originally filed

---

[1] Defendants are as follows: Arm or Ally, LLC; Blackhawk Manufacturing Group, Inc., a/k/a 80 Percent Arms, Inc. or 80 Percent Arms; Salvo Technologies, Inc., a/k/a 80p Builder or 80p Freedom Co.; Brownells, Inc., a/k/a Brownells or Bob Brownell's; GS Performance, LLC, a/k/a Glockstore or GSPC; Indie Guns, LLC; KM Tactical; Primary Arms, LLC; Rainier Arms, LLC; and Rock Slide USA, LLC.

suit in New York State court. Defendants removed the case to this Court on the ground that one or more of the State's claims, although nominally brought under state law, presents a "substantial federal question," most notably whether the products at issue qualify as "firearms" or "component parts"[2] thereof within the meaning of a federal law that is incorporated, in turn, into the relevant New York law. The State now moves to remand the case back to state court, arguing that there is no disputed federal question raised by its claims and, in any event, that adjudication of the case in federal court would disturb the balance of federal and state judicial responsibilities. *See* ECF No. 42.

For the reasons that follow, the Court concludes that this case falls within the special and small category of cases subject to removal pursuant to what is known as the "substantial federal question doctrine." In particular, whether the products at issue are "firearms" or "component parts" thereof within the meaning of federal law is a substantial question that is necessarily raised by at least one of the State's claims and actually in dispute. And given the longstanding and strong federal interest in regulating the manufacture and sale of firearms in interstate commerce, the exercise of federal jurisdiction would not disrupt the federal-state balance approved by Congress. Accordingly, the State's motion to remand is DENIED.

## BACKGROUND

The following background is taken from the State's Amended Complaint and Defendants' Notice of Removal. Because the Court has an independent obligation to determine if it has subject-matter jurisdiction over the case, the facts alleged in the Amended Complaint are accepted as true for purposes of this motion, but no inferences are drawn in either side's favor;

---

[2] For convenience, the Court omits spelling alterations when quoting the "component part" language of the relevant statute.

the parties asserting jurisdiction — here, Defendants — must show it affirmatively. *See, e.g.*, *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

**A. Ghost Guns**

Defendants are in the business of selling "nominally unfinished frames and receivers" that can easily be converted into ghost guns. Am. Compl. ¶ 3; *see id.* ¶ 1. A "frame" is the core part of a handgun or pistol, and a "receiver" is the core part of a rifle, shotgun, or other long gun. *Id.* ¶ 31. An "unfinished" frame or receiver requires an extra step to be rendered usable: usually drilling of a few required holes or filing of excess plastic. *Id.* ¶¶ 30-31. But that extra step of converting an "unfinished" frame or receiver into a finished firearm is, according to one of the Defendants, "ridiculously easy" and can be done by an amateur in an hour with only basic tools. *Id.* ¶¶ 36, 61.[3] And Defendants make it even easier by shipping their products in a "jig," a plastic setting that enables a customer to follow basic instructions to convert an unfinished frame or receiver into a firearm. *Id.* ¶¶ 63-68. As one Defendant put it to customers when linking to an instructional video: "There's no complicated setup because the jig that came with your slide keeps everything properly aligned as you make simple cuts with the included drill bits. Wait, it can't be that simple? Yes, it is. Watch this video." *Id.* ¶ 70.

---

[3] To illustrate the minimal differences between many "unfinished" frames and handguns, Figure 1 is an image of what Defendant Indie Guns markets as an "unfinished" frame and Figure 2 is an image of what Defendant Primary Arms markets as a finished handgun:



Figure 1                    Figure 2

Am. Compl. ¶ 54.

