UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

Plaintiff,

        -against-                         Case No. 22-cv-06124 (JMF)

ARM OR ALLY, LLC; BLACKHAWK
MANUFACTURING GROUP, INC., A/K/A 80
PERCENT ARMS, INC. OR 80 PERCENT ARMS;
SALVO TECHNOLOGIES, INC., A/K/A 80P
BUILDER OR 80P FREEDOM CO.; BROWNELLS,
INC., A/K/A BROWNELLS OR BOB BROWNELL'S;
GS PERFORMANCE, LLC, A/K/A GLOCKSTORE OR
GSPC; INDIE GUNS, LLC; KM TACTICAL;
PRIMARY ARMS, LLC; RAINIER ARMS, LLC; AND
ROCK SLIDE USA, LLC,

Defendants.

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF NEW YORK'S
MOTION FOR A PRELIMINARY INJUNCTION
AGAINST GHOST GUN COMPONENT SALES**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.    Unfinished Frames and Receivers, and the Ghost Guns Made From Them ................. 2

    B.    The Evidence of Defendants' Illicit Sales ................................................................ 6

        1.    Six Defendants Completed Illegal Sales To Undercover Investigators .............. 6

        2.    Shipping Records and Publicly Available Information Demonstrate that
            Defendants' Customers Commit Crimes Using Ghost Guns ............................. 7

    C.    Defendants Delay a Preliminary Injunction In This Action, But The Court Imposes
        An Injunction In The City Case ............................................................................ 10

ARGUMENT ..................................................................................................................... 12

    I.    EVIDENCE OF ILLEGAL SHIPMENTS INTO NEW YORK STATE
        ESTABLISHES A LIKELIHOOD OF SUCCESS ON THE MERITS ..................... 12

        A.    New York Is Likely to Succeed on Its New York Executive Law § 63(12)
            Cause of Action Premised on Shipment of Prohibited Unfinished Frames
            and Receivers. ............................................................................................... 13

        B.    New York Is Likely to Succeed on its N.Y. Executive Law 63(12) Cause
            of Action Premised on Aiding and Abetting Possession of Firearms By
            Convicted Persons. ........................................................................................ 15

        C.    New York Is Likely to Succeed on Its N.Y. Executive Law § 63(12) Cause
            of Action Premised on Aiding and Abetting Possession of Firearms By
            Unlicensed Persons. ....................................................................................... 17

        D.    New York Is Likely to Succeed on Its Statutory Firearms Nuisance Cause
            of Action ....................................................................................................... 19

            1.    Defendants Have Created, Maintained, or Contributed to a Condition
                Endangering the Safety or Health of the Public. ....................................... 19

            2.    Defendants Failed to Establish or Utilize Reasonable Controls ............... 21

    II.    NEW YORK SATISFIES ALL OTHER ELEMENTS FOR PRELIMINARY
        INJUNCTIVE RELIEF ................................................................................... 24

        A.    New York Need Not Prove Irreparable Harm .................................................. 24

B.    The Balance of the Equities and the Public Interest Require That Defendants'
        Illicit Business Practices Be Enjoined ............................................................. 25

CONCLUSION ...................................................................................................................... 26

Appendix of Shipments by Defendants to Persons Publicly Reported as Committing Crimes.... 27

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Bedminster Fin. Grp., Ltd. v. Umami Sustainable Seafood, Inc.*, No. 12 Civ. 5557,
    2013 WL 1234958 (S.D.N.Y. Mar. 26, 2013) ........................................................................ 11

*Begani v. 960 Associates LLC*, No. 18 Civ. 12000, 2021 WL 5362173
    (S.D.N.Y. May 10, 2021) ...................................................................................................... 11

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, No. 06 Civ. 2233, 2008 WL 4298501
    (E.D.N.Y. Sept. 19, 2008) ............................................................................................. 15, 16

*City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115 (2d Cir. 2010) .......... 12, 24

*Coronel v. Decker*, 449 F. Supp. 3d 274 (S.D.N.Y. 2020) ............................................................ 24

*E.F. v. Adams*, No. 21 Civ. 11150, 2022 WL 601999 (S.D.N.Y. Mar. 1, 2022) ......................... 12

*Ferreyra v. Decker*, No. 20 Civ. 3170, 2020 WL 2612199 (S.D.N.Y. May 22, 2020) ............... 24

*FTC v. Shkreli*, 581 F. Supp. 3d 579 (S.D.N.Y. 2022) ................................................................. 13

*Hartford Courant Co., LLC v. Caroll*, 986 F.3d 211 (2d Cir. 2021) ........................................... 24

*Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010) ............................................................... 7

*Nat'l Shooting Sports Found'n, Inc. v. James*, __ F. Supp. 3d __, 2022 WL 1659192
    (N.D.N.Y. May 25, 2022) ..................................................................................................... 19

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015) ........................... 12

*People ex rel. James v. Northern Leasing Sys., Inc.*, 70 Misc. 3d 256
    (Sup. Ct. N.Y. Cty. 2020) ............................................................................................... 13, 15

*People v. Apple Health & Sports Club, Ltd.*, 174 A.D.2d 438 (1st Dep't 1991) ......................... 24

*People v. Greenberg*, 27 N.Y.3d 490 (2016) ............................................................................... 24

*People v. Hughes*, 83 A.D.3d 960 (2d Dep't 2011) ...................................................................... 16

*Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S.Ct. 696 (2020) ............. 10

*Spitzer v. Lev*, Index No. 400989/2002, 2003 WL 21649444
    (Sup. Ct. N.Y. Cty. June 5, 2003) ........................................................................................ 24

*State v. Maiorano*, 189 A.D.2d 766 (2d Dep't 1993) ................................................................... 13

*United Sates v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) .............................................................. 4

*United States v. Miner*, No. 21-1802-cr, 2022 WL 7214447 (2d Cir. Oct. 13, 2022) .................... 4

*United States v. Smith*, No. 18 Civ. 3920, 2019 WL 6336884] (E.D.N.Y. Sept. 30, 2019) ... 23, 24

*United States v. Sternquist*, No. 22-MJ-1005, 2022 WL 6162532 (E.D.N.Y. Oct. 8, 2022).......... 4

*United States v. Zaleski*, 686 F.3d 90 (2d Cir. 2012).................................................................. 15

## **Statutes**

15 U.S.C. § 7903.................................................................................................................. 21, 22

18 U.S.C. § 921......................................................................................................................... 13

18 U.S.C. § 922........................................................................................................... 5, 15, 20

18 U.S.C. § 923......................................................................................................................... 16

26 U.S.C. § 5842........................................................................................... 5, 16, 20, 22

26 U.S.C. § 5861......................................................................................................................... 16

N.Y. Executive Law § 63 ................................................................................................ passim

N.Y. General Business Law § 898-a...................................................... 20, 21, 22, 23

N.Y. General Business Law § 898-b ........................................................................ passim

N.Y. General Business Law § 898-d ......................................................................... 24

N.Y. Penal Law § 15.05 ..................................................................................................... 20

N.Y. Penal Law § 265.01 ................................................................................... 5, 17, 20

N.Y. Penal Law § 265.02 ................................................................................... 5, 15, 20

N.Y. Penal Law § 265.07 ..................................................................................................... 16

N.Y. Penal Law § 265.20 ................................................................................... 5, 17, 20

N.Y. Penal Law § 265.60 ................................................................................ 5, 13, 22, 25

N.Y. Penal Law § 265.61 ................................................................................ 5, 13, 22, 25

N.Y. Penal Law § 265.63 ................................................................................ 1, 5, 13, 22

N.Y. Penal Law § 265.64 ................................................................................ 1, 5, 13, 22

N.Y. Penal Law § 400.00 ........................................................................................ 17

N.Y. City Admin. Code § 10-314 ...................................................................... passim


**Regulations**

87 Fed. Reg. 24739 (Apr. 26, 2022) ............................................................. 5, 21, 22


**Rules**

Fed. R. Civ. P. 65 ................................................................................................ 1, 25

Fed. R. Evid. 1006 .................................................................................................. 27


**Other Authorities**

Maki Becker, *DA: Suspect in police shooting accused of using 'homemade' guns in attacks*, *The Buffalo News*, July 28, 2021 .................................................................. 8

Jonah E. Bromwich, *Deadly and Untraceable, 'Ghost Guns' Are Becoming More Common in N.Y.*, N.Y. Times, Nov. 14, 2021 ........................................................ 21