Although Defendants market their products for the "sole purpose of being converted into a working firearm, [they] do not follow the fundamental federal law requirements enacted by Congress to curtail gun crime." *Id.* ¶ 3.  For example, Defendants do not serialize their products, as required for firearms under federal law.  *Id.* ¶ 3, 42-43; *see* 18 U.S.C. § 923(i); 26 U.S.C. § 5842(a)  Nor do Defendants conduct the background checks generally required by federal law in connection with the sale of firearms — namely, a query of the National Instant Criminal Background Check System, which flags "convicted felons, fugitives from justice, persons who have been committed to a mental institution, or persons subject to protective orders relating to domestic violence." Am. Compl. ¶¶ 3, 41, 43; *see* 18 U.S.C. § 922(t).  Defendants also do not undergo the rigorous investigation and review process required to become a registered Federal Firearms Licensee.  Am. Compl. ¶¶ 40, 43; *see* 18 U.S.C. § 923.  Finally, Defendants do not keep records of all their sales, which federal law requires of firearm "manufacturers" and "dealers." Am. Compl. ¶¶ 3, 42-43; *see* 26 U.S.C. § 5843.  Evading these and other requirements is not an accidental byproduct of Defendants' business; it appears to be the point. That is, Defendants market unfinished frames and receivers to consumers as "specifically designed to circumvent these federal laws." Am. Compl. ¶ 43.

**B. This Lawsuit**

On June 29, 2022, the State filed this lawsuit in New York State Supreme Court.  *See* ECF No. 1-1.  In its Amended Complaint, also filed in state court, the State alleges that it seeks to address a "public health and safety crisis" caused by gun violence, a "significant part" of which is attributable to "ghost guns." Am. Compl. ¶ 1.  More specifically, the State pleads eleven causes of action, which can be roughly grouped into three categories:

- Four claims (the First, Second, Third, and Eleventh Causes of Action) brought pursuant to New York Executive Law Section 63(12), which targets "any person . . . engag[ing] in

repeated fraudulent or illegal acts or otherwise demonstrat[ing] persistent fraud or illegality in the carrying on, conducting, or transaction of business."  These claims allege violations of multiple New York State and federal laws, including the bans on shipping unfinished frames and receivers into New York State, *see* N.Y. Penal Law §§ 265.63-64; possession of a firearm by a person convicted of a crime, *see* N.Y. Penal Law § 265.02, 18 U.S.C. § 922(g)(1); possession of a firearm without a valid license, *see* N.Y. Penal Law §§ 265.0, 265.20(3); and possession of unserialized frames or receivers, *see* N.Y. Penal Law § 265.07.5, 26 U.S.C. §§ 5842(b), 5861(c).

- Two claims (the Fourth and Fifth Causes of Action) brought pursuant to New York General Business Law Section 898-b, which provides liability for gun industry members that either "create, maintain or contribute to a condition in New York state that endangers the safety or health of the public," N.Y. Gen. Bus Law § 898-b(1), or fail to "establish and utilize reasonable controls and procedures to prevent [their] qualified products from being possessed, used, marketed or sold unlawfully in New York state," *id.* § 898-b(2).

- Five claims (the Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action) that allege false advertising and misrepresentations, in violation of New York General Business Law Sections 349 and 350, and New York Executive Law Section 63(12).  These claims allege that Defendants misrepresented "that it is legal to sell and possess the firearms [they] sold . . . in the State of New York and/or the City of New York," "that it is legal to sell or possess unfinished frames, unfinished receivers, and/or ghost guns in the State of New York and/or the City of New York," and that that federal gun laws did not apply to their products.  Am. Compl. ¶ 504.

All of the State's claims are brought under New York State law.  *See Am. Compl.* ¶¶ 465-538.

On July 19, 2022, Defendants removed the case to this Court.  *See* ECF No. 1 ("Notice of Removal").  In their Notice of Removal, Defendants accused the State of "artful[ly] pleading" only state-law claims in an effort to "avoid removal by declining to plead necessary federal questions."  *Id.* ¶ 17 (internal quotation marks omitted).  Invoking the "substantial federal question doctrine," Defendants asserted "four alternative independent grounds for removal":

- First, Defendants argued that the Fourth Cause of Action necessarily requires the State to "demonstrate that the products Defendants sold, manufactured, and marketed are firearms under federal law," because the State statute defines a "qualified product" by reference to Title 15, United States Code, Section 7903(4), which defines the term as "a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18)" or "a component part of a firearm."  *See* Notice of Removal ¶¶ 21-26.

- Second, Defendants contended that the First Cause of Action relies on violations of federal law because "the sales that occurred in 2017, 2018, and 2019" could only have

been illegal under federal law, as the state and local statutes had not yet gone into effect. *Id.* ¶¶ 27-35.

- Third, Defendants reasoned that a federal question is necessarily raised by any one of the misrepresentation-based causes of action, because those causes of actions referenced federal law, and any relief would necessarily have to include a statement of federal law. *Id.* ¶¶ 36-42.