Press Release, Brownells, *Brownells Announces Exclusive Polymer80 Frames* (October 11, 2017) .................................................................................... 2, 5, 16

Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Open Letter to All Federal Firearms Licensees: Impact of Final Rule 2021-05F on Partially Complete Polymer80, Lone Wolf, and Similar Semiautomatic Pistol Frames*, Dec. 27, 2022 ........................................ 14

Joe Marino, et al., *Fast-food worker obsessed with 'ghost guns' killed one, injured two others in Bronx shooting: cops*, *New York Post*, May 3, 2022 ............................. 7

Christian Murray, *Whitestone Man Busted for Cache of Illegal Ghost Guns: DA*, *Forest Hills Post*, Aug. 23, 2022 ......................................................................... 10

NBC 4 New York, *25-Year-Old Arrested in NYC Store Shooting That Killed Man, Wounded 2 Bystanders*, May 3, 2022 ............................................................. 15

Press Release, New York County District Attorney, *D.A. Bragg, D.A. Gonzalez and NYPD Announce Takedown of Ghost Gun Arsenal* (May 25, 2022) ............................. 7

N.Y. Spons. Memo., 2021 S.B. 7196 .................................................................... 19

Press Release, Queens County District Attorney, *Cache of Ghost Guns Seized Following Investigation; Queens Couple Charged with Illegal Possession and Sale of Firearms* ............ 8

Press Release, Queens County District Attorney, *Queens Man Charged With Possessing Arsenal of Illegal "Ghost" Guns* ........................................................................................ 18

Rick Pfeiffer, *Ghost gun maker takes plea deal from prosecutors*, *Niagara Gazette*, Dec. 1, 2022 .......................................................................................................................... 9

Amanda Woods, *NYC dad used 7-year-old son as 'prop' to flaunt ghost gun stash: prosecutors*, *New York Post*, Nov. 29, 2022. ........................................................................ 9

Plaintiff the People of the State of New York, by Letitia James, Attorney General of the State of New York ("New York" or the "State"), respectfully submits this Memorandum of Law and the accompanying Affidavits of Andrew Boss, Kenneth Morales, Paul Matthews, Peter Schottenfeld, Chad Shelmidine, and Richard LeBlond, with exhibits, in support of its motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65 to enjoin all defendants in this action (collectively "Defendants"), from selling ghost gun components to New York consumers or shipping ghost gun components into the State.

## PRELIMINARY STATEMENT

New York seeks to stop the influx of Defendants' unfinished frames and receivers flowing into the State, and the corresponding flood of deadly, untraceable ghost guns made from them. These products are unquestionably illegal, *see* N.Y. Penal Law §§ 265.63, .64; N.Y. City Admin. Code § 10-314, and New York will be able to demonstrate that Defendants acted illegally: Defendants improperly advertised these ghost gun components and shipped packages to individuals – often persons legally barred from possessing a firearm – who went on to commit ghost gun-related crimes. No Defendant has established or utilized reasonable controls to prevent unlawful use of their products, and to remove any doubt, six Defendants sold at least one unfinished handgun frame to undercover State or New York City investigators.

The damage from Defendants' illegal business practices is real and ongoing. A preliminary injunction is necessary to put a stop to these illegal shipments. As demonstrated below, New York is likely to succeed on the merits of this case, and while New York is not required to demonstrate irreparable harm when seeking injunctive relief to enjoin illegal acts, Defendants' products endanger the safety or health of the public in a manner that more than meets the standard. The balance of the equities similarly supports an injunction: the ongoing threat of violence towards New Yorkers from untraceable weapons prejudices the State and

1

harms the public, while the effect of an injunction on Defendants amounts to a prohibition from engaging in conduct already forbidden by law.

Moreover, this Court has already recognized in a similar action filed by New York City that a preliminary injunction is appropriate and necessary.[1]  The State's motion is substantively similar and seeks to apply this Court's correct ruling to protect all New Yorkers, statewide.

## STATEMENT OF FACTS

A.    Unfinished Frames and Receivers, and the Ghost Guns Made From Them

Frames and receivers are the core parts of a firearm: a frame is the lower part of a handgun, which forms the structure that "upper" parts such as the trigger, slide, and barrel are attached to, while a receiver is the central part of a rifle or shotgun to which parts like the barrel or stock are connected.  *See* Affidavit of Andrew Boss, sworn to January 11, 2023 (the "Boss Aff.") ¶¶ 3-5.  "Unfinished" frames and receivers, such as those that Defendants sell, are nearly identical to "finished" frames and receivers, but require two or three additional holes to be drilled and a small amount of material – generally just a few millimeters of plastic – to be filed down. *See id.* ¶¶ 6-7.  The entire process of turning a nominally "unfinished" frame or receiver into a "finished" deadly weapon can be done in under an hour with basic hand tools and does not require any specialized technical ability; by Defendant Brownells Inc.'s ("Brownells") admission, "an 80% frame can be finished into a firearm in just minutes."  Press Release, Brownells, *Brownells Announces Exclusive Polymer80 Frames* (October 11, 2017).[2]

Defendants sell their products with the intention that their customers will convert them into working firearms.  And the Defendants have even offered instructions on how to do so.

---

[1] *See* Exhibit 2 to the Declaration of James M. Thompson (Preliminary Injunction Order, dated October 31, 2022, *City of New York v. Arm or Ally, LLC et al.*, Case No. 22 Civ. 5525 (JMF) (S.D.N.Y.)).
[2] Available at https://www.theoutdoorwire.com/story/1507676814jseq2774930.

Although several Defendants scrubbed their websites after New York first moved for a preliminary injunction in State Court, archived webpages reveal, for example, Defendant Arm or Ally's marketing of a Glock-compatible frame linked to a PDF of milling instructions,[3] and Brownells' video instructions on finishing a Glock-compatible pistol frame, with a telephone support line where customers can ask for assistance.[4]  Defendants also routinely sell products inside a "jig," a plastic housing for the frame that guides the user's tools through the simple steps required to finish the product. By Defendant 80 Percent Arms Inc.'s admission ("80 Percent Arms"), the jigs "make it ridiculously easy for a non-machinist to finish their [handgun frame] in under 1 hour with no drill press required."[5]  A formerly "unfinished" frame or receiver is functionally identical to a serialized frame or receiver that would normally have to be sold through a federally-licensed gun store, and can be made into a fully-working firearm with the addition of a few commercially-available parts.  *See* Boss Aff. ¶ 10.

This process is designed to work around federal and state gun serialization, recordkeeping, and background check requirements, as Defendant Glockstore/GS Performance readily admits.  *See* http://community.glockstore.com/i-can-build-my-own-gun-with-this/ (last visited January 10, 2023) (touting that the product "is specifically designed to straddle the line between an ATF firearm classification and a DIY project that's easily accomplished by anyone even moderately handy.").  Based on the pretense that a nominally "unfinished" frame or receiver is meaningfully distinct from an actual frame or receiver – despite the minimal differences between the two, and the near-certainty that the customer will make the trivial alterations necessary to "finish" the product – the Defendants sell them directly to New York

---

[3] *See* Archived Webpage, Affidavit of Kenneth Morales, sworn to January 11, 2023 (the "Morales Aff.") Ex. 7.
[4] *See* Archived Webpage, Morales Aff. Ex. 8.
[5] *See* https://www.80percentarms.com/80-lowers/ (last visited December 27, 2022).  The quoted language appears when mousing over the "RIDICULOUSLY EASY" part of the site's banner.

consumers over the internet, without verifying the customer's identity, license status, or fitness to possess a deadly weapon. *See, e.g.,* Affidavit of Chad Shelmidine, sworn to December 22, 2022 (the "Shelmidine Aff.") ¶¶ 3-5; Affidavit of Sergeant Richard LeBlond, sworn to December 27, 2022 (the "LeBlond Aff.") ¶¶ 5-6. Critically, Defendants sell their unfinished frames and receivers without the serial numbers required by federal law to be engraved on every frame or receiver sold in the United States. *See* LeBlond Aff. ¶¶ 5-6; Affidavit of Paul Matthews, sworn to January 11, 2023 (the "Matthews Aff.") ¶ 6; Affidavit of Peter Schottenfeld, sworn to January 11, 2023 (the "Schottenfeld Aff.") ¶ 5; *cf.* 18 U.S.C. § 923(i); 26 U.S.C. § 5842.