- Fourth, Defendants argued that a federal law claim is necessarily raised because the Second Amendment confers a "right to possess and sell unserialized, unfinished frames and receivers." *Id.* ¶¶ 43-47.

On August 17, 2022, the State filed the instant motion to remand.

### THE SUBSTANTIAL FEDERAL QUESTION DOCTRINE

Under Title 28, United States Code, Section 1441(a), a party may remove from state court "any civil action . . . of which the district courts of the United States have original jurisdiction." In other words, an action may be removed "only if the case could have been originally filed in federal court." *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997). Section 1331, the federal-question statute, provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As a general matter, a claim falls within that grant of jurisdiction "only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983). Under this so-called "well-pleaded complaint rule, the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998).

The well-pleaded complaint rule, however, has a "corollary": "the 'artful pleading' rule — pursuant to which [a] plaintiff cannot avoid removal by declining to plead 'necessary federal

questions.'" *Romano v. Kazacos*, 609 F.3d 512, 518-19 (2d Cir. 2010) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)); *see Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) ("[A] plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law."). One application of that rule is the "substantial federal question doctrine," which recognizes that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 619, 622 (S.D.N.Y. 2013); *Sung ex rel. Lazard Ltd. v. Wasserstein*, 415 F. Supp. 2d 393, 402 (S.D.N.Y. 2006). As the Supreme Court has explained, the doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

*Grable*, the leading modern case on the substantial federal question doctrine, involved a suit to quiet title to property that the Internal Revenue Service ("IRS") had seized from the plaintiff to satisfy a federal tax delinquency, which it then sold to the defendant. The plaintiff alleged that the defendant's record title was invalid because, in providing notice of the seizure by mail rather than by personal service, the IRS had failed to comply with the notice requirements of federal law. *See id.* at 311. The defendant removed the case to federal court, and that removal was upheld by the lower courts. In reviewing the case, the Supreme Court held that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the

7

federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (discussing *Grable*). "Where all four of these requirements are met . . . , jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313).

Applying that test, the *Grable* Court held that removal of the plaintiff's suit to quiet title was proper. First, the plaintiff had "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law." 545 U.S. at 314-15. Thus, whether the plaintiff had received notice adequate within the meaning of federal law was "an essential element of its quiet title claim." *Id.* at 315. Second, "the meaning of the federal statute [was] actually in dispute"; in fact, it appeared "to be the only legal or factual issue contested in the case." *Id.* Third, the Court concluded that "[t]he meaning of the federal tax provision [was] an important issue of federal law that sensibly belong[ed] in a federal court" given the IRS's "strong interest in the prompt and certain collection of delinquent taxes" and the interest of "buyers (as well as tax delinquents)" in having "judges used to federal tax matters" resolve whether the IRS "has touched the bases necessary for good title." *Id.* (internal quotation marks omitted). Finally, the Court held that federal jurisdiction would not disrupt the federal-state balance "because it will be the rare state title case that raises a contested matter of federal law." *Id.* Thus, "federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.*

The Supreme Court has made clear that *Grable* calls for federal jurisdiction over only a "special and small category" of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *see id.* at 701 (referring to "the slim category *Grable* exemplifies"); *see*

*also Gunn*, 568 U.S. at 258 (same). For example, "[t]he 'mere presence' of a federal issue in a state cause of action" and the "mere assertion of a federal interest" are not enough to confer federal jurisdiction. *Veneruso*, 933 F. Supp. 2d at 622 (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986), and citing *Empire Healthchoice*, 547 U.S. at 701); *accord Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674-75 (9th Cir. 2012). Nor does the presence of a federal *defense* suffice — "even if the parties concede that the defense is the only disputed issue in the case" and, in that sense, "necessary to the resolution" of the state law claim. *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138, 141 n.5 (2d Cir. 2012); *see id.* at 140 n.4 (stating that jurisdiction is inappropriate under *Grable* where a federal issue is "not necessarily raised by [the plaintiff's] affirmative claims," but rather "comes into the case as a defense"); *see also, e.g.*, *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) ("To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." (quoting *Grable*, 545 U.S. at 314-15)); *see generally Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (holding that a federal defense to a state-law cause of action does not support federal-question jurisdiction). And finally, if a claim does not present "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases," but rather is "fact-bound and situation-specific," the exercise of federal-question jurisdiction will generally be inappropriate. *Empire Healthchoice*, 547 U.S. at 700-01 (internal quotation marks omitted).