The lack of serialization means that there is no record of the gun's existence and no ability for law enforcement to trace its origin if it is recovered in connection with a crime, leading to the popular name for these weapons: "ghost guns." *See* Boss Aff. ¶ 11. This untraceability, combined with Defendants' practice of selling their products without conducting a background check or any other control, renders their products particularly attractive to criminals and others who could not obtain a gun through legal channels. *See United Sates v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010) ("Because a firearm with a serial number is equally effective as a firearm without one, there would appear to be no compelling reason why a law-abiding citizen would prefer an unmarked firearm. These weapons would then have value primarily for persons seeking to use them for illicit purposes."); *see, e.g., United States v. Miner*, No. 21-1802-cr, 2022 WL 7214447, at *1 (2d Cir. Oct. 13, 2022) (summary order) (defendant who "desire[d] to engage in violent anti-social behavior" sought to obtain illegal weapons including "an AR-15 style ghost gun with a silencer," as well as other weapons without serial numbers); *cf. United States v. Sternquist*, No. 22-MJ-1005, 2022 WL 6162532, at *2 & n.2 (E.D.N.Y. Oct. 8, 2022) (finding of dangerousness to the community warranted because defendant had "the ability to

obtain weaponry in substantial quantities – including untraceable weaponry" via the purchase of "various parts and components that can be used . . . to create new firearms (commonly referred to as 'ghost guns')"). Defendants tout the lack of compliance with registration requirements to appeal to the illicit market.[6]

Because of the danger these products pose, New York State prohibits the sale or possession of unfinished frames and receivers, N.Y. Penal Law §§ 265.63, .64, as well as the ghost guns made from them. N.Y. Penal Law §§ 265.60, .61. Selling unfinished frames and receivers into the five boroughs is also illegal under the law of New York City. N.Y. City Admin. Code § 10-314. And the Bureau of Alcohol, Tobacco, Firearms, and Explosives recently issued a regulation clarifying that the definition of "frame" or "receiver" under federal law also includes any "partially complete, disassembled, or nonfunction frame or receiver . . . that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver . . ." 87 Fed. Reg. 24739 (Apr. 26, 2022). Moreover, Defendants' sale and marketing to customers who cannot legally possess weapons implicates federal prohibitions on possession of firearms by felons, state prohibitions on possession of firearms without a license, and federal law prohibiting possession of weapons without a serial number. *See, e.g.,* N.Y. Penal Law §§ 265.01(1), 265.02(1), 265.20(3); 18 U.S.C. § 922(g); 26 U.S.C. §§ 5842(a), 5842(b).

---

[6] *See, e.g.,* Archived Glockstore Website, Morales Aff. Ex. 5 (touting "the fact that you can build a completely legal handgun without any 'governmental oversight,' aka interference."); Press Release, "Brownells Announces Exclusive Polymer80 Frames," (Oct 11, 2017), available at https://www.theoutdoorwire.com/story/1507676814jseq2774930 (products can be used "to make instant custom handguns at home," "can be finished into a firearm in just minutes," and "can be shipped straight to a customer's home without an FFL"); https://indieguns.com/product/pf940v2-17-22-31/ (selling an unfinished frame with key features including its "blank serialization plate").

B.     The Evidence of Defendants' Illicit Sales

1.     Six Defendants Completed Illegal Sales To Undercover Investigators

Between May 3 and June 22, 2022, each of Defendants Arm or Ally, LLC ("Arm or Ally"), Brownells, Salvo Technologies, Inc. ("Salvo"), Indie Guns, LLC ("Indie Guns"), Rainier Arms, and Rock Slide USA, LLC ("Rock Slide") sold and shipped one or more unfinished frames or receivers to locations in Manhattan, Brooklyn, or the Bronx.  *See* Schottenfeld Aff. ¶¶ 3-4 & Ex. A; Matthews Aff. ¶¶ 3-5 & Exs. A & B; LeBlond Aff. ¶ 5.  Each delivery was in fulfillment of an online purchase made by investigators from either the Office of the Attorney General or the New York City Sheriff's Office.[7]  *See id.*

The ease with which these purchases were made demonstrates that Defendants made no effort at verifying their customers' suitability to possess a firearm, and the lack of any controls that would prevent their products from being possessed or used unlawfully.  None of the companies performed a background check on the undercover purchasers, nor did they verify whether their customers had a license to own a handgun.  *See* LeBlond Aff. ¶ 6; Shelmidine Aff. ¶ 5.  And in the case of Defendant Arm or Ally, even the inadequate controls the company claimed to have turned out not to exist; although Arm or Ally's website said that "NY residents must send copy of valid state-issued Driver's License," *see* Archived Website, Shelmidine Aff. Ex. A, Arm or Ally did not actually require the undercover purchasers to do so.  Shelmidine Aff. ¶ 6.

---

[7] Defendants Arm or Ally, Brownells, and Indie Guns sent frames in fulfillment of purchases by the Office of the Attorney General, *see* Matthews and Schottenfeld Affs., while Defendants Arm or Ally, Rainier Arms, 80P Builder, Rock Slide USA, and Indie Guns all sent frames in fulfillment of purchases by the New York City Sheriff's Office. *See* LeBlond Aff.

2.      Shipping Records and Publicly Available Information Demonstrate that
        Defendants' Customers Commit Crimes Using Ghost Guns

Shipping records obtained from common carriers also demonstrate the persistent
illegality of the Defendants' conduct in selling unfinished frames and receivers into New York
State.  Each Defendant sold and marketed unfinished frames and receivers, and as detailed in the
accompanying Affidavit of Kenneth Morales, sworn to January 11, 2023 (the "Morales Aff."),
Defendants have collectively shipped over 108,000 packages directly to New York consumers,
without going through a Federal Firearms Licensee and the concomitant safeguards required by
federal and state law.  *Id.* ¶ 5.  Publicly available reports demonstrate that several recipients went
on to commit crimes with ghost guns.

For instance, Defendants Arm or Ally, Blackhawk Manufacturing Group, Inc. a/k/a 80
Percent Arms, Inc. ("Blackhawk/80 Percent Arms"), Brownells, and KM Tactical all satisfied
orders and shipped packages directly to New York resident Rene Loyola.  *See id.* ¶ 15.  In May
2022, the NYPD executed search warrants on Loyola's home and storage unit, finding
approximately $20,000 worth of ghost guns and parts, including more than 30 frames and
receivers.  *See* Press Release, New York County District Attorney, *D.A. Bragg, D.A. Gonzalez
and NYPD Announce Takedown of Ghost Gun Arsenal* (May 25, 2022).[8]

Similarly, Defendants Brownells, Primary Arms, LLC ("Primary Arms"), and GS
Performance, LLC a/k/a Glockstore or GSPC ("Glockstore") all satisfied orders and shipped
packages directly to New York resident Edison Cruz at an apartment in the Bronx.  *See* Morales
Aff. ¶ 16.  On May 3, 2022, Cruz used a ghost gun to open fire into a bodega, striking three

---

[8] Available at https://www.manhattanda.org/d-a-bragg-d-a-gonzalez-and-nypd-announce-takedown-of-ghost-gun-
arsenal/.  To the extent that these or other documents may constitute hearsay, "hearsay evidence may be considered
by a district court in determining whether to grant a preliminary injunction."  *Mullins v. City of New York*, 626 F.3d
47, 52 (2d Cir. 2010).

people and killing one.  *See* Joe Marino, et al., *Fast-food worker obsessed with 'ghost guns' killed one, injured two others in Bronx shooting: cops*, *New York Post*, May 3, 2022.[9]  According to the *Post*, the NYPD recovered "an operable shotgun, two 'ghost' Polymer 80 handgun receivers, manufacturing tools, and Glock parts" after searching Cruz' residence; a police source described him as "the poster child for [the dangerousness of] ghost guns."  *Id.*

Defendants Brownells, KM Tactical, and Glockstore also satisfied orders and shipped packages directly to Tonawanda, New York resident Matthew Gerwitz.  *See* Morales Aff. ¶ 18. Gerwitz later used a ghost gun to carry out a drive-by shooting, and when police came to investigate, he opened fire, striking a detective multiple times.  *See* Maki Becker, *DA: Suspect in police shooting accused of using 'homemade' guns in attacks*, *The Buffalo News*, July 28, 2021.[10]  The Erie County District Attorney described the weapon used in the drive-by as "a homemade, off-the-internet nine-millimeter" and noted that Gerwitz had a "little gun shop in his house."  *Id.*