## ANALYSIS

As noted, Defendants asserted "four alternative independent grounds for removal" in their Notice of Removal. Notice of Removal ¶ 20. The Court, however, will begin with their first ground — that, to prevail on the Fourth Cause of Action, the State must prove that the

9

products at issue are "firearms" or "component parts" thereof within the meaning of federal law, *see* ECF No. 52 ("Defs.' Opp'n"), at 6-8 — and, because it concludes that that ground is sufficient to establish jurisdiction, stop there. *See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("A single claim over which federal-question jurisdiction exists is sufficient to allow removal."). The Court will address each of the four *Grable* requirements, beginning with two that are not in serious dispute before turning to the two that present closer questions.

**A. Necessarily Raised**

First, the Court agrees with Defendants that the State's Fourth Cause of Action, for violation of General Business Law § 898-b, necessarily raises a federal question. Section 898-b applies to "gun industry member[s]" who, among other things, sell a "qualified product." N.Y. Gen. Bus. Law § 898-b(1). "Qualified product" is defined, in turn, as "hav[ing] the same meaning as defined in 15 U.S.C. section 7903(4)." *Id.* § 898-a(6). That federal law provides, in turn, that "qualified product" "means a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18), . . . or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4). Finally, 18 U.S.C. § 921(a)(3) provides, as relevant here, that "[t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) the frame or receiver of any such weapon." In order to prevail on its claim that Defendants' conduct falls under General Business Law § 898-b(1), therefore, the State must demonstrate that the products at issue in this case were "firearms" or "component parts" thereof within the meaning of federal law. That federal question is thus "necessarily raised" by the State's Fourth Cause of Action.

The State does not seriously contest that proposition, except to say in passing that the mere fact that General Business Law § 898-b "borrows its definition of a 'qualified product' from federal law . . . does not alter the fundamental state law nature of the claim." ECF No. 53 ("Pl.'s Reply"), at 3. In support of that proposition, however, the State cites only one case, *Lougy v. Volkswagen Group of America, Inc.*, No. 16-CV-1670, 2016 WL 3067686 (D.N.J. May 19, 2016), that is both non-binding and distinguishable. For one thing, the assertion of federal jurisdiction in *Lougy* failed for multiple reasons, including the fact that the plaintiff's claim was "based on alternative theories, at least three of which have no necessary federal element." *Id.* at *3. For another, in *Lougy* — and in the principal case on which it relied for the proposition that borrowing a federal definition does not a federal question make, *Horowitz v. Marlton Oncology, P.C.*, 116 F. Supp. 2d 551, 556 (D.N.J. 1999) — the federal definition was settled and required no interpretation. *See Lougy*, 2016 WL 3067686, at *3 ("Defendants have offered no persuasive explanation for how Plaintiffs' claims will require interpreting the meaning of a federal law as opposed to applying the facts of this case to federal definitions and/or standards."). As discussed below, that is not the case here. And, in any event, whether the federal definition is settled or not is better analyzed under the "actually disputed" and "substantial" prongs of the *Grable* analysis.

In short, the State's Fourth Cause of Action necessarily raises a federal issue, namely whether the products at issue are "firearms" or "component parts" thereof within the meaning of federal law.

**B. Substantial**

Second, the federal issue is "substantial." The substantiality inquiry under *Grable* looks "to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. On that metric, properly defining the terms "firearm" and "component part" is plainly a substantial

11

issue — and, conspicuously, the State does not even attempt to argue otherwise. Indeed, those terms are central to the federal scheme embodied in the Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 921 *et seq*. (as amended). Congress passed the GCA to build upon the Omnibus Crime Control and Safe Streets Act of 1968 ("OCCSSA"), 34 U.S.C. § 10101 et seq. (as amended), which Congress enacted only after finding that then-existing "Federal controls" over the "widespread traffic in firearms moving in or otherwise affecting interstate . . . commerce" did "not adequately enable the States to control this traffic within their own borders," Pub. L. No. 90-351, tit. IV, § 901(a)(1), 82 Stat. 197, 225 (1968), and that "adequate Federal control . . . over all persons engaging in the businesses of importing, manufacturing, or dealing in" firearms was necessary to "properly deal[]" with "this grave problem," *id*. § 901(a)(3), 82 Stat. at 225. Underscoring the point, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") has issued regulations defining the statutory terms "frame" and "receiver," and recently revised those regulations in an effort to clarify that the term "firearm" includes "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 27 C.F.R § 478.11.