Defendants Brownells, Primary Arms, and Rainier Arms also satisfied orders and shipped packages directly to Ricardi Kiem in Rosedale, Queens.  *See* Morales Aff. ¶ 19.  When the NYPD searched Kiem's home as part of an investigation, they found numerous ghost guns and components, including several unfinished or completed lower receivers.  *See* Press Release, Queens County District Attorney, *Cache of Ghost Guns Seized Following Investigation; Queens Couple Charged with Illegal Possession and Sale of Firearms*.[11]  Kiem and his wife apparently turned unfinished frames and receivers into ghost guns and sold them for profit; both were

---

[9] Available at https://nypost.com/2022/05/03/man-killed-2-bystanders-hurt-in-bronx-shooting-cops/.
[10] Available at https://buffalonews.com/news/local/da-suspect-in-police-shooting-accused-of-using-homemade-guns-in-attacks/article_0ccc4699-a340-53b9-a87e-26a278dd7fc8.html.
[11] Available at https://queensda.org/cache-of-ghost-guns-seized-following-investigation-queens-couple-charged-with-illegal-possession-and-sale-of-firearms/.

charged with a host of crimes, including criminal sale of a weapon and endangering the welfare of a child.  *Id.*

As demonstrated by these exemplars, shipping records of Defendants' sales into New York are powerful circumstantial evidence of their illegal sales of unfinished frames and receivers into New York State, and how they have created, maintained, or contributed to a condition that endangers the safety or health of the public.  Defendants sold unfinished frames and receivers, shipped to New York State consumers to whom those products strongly appealed, and several of those same consumers went on to commit crimes with ghost guns made from unfinished frames and receivers, in some cases creating their own illegal cottage industry.

Defendants' customers have continued to commit these crimes during the pendency of this case.  For instance, in November 2022 the Manhattan District Attorney indicted Cory Davis, of the Upper East Side, after discovering 14 ghost guns in his apartment, and after discovering that he circulated a photo of his seven-year-old son holding the weapons.  *See* Amanda Woods, *NYC dad used 7-year-old son as 'prop' to flaunt ghost gun stash: prosecutors*, New York Post, Nov. 29, 2022.[12]  Davis' "online purchasing history" showed that "he had been buying gun parts and accessories from multiple websites since June 2020," *id.*  Shipping records show that those retailers included Defendants KM Tactical and Glockstore.  *See* Morales Aff. ¶ 20.

In December 2022, Niagara County prosecutors secured a guilty plea from a man named Alfred Bax who they accused "of operating a ghost gun factory out of his LaSalle neighborhood home."  *See* Rick Pfeiffer, *Ghost gun maker takes plea deal from prosecutors*, Niagara Gazette, Dec. 1, 2022.[13]  Shipping records show an "Al Bax," with an address on the same street in

---

[12]Available at https://nypost.com/2022/11/29/nyc-dad-cory-davis-used-son-as-prop-to-flaunt-ghost-gun-stash-prosecutors/.
[13] Available at https://www.niagara-gazette.com/news/crime/ghost-gun-maker-takes-plea-deal-from-prosecutors/article_6002ff2c-7102-11ed-b4c5-27db445507ed.html.

Niagara Falls to have been a repeat customer of Defendants Primary Arms and Blackhawk/80 Percent Arms.  *See* Morales Aff. ¶ 21.

And in August 2022, prosecutors indicted a man named Joseph Maddaloni, Sr. with 140 counts of weapons violations, after an investigation recovered dozens of illegal weapons, including ghost guns, from his Queens home.  *See* Christian Murray, *Whitestone Man Busted for Cache of Illegal Ghost Guns: DA*, *Forest Hills Post*, Aug. 23, 2022.[14]  Shipping records confirm that Maddaloni was a customer of Defendants KM Tactical, Blackhawk/80 Percent Arms and Glockstore.  *See* Morales Aff. ¶ 22.

These post-commencement exemplars show that Defendants' business practices continue to create, maintain, or contribute to a condition that endangers the safety or health of the public and must be enjoined.

C.      Defendants Delay a Preliminary Injunction In This Action, But The Court Imposes An Injunction In The City Case

New York attempted to obtain this injunctive relief in state court, but Defendants' removal delayed the injunction by months.  On July 13, 2022, two weeks after this action was filed, New York moved for a temporary restraining order and preliminary injunction against six Defendants.  *See* ECF No. 1-3 & 1-4 (preliminary injunction papers as attached to notice of removal).  The state court, Lucy Billings, J.S.C., scheduled a hearing on the State's motion for a temporary restraining order for 4:00 p.m on July 19, 2022.  However, at 1:31 a.m. that morning, Defendants filed their notice of removal, depriving the state court of jurisdiction and New York of immediate relief.  *See Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S.Ct. 696, 700 (2020) ("Once a notice of removal is filed . . . . [t]he state court loses all jurisdiction over the case, and, being without jurisdiction, its subsequent proceedings are . . .

---

[14] Available at https://foresthillspost.com/whitestone-man-busted-for-cache-of-illegal-ghost-guns-da.

absolutely void.").

The removal also had the practical effect of denying New York the ability to seek injunctive relief in this court, since "a plaintiff may not take affirmative action in federal court after removal without risking waiving the right to remand*." Bedminster Fin. Grp., Ltd. v. Umami Sustainable Seafood, Inc.*, No. 12 Civ. 5557, 2013 WL 1234958, at *3 (S.D.N.Y. Mar. 26, 2013) (quoting *Moore's Federal Practice* § 107.41).[15]  Only now, after the Court's recent resolution of the motion to remand, *see* ECF No. 58, is the State free to seek an order stopping the Defendants from selling their illegal products to New York consumers.

Although Defendants' decision to remove the case on the morning of the TRO hearing prevented the state court from issuing an injunction against their illegal sales, they could not stop this Court from issuing a similar injunction in the related action brought by New York City, *City of New York v. Arm or Ally, LLC et al.*, Case No. 22 Civ. 5525 (JMF) (S.D.N.Y.) (the "City Case").  After the City moved for a preliminary injunction against five of the respondents to this current motion[16] each of Defendants Arm or Ally, Salvo Technologies, Rainier Arms, and Rock Slide USA agreed to settle the motion (and the case) under terms including imposition of a technological bar on sales into New York City.  *See* City Case Docket, ECF Nos. 42, 49, 51, 68.

Although Defendant Indie Guns opposed the preliminary injunction on the merits, *see* City Case Docket, ECF No. 59, the Court granted the motion, finding a likelihood of success on the merits, Exhibit 1 to the Declaration of James M. Thompson at 12:8-13, that the unfinished frames and receivers sold by the defendants were "dangerous products," *id.* at 13:6-7, and that

---

[15] Although a plaintiff cannot waive defects in the Court's subject-matter jurisdiction, taking affirmative steps after removal will waive "procedural and non-jurisdictional defects in the removal process," *Begani v. 960 Associates LLC*, No. 18 Civ. 12000, 2021 WL 5362173, at *5 (S.D.N.Y. May 10, 2021), such as Defendants' failure to dispute in their notice of removal that their products are  "qualified products" or "component part[s] of a firearm."  *See* ECF No. 53 at 2-3.  New York could not have sought this relief without significant prejudice to its motion to remand.
[16] Defendant Brownells was not a party to the City Case.

there was "a reasonable likelihood that future violations may recur." *Id.* at 14:18-25.  The Court issued its preliminary injunction on October 31, 2022.  Thompson Dec. Ex. 2.  The same result is warranted here.

**ARGUMENT**

"A party seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest.  *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quotations omitted).[17]  Here, as discussed in Point II(A) below, New York need not show irreparable harm because the conduct sought to be enjoined is a statutory violation.  *See City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120 (2d Cir. 2010) (holding that in such cases the courts "have dispensed with the requirement of showing of irreparable harm, and instead employ a presumption of irreparable harm based on a statutory violation.").   In any event, all three factors weigh strongly in favor of halting Defendants' sales of ghost gun components into New York State.