Thus, as Defendants argue, defining the terms "firearm" and "component part" — and, more to the point, determining whether the products at issue in this case fall within the scope of those terms — could "have sweeping consequences for the regulatory flexibility of the ATF, the enforcement powers of federal prosecutors, the scope of a state's authority to regulate these products, and the potential liability of thousands of individuals who have acquired these products." Defs.' Opp'n 20. Any doubt on that score is resolved by the fact that the United States filed a Statement of Interest in a parallel case brought — in this Court — by the City of New York (the "City"). *See* Statement of Interest of the United States of America, *City of New*

12

*York v. Arm or Ally LLC*, No. 22-CV-5525 (S.D.N.Y. Oct. 6, 2022), ECF No. 64 ("U.S. Statement"). In that Statement, the United States affirms that it shares the City's and State's "serious concerns about the proliferation of untraceable firearms easily assembled from firearm parts kits and unfinished frames and receivers," and declares that making the Court aware of its "views of the GCA and [the statute's] implementing regulations," including the ATF's recently revised rule redefining "frame" and "receiver," is "of acute interest to the United States." *Id.* at 2-3. There is no reasonable dispute, therefore, that "[t]he meaning" of the terms at issue in this case "is an important issue of federal law." *Grable*, 545 U.S. at 315.

### C. Actually Disputed

Whether the federal issue is "actually disputed" is a somewhat closer question, but the answer is yes. Relying on the plain meaning of the terms "firearm" and "component part," as well as the "overarching statutory structure" of the GCA and applicable case law, Defendants contend that the "unfinished" frames and receivers they sell are neither "firearms" nor "component parts" thereof within the meaning of federal law. Defs.' Opp'n 18-19; Notice of Removal ¶ 24 & n.1. "The federal definition of 'firearm,'" they note, "includes 'the frame or receiver of any' 'weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive.' 18 U.S.C. § 921(a)(3). . . . A frame or receiver is a component part of a firearm; a hunk of metal or plastic that, with further machining, could be made into a frame or receiver is not." Defs.' Opp'n 18-19 (first omission in original). Defendants may have a steeper climb in making these arguments given the ATF's recent rulemaking, which changed the definition of "frame" and "receiver" to include, in relevant part, "a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or

13

otherwise converted to function as a frame or receiver." 27 C.F.R. § 478.12(c); *see also id.* § 478.11 (listing eight "factors" to be considered in defining the term "readily" with respect to "the classification of firearms"). *See generally* U.S. Statement 5-7. But the validity and meaning of the ATF's recent rulemaking are unsettled issues. And, in any event, that Defendants may not ultimately prevail does not mean the issue is not "actually disputed."[4]

The State's two counterarguments fall short. First, the State contends that Defendants "are precluded" from disputing that their products qualify as "component parts" of a firearm because they did not do so in their Notice of Removal. *See* Pl.'s Reply 2-3. It is true that Defendants focused exclusively on the meaning of "firearm" in their Notice of Removal, but it would be unfair to treat that as a concession or forfeiture with respect to "component part." For one thing, Defendants' arguments as to the meaning of "firearm" and "component part" are variations on the same theme. For another, it is arguably the State, and not Defendants, who pulled a bait and switch. The Amended Complaint does note that a "'qualified product'" for purposes of General Business Law § 898-a "is a firearm *or a component part of a firearm*," Am. Compl. ¶ 456 (emphasis added), but it otherwise focuses almost exclusively on the claim that Defendants are engaged in the sale of "firearms," *see, e.g., id.* ¶¶ 80-86. Given that, Defendants justifiably aimed their sights at the meaning of "firearm" in the Notice of Removal; it was only after they did so that the State switched gears to rely on a "component parts" theory. *See* Pl.'s Mem. 19 (arguing that the State "can prevail on its Fourth Cause of Action without needing to prove that Defendants' products meet the federal definition of a 'firearm,' because its text

---

[4] For that reason, it is immaterial that this Court previously granted a preliminary injunction to the City in its parallel case. *See* Order Granting Plaintiff's Motion for a Preliminary Injunction, *City of New York v. Arm or Ally LLC*, No. 22-CV-5525 (S.D.N.Y. Oct. 31, 2022), ECF No. 74. That is, the question of whether a party is likely to succeed on the merits of a dispute is analytically different from the question of whether there *is* a dispute.