## I.  EVIDENCE OF ILLEGAL SHIPMENTS INTO NEW YORK STATE ESTABLISHES A LIKELIHOOD OF SUCCESS ON THE MERITS

New York moves for this preliminary injunction on its first, second, third, and eleventh causes of action, all under N.Y. Executive Law § 63(12), as well as its fourth and fifth causes of action, under N.Y. General Business Law § 898-b.  For the reasons discussed below, the State is

---

[17] Because the injunction here is prohibitory rather than mandatory in nature – barring Defendants from shipping products that are already illegal – the lower standard applies.  *See E.F. v. Adams*, No. 21 Civ. 11150, 2022 WL 601999, at *8 (S.D.N.Y. Mar. 1, 2022) ("A prohibitory injunction is one that forbids or restrains an act.").  This standard "shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing."  *Id.* (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 n.5 (2d Cir. 2018)).

likely to succeed on the merits of several of its claims, warranting an injunction.

 A. <u>New York Is Likely to Succeed on Its New York Executive Law § 63(12) Cause of Action Premised on Shipment of Prohibited Unfinished Frames and Receivers.</u>

New York is likely to succeed on the merits of its first cause of action.  New York Executive Law § 63(12) empowers the Attorney General to bring an action "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business[.]"  The terms "persistent fraud" and "illegality" are defined as "continuance or carrying on of any fraudulent or illegal act or conduct."  *Id.*  The "provision also defines 'repeated' conduct as conduct affecting more than one person and 'persistent' conduct as continuing conduct."  *People ex rel. James v. Northern Leasing Sys., Inc.*, 70 Misc. 3d 256, 263 (Sup. Ct. N.Y. Cty. 2020), *aff'd*, 193 A.D.3d 67 (1st Dep't 2021).  The statute is a flexible vehicle for the Attorney General to seek justice against any ongoing illegal conduct, and New York courts have held that it "should be liberally construed in furtherance of its intended purpose."  *State v. Maiorano*, 189 A.D.2d 766, 767 (2d Dep't 1993).  The statute's prohibition on repeated or persistent illegality reaches "[a]ny conduct which violates state or federal law or regulation," which in turn "is actionable under Executive Law § 63(12)."  *FTC v. Shkreli*, 581 F. Supp. 3d 579, 627-28 (S.D.N.Y. 2022) (internal quotations omitted).  Simply put, if New York can establish that Defendants engaged in repeated illegal activity, the State is entitled to multiple forms of relief, including "an order enjoining the continuance of such business activity or of any fraudulent or illegal acts[.]"  N.Y. Executive Law § 63(12).

Defendants' sale of unfinished frames and receivers into New York State is unquestionably illegal.  Since April 26, 2022, possession or sale of unfinished frames or receivers has been a felony under New York State Law, as has possession or sale of the ghost

guns made from them.  *See* N.Y. Penal Law §§ 265.60, .61, .63, .64.  Unfinished frames and receivers are also illegal to sell or possess under the law of New York City, rendering shipments made into the five boroughs after February 23, 2020, unlawful on this ground as well.  *See* N.Y. City Admin. Code § 10-314.  And since Defendants' products constitute "firearms" under 18 U.S.C. § 921(a)(3), these items are subject to the same serialization, recordkeeping, and point-of-sale requirements as are other guns, a fact that the ATF reiterated recently.  *See* Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Open Letter to All Federal Firearms Licensees: Impact of Final Rule 2021-05F on Partially Complete Polymer80, Lone Wolf, and Similar Semiautomatic Pistol Frames*, Dec. 27, 2022, available at https://www.atf.gov/rules-and-regulations/docs/open-letter/all-ffls-dec2022-open-letter-impact-final-rule-2021-05f/download.  Each of these statutes constitutes a separate and sufficient ground to sustain a claim of persistent illegality under N.Y. Executive Law § 63(12).

New York is likely to succeed at showing that Defendants have engaged in such illegal conduct – and will continue to do so absent court intervention.  Six Defendants' statutory violations are evidenced by the fact that New York State or City investigators completed one or more undercover purchases from them in the weeks leading up to the commencement of this action in state court.  *See* Shelmidine and LeBlond Affs.; *see also supra* at 6.  These undercover purchases alone are sufficient to confirm that those Defendants engaged in illegal conduct by shipping unfinished frames and receivers into New York State, and thereby the likely success of New York's cause of action under Executive Law § 63(12).

New York's likelihood of success is further demonstrated by shipping records obtained from common carriers.  Each Defendant marketed frames and receivers online, *see* Shelmidine Aff. ¶ 3; LeBlond Aff. ¶ 5; *see also, e.g.,* Morales Aff. Exs. 1-7, and even the limited shipping

14

records obtained prior to the commencement of this action demonstrate that orders shipped by

the Defendants went not just into New York, but into the hands of specific New York customers

who later committed crimes with fully-assembled ghost guns.  *See supra* at 7-10.  Therefore, the

State is likely to prevail by showing that a portion of these shipments contained illegal

unfinished frames and receivers, as "even a small fraction of the total number of [shipments]

presented would sustain a claim under Executive Law § 63(12)."  *Northern Leasing*, 70 Misc. 3d

at 269.  An appendix of such incidents, and the packages shipped by the Defendants to each

alleged offender, is attached at the end of this memorandum of law.  *See* Morales Aff. ¶ 26.

    B.    <u>New York Is Likely to Succeed on its N.Y. Executive Law 63(12) Cause of Action</u>
<u>Premised on Aiding and Abetting Possession of Firearms By Convicted Persons.</u>

New York is also likely to succeed on the merits of its second cause of action under N.Y.

Executive Law § 63(12), based on Defendants' aiding and abetting the possession of firearms by

convicted criminals.  Federal law prohibits felons from possessing a firearm, *see* 18 U.S.C. §

922(g)(1), and a defendant can "aid[] and abet[] the violation of th[is] law by[] knowingly

permitting a felon to possess firearms."  *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, No. 06 Civ.

2233, 2008 WL 4298501, at *3 (E.D.N.Y. Sept. 19, 2008), *aff'd in part, vacated in part on other*

*grounds sub nom.*, *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011);

*accord U.S. v. Zaleski*, 686 F.3d 90, 94 (2d Cir. 2012) (transferring a firearm to a felon "would

constitute criminally aiding and abetting a convicted felon in the possession or attempted

possession of firearms.").  New York State law similarly forbids possession of a firearm by one

who "has been previously convicted of any crime."  N.Y. Penal Law § 265.02(1).

Publicly available reports and statements from public authorities demonstrate that

Defendants have sold their products to convicted persons.  For instance, Edison Cruz,

Defendants Brownells, Primary Arms, and Glockstore's customer who killed one person and

wounded two when firing a ghost gun into a Bronx bodega, had "a lengthy rap sheet." *See* NBC 4 New York, *25-Year-Old Arrested in NYC Store Shooting That Killed Man, Wounded 2 Bystanders*, May 3, 2022.[18]  And Matthew Gerwitz, a drive-by ghost gun shooter who later shot a police detective multiple times, was also barred from gun possession by his prior conviction. *See supra* at 8; *People v. Hughes*, 83 A.D.3d 960, 961 (2d Dep't 2011) (ban on gun possession applies to anyone convicted of a "crime," defined as "a misdemeanor or a felony"); *see also* Becker, *supra* (Gerwitz' attorney conceded he had a prior misdemeanor conviction).  Defendants Brownells, KM Tactical, and Glockstore sold and shipped products to Gerwitz anyway.

Defendants also acted with the requisite intent.  *Cf. A-1 Jewelry*, 2008 WL 4298501, at *3.  Defendants are not only aware that the unfinished frames and receivers they sell are inherently attractive to persons ineligible from legally securing a firearm, Defendants intentionally promote to that demographic. Indeed, their business model relies on how easily customers can convert their products into working firearms without ever being subject to federal serialization, background check, and recordkeeping requirements.[19]  For instance, Defendant Arm or Ally's webpages for unfinished frames and receivers proudly proclaimed, in large bold green letters, **"No FFL Required!"**[20]  A press release from Defendant Brownells touted its exclusive line of unfinished frames as a way "to make instant custom handguns at home," while advertising that "they can be shipped straight to a customer's home without an FFL".  *See* Press

---

[18] Available at https://www.nbcnewyork.com/news/local/crime-and-courts/25-year-old-man-in-custody-after-bronx-shooting-leaves-1-dead-2-hurt/3672700/.