14

applies to 'a component part of a firearm' as well"). It would be unfair and unjust to deem Defendants to have conceded or forfeited an argument when the basis for the argument was not clearly raised in the first instance by the State.[5]

Second, the State contends that whether Defendants' products are "qualified products" within the meaning of 15 U.S.C. § 7903(4) (which is incorporated, in turn, by General Business Law § 898-a) is not "actually disputed" because Defendants intend to argue that the claims in this case are preempted by the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901 *et seq.*, which necessarily presumes that the products fit the definition. *See* Pl.'s Reply 3; *see also* Pl.'s Mem. 19 (citing a letter from one Defendant to the Office of the Attorney General arguing that the State's claims "are preempted" by the PLCAA). Under Rule 8(d)(3) of the Federal Rules of Civil Procedure, however, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Thus, Defendants may indeed argue, as they apparently plan to do, that "(1) their products are not 'component part[s]' of firearms and so fall outside the ambit of New York General Business Law § 898-b" and, *in the alternative*, "(2) to the extent Defendants' products are treated as 'component part[s]' of firearms, the State's claims fail under the PLCAA." Def.'s Opp'n 18. It follows that the federal question of whether

---

[5] The cases on which the State relies for its waiver argument are easily distinguished. In each case, the defendant or defendants tried, after removal, to raise an altogether different theory of federal jurisdiction. *See Bernadin v. Am. Airlines, Inc.*, No. 08-CV-1774 (NG), 2009 WL 1910964, at *3 (E.D.N.Y. July 1, 2009) (rejecting the defendant's assertion of federal question jurisdiction as untimely where the notice of removal alleged only diversity jurisdiction); *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 924-25 (S.D.N.Y. 1995) (same); *IKB Int'l S.A. in Liquidation v. JPMorgan Chase & Co.*, No. 12-CV-4617, No. 12-CV-4618 (LTS), 2014 WL 2933043, at *1 (S.D.N.Y. June 27, 2014) (rejecting the defendant's assertion of diversity jurisdiction as untimely where the notice of removal alleged only federal question jurisdiction); *Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 13-CV-1238 (JS), 2014 WL 2945741, at *4 (E.D.N.Y. June 30, 2014) (rejecting the defendant's ground for removal only because it was "wholly missing" from the notice of removal).

Defendants' products are "qualifying products" within the meaning of federal law is still "actually disputed."

### D. The Federal-State Balance

In the final analysis, the State's strongest argument is that adjudicating this case in federal court would "disrupt[] the federal-state balance approved by Congress," *Gunn*, 568 U.S. at 258, if only because "[t]he presumption against federal jurisdiction is especially strong" where, as here, a state is "seeking to vindicate quasi-sovereign interests in enforcing state laws and protecting [its] own citizens," *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014). As the Ninth Circuit put it in *Nevada v. Bank of America Corp.*, a decision on which the State prominently relies in moving to remand, *see* Pl.'s Mem. 20-21, when a state attorney general "alleges only state law causes of action, brought to protect [its] residents . . . the claim of sovereign protection from removal arises in its most powerful form," 672 F.3d at 676 (cleaned up). But the strength of the State's quasi-sovereign interests in this case notwithstanding, the Court concludes that exercising federal jurisdiction would not upend the "appropriate 'balance of federal and state judicial responsibilities.'" *Gunn*, 568 U.S. at 264 (quoting *Grable*, 545 U.S. at 314).