[19] The fact that Defendants' products were unserialized and designed to be converted into unserialized firearms also demonstrates that New York is likely to succeed on its eleventh cause of action, under N.Y. Executive Law § 63(12) based on Defendants' aiding and abetting the possession of unserialized firearms. *See* Complaint ¶¶ 527-38; 26 U.S.C. §§ 5842(b), 5861(c); N.Y. Penal Law § 265.07.

[20] *See* Archived Website, Morales Aff. Ex. 7.  "FFL" is short for Federal Firearms Licensee, a person or business that has gone through a Department of Justice investigation, review, and licensing process to ensure their ability to responsibly manufacture or sell firearms. *See generally* 18 U.S.C. § 923.

Release, Brownells, *Brownells Announces Exclusive Polymer80 Frames* (October 11, 2017).[21]
And a product listing from Defendant Rainier Arms emphasized that "this item can ship straight
to your door, with no Federal Firearms License required.  Simply follow the instructions
provided, and 48 hours later, you will be ready to assemble and shoot your home built [ghost
gun]!"[22]

This evidence demonstrates that Defendants intended to sell, and in fact sold, their
unfinished frames and receivers to convicted persons, and that they have intentionally marketed
their products as a way of avoiding the legal protections that keep firearms out of convicted
persons' hands.  Accordingly, New York is likely to succeed on the merits of its second claim.

C.    New York Is Likely to Succeed on Its N.Y. Executive Law § 63(12) Cause of
      Action Premised on Aiding and Abetting Possession of Firearms By Unlicensed
      Persons.

New York is similarly likely to succeed on the merits of its third cause of action, based
on aiding and abetting the possession of firearms by unlicensed persons.  New York State's
firearm licensing process exists to ensure that a person seeking to obtain a firearm is responsible
enough to own one, including verifying that the applicant is over 21, has no serious convictions
or arrest warrants, is not a fugitive from justice, is not unlawfully in the United States, and has
not been involuntarily committed to a psychiatric facility.  *See* N.Y. Penal Law § 400.00.
Because of the importance of verifying a gun owner's fitness to carry a deadly weapon, New
York law prohibits the possession of a firearm without a valid license.  *See id.* §§ 265.01(1),
265.20(3).

---

[21] Available at https://www.theoutdoorwire.com/story/1507676814jseq2774930.  The same release emphasized how "an 80% frame can be finished into a firearm in just minutes."
[22] *See* https://www.rainierarms.com/rifle-parts/receiver-parts/lone-wolf-arms-freedom-wolf-80-glock-19-compatible-pistol-frame/.  Notably, Rainier Arms says it will not ship the unfinished receivers to New Jersey or allow in-store purchases in Washington State, but acknowledges no such restrictions in New York.

Defendants have undisputedly sold their products to unlicensed persons.  For instance, Matthew Gerwitz, *supra* at 8, "didn't have a permit for [his weapon],"[23] but Defendants Brownells, KM Tactical, and Glockstore sold to him anyway.  Ricardi Kiem, *supra* at 8-9, "does not have a license to possess or own firearms in New York City and he is also not licensed to carry a firearm," but nonetheless bought products from Defendants Primary Arms, Glockstore, Rainier Arms, and Brownells.[24]  Likewise, Defendants Arm or Ally, Brownells, Blackhawk/80 Percent Arms and KM Tactical all satisfied orders and shipped packages directly to Jonathan Santos, a Queens man who was indicted on 252 separate firearms counts relating to his possession and construction of ghost guns, despite the fact that he "does not have a license to possess or own firearms in New York City."  *See* Press Release, Queens County District Attorney, *Queens Man Charged With Possessing Arsenal of Illegal "Ghost" Guns*, Dec. 9, 2021.[25]

Defendants acted with the requisite intent because their marketing broadly targets persons who could not obtain a license to obtain the weapons made with the products they sell. Defendants advertise that their unfinished frames and receivers are a simple way of making working firearms while evading any legal scrutiny.  *See, e.g.,* Brownells Press Release, *supra* at 2,5.  And Defendants sell their products into New York without ever warning consumers that a licensing requirement applies, or ever attempting to confirm whether a customer is licensed.  *See* Shelmidine Aff. ¶ 5; LeBlond Aff. ¶ 6.  There is a clear reason why Defendants omit these

---

[23] *See* https://buffalonews.com/news/local/da-suspect-in-police-shooting-accused-of-using-homemade-guns-in-attacks/article_0ccc4699-a340-53b9-a87e-26a278dd7fc8.html.

[24] *See* https://queensda.org/cache-of-ghost-guns-seized-following-investigation-queens-couple-charged-with-illegal-possession-and-sale-of-firearms/.

[25] Available at https://queensda.org/queens-man-charged-with-possessing-arsenal-of-illegal-ghost-guns/.  Defendant Primary Arms also appears to have sent a package to a person named Jonathan Santos in the New York City area; however, Primary Arms' package did not go to the same 102nd Street address in Queens where the NYPD ultimately discovered Santos' cache of ghost guns and materials.

licensing requirements from their marketing materials while also touting their unfinished frames and receivers as a way around legal scrutiny: they fully intend to sell their products to people who cannot legally have a gun.

      D.     <u>New York Is Likely to Succeed on Its Statutory Firearms Nuisance Cause of Action</u>

In addition to its various N.Y. Executive Law § 63(12) claims, New York is also likely to succeed on the merits of its claims under N.Y. General Business Law § 898-b in two independent ways.  The State's application of Section 898-b is the first of its kind,[26] but the strength of its case is apparent by the plain language of the statute.   Indeed, this Court has already made a corresponding finding on behalf of New York City based on a related record.  *See* City Preliminary Injunction Order, Thompson Dec. Ex 2 ("Plaintiff the City is likely to succeed on the merits of its causes of action against Indie Guns under the N. Y. General Business Law §§ 898-a et seq. and for common law public nuisance.").  For the reasons described below, and for the reasons underlying this Court's prior ruling, the State is entitled to a preliminary injunction.

          1.    Defendants Have Created, Maintained, or Contributed to a Condition Endangering the Safety or Health of the Public.

New York General Business Law § 898-b(1) imposes liability on gun industry members who create, maintain, or contribute to a condition that endangers the safety or health of the public.  N.Y. Gen. Bus. L § 898-b(1).  Section 898-b(1) is a flexible statute designed to ensure that "[g]iven the ease with which legal firearms flow into the illegal market – in spite of stringent state and local restrictions – and given the specific harm illegal firearm violence causes certain New Yorkers, those responsible for the sale, manufacture, importing or marketing of firearms should be held liable for the public nuisance caused by such activities."  N.Y. Spons. Memo.,

---

[26] The statute has been upheld against a facial constitutional challenge from the gun lobby, *see Nat'l Shooting Sports Found'n, Inc. v. James*, __ F. Supp. 3d __, 2022 WL 1659192 (N.D.N.Y. May 25, 2022).

2021 S.B. 7196, available at https://www.nysenate.gov/legislation/bills/2021/S7196.  Critically,

even if the products sold by Defendants were otherwise legal – which they are not – Section 898-

b(1) is an independent basis for liability.

   This statutory claim has six elements: "[n]o [1] gun industry member, by [2] conduct

either unlawful in itself or unreasonable under all the circumstances shall [3] knowingly or

recklessly [4] create, maintain or contribute to a condition in New York state that endangers the

safety or health of the public [5] through the sale, manufacturing, importing, or marketing [6] of

a qualified product."  N.Y. Gen. Bus. L § 898-b(1).  Each of these elements is satisfied in the

context of Defendants' illegal sales of unfinished frames and receivers into New York State:

   **First**, each Defendant is a "gun industry member," defined in N.Y. Gen. Bus. L. § 898-

a(4) as any entity "engaged in the sale, manufacturing, distribution, importing, or marketing of

firearms" and related items.

   **Second**, each has engaged in illegal conduct, as selling unfinished frames and receivers is

illegal under State, City, and federal law, as is contributing to the possession of firearms by

convicted or unlicensed persons or contributing to the manufacture or possession of an

unserialized firearm.  *See, e.g.,* N.Y. Penal Law §§ 265.01(1), 265.02(1), 265.20(3); 18 U.S.C. §

922(g); 26 U.S.C. § 5842(a), (b).  And, even if the conduct were not illegal in all these ways, it is

manifestly "unreasonable under all the circumstances" to sell a product that can so easily be

converted to a working firearm, undercutting all pertinent federal, state, and local laws.  *See*

*supra* at 2-5.

   **Third,** each Defendant acted either "knowingly," defined by statute as "when he is aware

that his conduct is of such nature or that such circumstance exists," or "recklessly," defined as

"when he is aware of and consciously disregards a substantial and unjustifiable risk that such result

will occur."  N.Y. Penal Law § 15.05(2), (3); *see* N.Y. Gen. Bus. L. § 898-a(5).  Defendants knew that their unfinished frames and receivers would be converted into working weapons (even helping the process along by providing detailed instructions and support), and their marketing demonstrates that they knew their customers viewed their products as a way around federal and state firearms laws.[27]

**Fourth and Fifth**, Defendants' sale of their unfinished frames and receivers has created, contributed, to or maintained a condition that endangers the public's health and safety, namely the growing proliferation of ghost guns, in increased likelihood that they will be used in the commission of a crime, and the violence ultimately committed by too many of them.  *See* 87 Fed. Reg. 24655-60 (discussing "the substantial increase in the number of [ghost guns] recovered from crime scenes throughout the country in recent years;" the ways in which ghost guns frustrate efforts to trace weapons used in crimes; the efforts made by federal, state, and local law enforcement to combat their proliferation; and concluding that "wide availability of ghost guns" is "a homeland security threat"); *see also* Jonah E. Bromwich, *Deadly and Untraceable, 'Ghost Guns' Are Becoming More Common in N.Y.*, N.Y. Times, Nov. 14, 2021.

**Sixth**, the unfinished frames and receivers are a "qualified product" because they are either "a firearm" or "a component part of a firearm" and have been "shipped or transported in interstate . . . commerce."  15 U.S.C. § 7903(4); *see* 87 Fed. Reg. 24739; N.Y. Gen. Bus. L § 898-a(6).

Accordingly, New York is likely to succeed on its claim under N.Y. General Business Law § 898-b(1), providing a separate and sufficient ground for an injunction.

2.   Defendants Failed to Establish or Utilize Reasonable Controls

New York is similarly likely to succeed on its claim based on N.Y. General Business

---

[27] *See supra* at 3-5.

Law § 898-b(2), which creates liability on gun industry members who fail to use reasonable controls to prevent unlawful use of their products.  Section 898-b(2) sets five elements: "[a]ll [1] gun industry members who [2] manufacture, market, import or offer for wholesale or retail sale any qualified product in New York State shall [3] establish and utilize reasonable controls and procedures to prevent [4] its qualified products [5] from being possessed, used, marketed or sold unlawfully in New York state."  N.Y. Gen. Bus. L § 898-b(2).

New York is likely to establish each of these elements.  All but the third element are clearly satisfied by the already undisputed facts here. *See* N.Y. Gen. Bus. L § 898-a(4), (6) (defining "gun industry members" and "qualified products"); 15 U.S.C. § 7903(4); 87 Fed. Reg. 24739; *see generally* Shelmidine, Matthews, Morales, Schottenfeld, and LeBlond Affs. (demonstrating that Defendants "market[ed], import[ed], or offered for . . . retail sale" their products); N.Y. Penal Law §§ 265.60, .61, .63, .64; N.Y. City Admin. Code § 10-314; 26 U.S.C. § 5842 (establishing that the unfinished and unserialized frames and receivers Defendants market and sell are illegal to possess).

As to the **third** element, Defendants have not "establish[ed] and utilize[d] reasonable controls and procedures," or any controls at all.  Rather, the early record establishes that Defendants avoided establishing and utilizing controls and procedures to maximize their sales and profits.  Six Defendants sold their illegal products to City or State investigators without ever verifying their identities, without ever conducting a background check, and without asking if they had a valid license or were legally permitted to own a firearm.  And the remaining Defendants' marketing materials demonstrate that they likewise did nothing to know the identity of their customer, or to verify whether he or she was legally allowed to possess a deadly weapon. *See, e.g.,* Morales Aff. Ex. 6 at 4 (Blackhawk Manufacturing/80 Percent Arms webpage touting

that "with an 80% lower there is no background check or registration involved; saving you time and headaches. . . . 80% lowers are shipped right to your door, which is a convenience that can't be beat."); *see also* http://community.glockstore.com/i-can-build-my-own-gun-with-this/ (last visited January 10, 2023 (promising products with "[n]o fuss, no muss, no registration, no records… what's not to like?"). Thus, this evidence establishes that they could not have met their obligations of creating reasonable controls and procedures to prevent the illegal possession or use of their products. *See generally* Shelmidine, Matthews, Morales, Schottenfeld, and LeBlond Affs.

Nothing indicates that any Defendant utilized appropriate controls – indeed, their websites frequently touted their products as a vehicle for avoiding the firearms laws, and shipping records indicate that each Defendant sold their products directly to consumers that foreseeably went on to commit crimes using ghost guns assembled from their products. These sorts of irresponsible sales, without any effort to verify the customer's identity or suitability, contravene the statutory definition of "reasonable controls and procedures, which "include, but are not limited to[] instituting screening, security, inventory, and other business practices to prevent . . . sales of qualified products to straw purchasers, traffickers, persons prohibited from possessing firearms under state or federal law, or persons at risk of injuring themselves or others." N.Y. Gen. Bus. L § 898-a(2). Because Defendants are unlikely to be able to demonstrate the presence of any reasonable controls, the Court is likely to find them liable on the merits.

For all these reasons, New York is likely to succeed on the merits of several claims arising under N.Y. Executive Law § 63(12) and N.Y. Gen. Bus. L § 898-b.

## II.   NEW YORK SATISFIES ALL OTHER ELEMENTS FOR PRELIMINARY INJUNCTIVE RELIEF

### A.   New York Need Not Prove Irreparable Harm

The law is clear that "where the government seeks to enforce a statute designed to protect the public interest, it is not required to show irreparable harm to obtain injunctive relief." *United States v. Smith*, No. 18 Civ. 3920, 2019 WL 6336884, at *10 (E.D.N.Y. Sept. 30, 2019), *R&R adopted*, 2019 WL 6124479 (E.D.N.Y. Nov. 19, 2019); *see Golden Feather Smoke Shop*, 597 F.3d at 121; *accord* City Case PI Hg. Tr., Thompson Dec. Ex. 1 at 11:18-22.[28]  Likewise, under New York State law, "the traditional concept of irreparable harm, which applies to private parties seeking injunctive relief, does not apply in the public interest field." *Spitzer v. Lev*, Index No. 400989/2002, 2003 WL 21649444, at *2 (Sup. Ct. N.Y. Cty. June 5, 2003).  "Thus, when the Attorney General is authorized by statute to seek injunctive relief to enjoin fraudulent or illegal acts, no showing of irreparable harm is necessary." *Id.*; *accord People v. Apple Health & Sports Club, Ltd.*, 174 A.D.2d 438, 438-39 (1st Dep't 1991), *aff'd*, 80 N.Y.2d 803 (1992); *see also People v. Greenberg*, 27 N.Y.3d 490, 496 (2016); *accord Golden Feather Smoke Shop*, 597 F.3d at 120 ("We do not require a showing of irreparable harm for the issuance of an injunction in cases of this nature since there is a statutory sanction; instead it is enough if the statutory conditions for injunctive relief were made to appear." (quotation omitted)).  Each of the statutes providing New York's causes of action specifically authorizes such injunctive relief.  *See* N.Y. Executive Law § 63(12); N.Y. Gen. Bus. L § 898-d.  Accordingly, New York need not

---

[28] "Nor is the Government required to show that immediate harm will occur absent injunctive relief." *Smith*, 2019 WL 6336884 at *10 (citing *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 28 (2d Cir. 1972)).

demonstrate irreparable harm for the Court to enjoin Defendants' illegal shipments.[29]

B. <u>The Balance of the Equities and the Public Interest Require That Defendants' Illicit Business Practices Be Enjoined</u>

The equities favor entry of a preliminary injunction.  In this context, a federal court "must balance the equities by exploring the relative harms to applicant and respondent, as well as the interests of the public at large."  *Hartford Courant Co., LLC v. Caroll*, 986 F.3d 211, 224 (2d Cir. 2021) (quotation omitted).  Here, the harm to the State from Defendants' continued shipments would be significant, as a further influx of unfinished frames and receivers – with many of the resultant ghost guns ending up in the hands of persons who cannot legally carry firearms – will lead to significant expenditures on health and law enforcement, as well as an undermining of the rule of law.  On the other hand, Defendants face no harm at all since the State seeks limited relief, effectively enjoining them only from selling products the law already forbids them to sell.  *See* N.Y. Penal Law §§ 265.60, .61; N.Y. City Admin. Code § 10-314.

In a lawsuit brought by New York City, this court has already held that "[t]he balance of equities and the interests of justice favor issuance of a preliminary injunction."  City Case PI Order, Thompson Dec. Ex. 2 at 3.  The same is true here and then some: New York State faces harm that is greater in scope and severity as a whole than that suffered by New York City.  But it is the public's interest that most forcefully calls for an injunction, as Defendants' unfinished frames and receivers will inevitably be turned into deadly, untraceable ghost guns in the hands of persons who could not obtain a firearm legally, needlessly and substantially increasing the risk of more senseless violence.

---

[29] Moreover, even if the irreparable harm analysis were required, a preliminary injunction would be appropriate because "irreparable harm exists where, as here" there is "imminent risk to [] health, safety, and lives."  *Coronel v. Decker*, 449 F. Supp. 3d 274, 281 (S.D.N.Y. 2020); *see Ferreyra v. Decker*, No. 20 Civ. 3170, 2020 WL 2612199, at *4 (S.D.N.Y. May 22, 2020) (irreparable harm where there is "a risk of serious illness or death").

## CONCLUSION

For the reasons set forth above, together with the affirmations and exhibits submitted

herewith, New York respectfully requests that the Court enter an order, pursuant to Federal Rule

of Civil Procedure 65(a), that Defendants be restrained and enjoined from:

> a. Selling or otherwise disposing of any unfinished and/or
> unserialized frame or receiver to any individual with a billing
> address in New York State, and/or a shipping address in New York
> State; and/or

> b. Shipping, causing to ship, delivering or causing to deliver any
> unfinished and/or unserialized frame or receiver to any address
> located within New York State.

New York also requests that any security requirement be waived, and that the Court grant such

other and further relief as it deems just and proper.

Dated: New York, New York
       January 12, 2022

                    LETITIA JAMES
                    Attorney General of the State of New York


            By:
                    James M. Thompson
                    Monica Hanna
                    Special Counsel
                    Abigail Katowitz
                    Matthew Conrad
                    Assistant Attorneys General
                    28 Liberty Street
                    New York, New York 10005
                    (212) 416-6556
                    (212) 416-8227
                    james.thompson@ag.ny.gov
                    monica.hanna@ag.ny.gov
                    abigail.katowitz@ag.ny.gov
                    matthew.conrad@ag.ny.gov

# Appendix

## Shipments by Defendants to Persons Publicly Reported as Committing Crimes

| Name | Alleged Crime | Public Source | Defendants Who Shipped to Accused[30] (# of packages if >1) |
|---|---|---|---|
| Rene Loyola | Over 280 counts of firearms violations | Manhattan DA | Brownells (10) Arm or Ally Blackhawk/80 Percent Arms KM Tactical |
| Edison Cruz | Murder in Bronx bodega | New York Post | Brownells (7) Glockstore/GS Performance (2) Primary Arms (2) |
| Jonathan Santos | Over 250 counts of firearms violations | Queens DA | KM Tactical (11) Arm or Ally (5) Brownells (4) Blackhawk/80 Percent Arms (3) Primary Arms[31] |
| Brandon Glaski | Felon in possession of a firearm, possession of machinegun conversion device | US Attorney, NDNY | KM Tactical (2) Brownells Rainier Arms |
| Matthew Gerwitz | Attempted first- and second-degree murder, criminal possession of a weapon | Erie DA, Buffalo News | KM Tactical (12) Brownells (5) Glockstore/GS Performance (4) |
| David Goldberg | Multiple firearms violations | Westchester.gov | Blackhawk/80 Percent Arms (3) KM Tactical (2) Arm or Ally Glockstore/GS Performance[32] |

---

[30] This information is based on shipping records too voluminous to be directly produced as evidence. *See* Fed. R. Evid. 1006; Morales Aff. ¶ 4.  As required by the Federal Rules of Evidence, New York will make the records available to the Defendants or to the Court upon request.  The shipping records obtained by OAG are incomplete and do not cover the entire period; actual numbers of shipments may be significantly higher.

[31] The shipment to Santos from Primary Arms was sent to a different address than the others.

[32] Defendants Brownells, Glockstore/GS Performance, and KM Tactical also sent packages not reflected here to a David Goldberg at a different Westchester County address from the one specified in the press release.

| Name | Alleged Crime | Public Source | Defendants Who Shipped to Accused[30] (# of packages if >1) |
|------|---------------|---------------|------------------------------------------------------------|
| Andrew Lopez | Criminal possession of a loaded firearm | Westchester.gov | Arm or Ally Glockstore/GS Performance |
| Ricardi Kiem | 39 counts of firearms violations, endangering the welfare of a child | Queens DA | Glockstore/GS Performance (5) Primary Arms (4) Rainier Arms (2) Brownells |
| Craig Bubak | Second-degree attempted murder, attempted assault, criminal possession of a weapon | NY State Police, Olean Times-Herald | Brownells KM Tactical |
| Kurt Therkelsen | Criminal possession of a weapon | New York Post | KM Tactical (4) Blackhawk/80 Percent Arms (2) Brownells |
| Dexter Taylor | 37 counts of firearms violations | Kings DA | Brownells (28) Blackhawk/80 Percent Arms (2) |
| Chaz McMillan | 125 counts of firearms violations | Queens DA | KM Tactical (9) Rainier Arms (6) Blackhawk/80 Percent Arms (2) Brownells |
| Domingo Valle | Felon in possession of a firearm | US Attorney, SDNY | Glockstore/GS Performance (5) Blackhawk/80 Percent Arms |
| Thomas Saxton | 31 counts of firearms violations, threats to kill wife and child | Nassau DA, Forest Hills Post, New York Daily News | Blackhawk/80 Percent Arms (3) Glockstore/GS Performance Primary Arms Rainier Arms[33] |
| Kai Zhao | Multiple firearms violations, no license | Queens DA, Queens Daily Eagle | Glockstore/GS Performance (2) Blackhawk/80 Percent Arms KM Tactical |

---

[33] The packages attributed here to Mr. Saxton were addressed to N.S., a woman living at the same address.

| Name | Alleged Crime | Public Source | Defendants Who Shipped to Accused[30] (# of packages if >1) |
|---|---|---|---|
| Seongwoo Chung | Multiple firearms violations, no license | Queens DA, Queens Daily Eagle | Blackhawk/80 Percent Arms (5) Glockstore/GS Performance |
| Gregory Lopez | 12 counts of firearms violations, including possession with a criminal conviction. | Hudson Valley Post | Blackhawk/80 Percent Arms (3)Glockstore/GS Performance (2) KM Tactical (3) |
| Theodore Brois | Criminal possession of ten or more weapons | Westchester.gov | Brownells (7 packages) Primary Arms |
| Steven Salerna-Sanchez | Criminal possession of a weapon, criminal possession of a controlled substance | Erie DA, Buffalo News | Brownells |
| Joshua Gotthart | Criminal possession of a weapon | Erie DA, Buffalo News | Brownells (2) KM Tactical (2) |
| Adam DiMaggio | Unlawful possession or receipt of a firearm by a prohibited person | Westchester.gov | Blackhawk/80 Percent Arms[34] Primary Arms Rainier Arms |
| Cory Davis | Multiple firearms violations | New York Post | Glockstore/GS Performance (7) KM Tactical (3) |
| Alfred Bax | Criminal possession of a weapon | Niagara Gazette | Primary Arms (9) Blackhawk/80 Percent Arms (4) |

---

[34] The package from Blackhawk/80 Percent Arms was sent to a different person with the last name DiMaggio at the same address.

| Name | Alleged Crime | Public Source | Defendants Who Shipped to Accused[30] (# of packages if >1) |
|---|---|---|---|
| Joseph Maddaloni, Sr. | 67 counts of firearms violations | Queens DA, Forest Hills Post | Glockstore/GS Performance (3) Blackhawk/80 Percent Arms KM Tactical |