First, although the State brings only state-law claims, the State itself made the decision to incorporate a federal definition into the relevant state law and, thus, took the risk that suits to enforce the law would be removed to federal court. Second, as discussed above, there is a strong federal interest in the issues presented by this case — namely, the regulation of firearms generally and whether the products at issue qualify as "firearms" or "component parts" thereof specifically. Congress has expressed that through the GCA and OCCSSA, which, as noted, stressed the need for "adequate Federal control . . . over all persons engaging in the businesses of

importing, manufacturing, or dealing in" firearms to "properly deal[]" with the "grave problem" of gun violence. Pub. L. No. 90-351, tit. IV, § 901(a)(3), 82 Stat. 197, 225 (1968). And the Executive Branch has expressed it, through (among other things) ATF's repeated rulemaking in this area, most notably its recent rule broadening the definition of "frame" and "receiver" in an apparent effort to reach ghost guns, *see* 27 C.F.R § 478.11, and through the Statement of Interest filed in the parallel City case, which emphasizes the federal government's "acute interest" in proper interpretation of the GCA and its implementing regulations, U.S. Statement 3. In short, this is *not* "an area traditionally regulated by the States" alone. *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989). Accordingly, it would be consistent with, and not disruptive to, the "congressionally approved balance of federal and state judicial responsibilities" to exercise jurisdiction over this case. *Grable*, 545 U.S. at 314; *cf. Gunn*, 568 U.S. at 264 (holding that federal jurisdiction would run afoul of *Grable* where the issue implicated an area traditionally addressed by states alone).[6]

Notably, the strong federal interests implicated by this case are manifest in the State's own Amended Complaint. Indeed, although the State brings only state-law claims, the Amended Complaint focuses squarely and repeatedly on Defendants' alleged violation of federal firearm laws. *See, e.g.*, Am. Compl. ¶¶ 2-3, 29, 31-32, 35, 39-52, 80-86, 111, 148, 209, 226, 467, 473, 476. The Amended Complaint begins by explaining that "Defendants do not follow the fundamental federal law requirements enacted by Congress to curtail gun crime." *Id.* ¶ 3. It then details how "[f]ederal law operates to protect the public's right to safety from gun violence through a series of provisions aimed at ensuring that deadly weapons are only sold by

---

[6] It also bears mentioning that this Court is already presiding over the parallel City case, which was filed in federal court. Thus, a federal court is likely to weigh in on the issues presented here whether *this* case is remanded or not.

responsible sellers to responsible buyers," and itemizes how Defendants violate each one of these provisions. *Id.* ¶¶ 39-52.  The Amended Complaint also contains a detailed legal analysis of why Defendants' products are "firearms" withing the meaning of federal law, citing federal precedents and discussing the new ATF rule. *Id.* ¶¶ 80-86.  In other words, the State's own Amended Complaint belies its assertions here about the relative balance of state and federal interests.

Once again, the State's counterarguments fail to persuade.  In addition to pressing the strength of its interests in enforcing the laws at issue, the State first asserts that there is no need for a federal forum in the first instance because the Supreme Court could always review any final state court decision on a federal issue.  Pl.'s Mem. 22.  But that assertion proves too much.  Indeed, if the (potentially remote) possibility of later Supreme Court review were enough to defeat removal in a case with a substantial federal question, the substantial federal question doctrine would be a dead letter.  In the alternative, the State argues that Congress "expressly preserved a State's ability to enforce its laws that specifically regulate the sale or marketing of firearms and component parts" through the PLCAA's "predicate exception," *id.* at 23, which preserves the right to bring "an action in which a manufacturer or seller of a qualified product knowingly violated a State . . . statute applicable to the sale or marketing of the product," *id.* (quoting 15 U.S.C. § 7903(5)(A)(iii)) (omission in original).  But the exception — which conspicuously refers not only to "State" statutes (as quoted by the State), but also to "Federal" ones (omitted by the State) — does not speak to whether such actions belong in federal or state court.  And, in any event, the State chose to exercise its authority to regulate in this area by

piggybacking on federal law; in doing so, it assumed the risk that an action to enforce its law, even one brought by the State itself, would be subject to removal to federal court.

## CONCLUSION

In short, the Court concludes that this case falls within the "special and small category" of cases subject to removal pursuant to the substantial federal question doctrine. *Empire Healthchoice*, 547 U.S. at 699. That is, to resolve the State's claims, the Court must decide whether the products at issue are "firearms" or "component parts" thereof within the meaning of federal law, which is "an important issue of federal law that sensibly belongs in a federal court." *Grable*, 545 U.S. at 315. Accordingly, and for the reasons stated above, the State's motion to remand must be and is DENIED. By separate Order, the Court will schedule an initial pretrial conference. The Clerk of Court is directed to terminate ECF No. 42.

SO ORDERED.

Dated: December 8, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge