UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                           :

THE PEOPLE OF THE STATE OF NEW YORK,      :

                       Plaintiff,      :

                                 :         22-CV-6124 (JMF)

          -v-                    :

                                 :        OPINION AND ORDER

ARM OR ALLY, LLC et al.,                  :

                               :

                       Defendants.     :

                                 :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In this civil enforcement action, familiarity with which is assumed, the State of New York presses claims against nine companies that allegedly manufacture and sell "ghost guns" — that is, unfinished frames and receivers that can be converted into fully functional firearms by drilling a few holes or filing excess plastic — "directly to consumers without following any of the federal or state laws and regulations that apply to the sale of guns."  *See* ECF No. 157 ("SAC"), ¶¶ 19, 27.[1]  On February 23, 2024, this Court issued an Opinion and Order granting in part and denying in part Defendants' motions to dismiss the State's claims.  *See New York v. Arm or Ally, LLC*, No. 22-CV-6124 (JMF), 2024 WL 756474 (S.D.N.Y. Feb. 23, 2024) (ECF No. 245) ("*MTD Op.*").  As relevant here, the Court rejected Defendants' arguments that (1) they did not commit certain federal law violations that underlie the State's claims under New York Executive Law Section 63(12) and New York General Business Law Sections 349 and 350

---

[1]     The nine Defendants are Arm or Ally, LLC; Blackhawk Manufacturing Group, Inc.; Salvo Technologies, Inc.; Brownells, Inc.; GS Performance, LLC; KM Tactical; Primary Arms, LLC; Rainier Arms, LLC; and Rock Slide USA, LLC.  On March 4, 2024, the Court entered a default judgment with respect to a tenth Defendant, Indie Guns, LLC.  *See* ECF No. 250.

because unfinished frames and receivers were not "firearms" as defined in 18 U.S.C. § 921(a)(3) between June 2016 and July 2022 (the "Relevant Time Period") and (2) most of the State's claims are preempted by the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901 *et seq.  See MTD Op.*, 2024 WL 756474, at *5-13.  On March 22, 2024, Defendants filed an interlocutory appeal from the Court's PLCAA ruling, invoking the Second Circuit's appellate jurisdiction under the collateral order doctrine.  *See* ECF No. 260.  They now move, pursuant to 28 U.S.C. § 1292(b), for certification of an interlocutory appeal, focusing on the Court's rulings rejecting their arguments about the meaning of the term "firearm" under federal law and about immunity under the PLCAA.  *See* ECF No. 266.  For the reasons that follow, Defendants' motion is GRANTED.

## LEGAL STANDARDS

Section 1292(b) represents a "rare exception" to the "basic tenet of federal law" that appellate review should be delayed "until a final judgment has been entered."  *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).  A district court has discretion to certify an order for interlocutory appeal if the moving party shows that the order "(1) involves a controlling question of law"; (2) "there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 12-CV-8852 (JMF), 2014 WL 1881075, at *1 (S.D.N.Y. May 9, 2014).  When an order "satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'"  *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).  But this is not an easy bar to clear.  Because interlocutory appeals "derail

the orderly conduct of lawsuits and result in piecemeal and duplicative litigation," *S.E.C. v. Citigroup Global Mkts. Inc.*, 827 F. Supp. 2d 336, 337 (S.D.N.Y. 2011), they are to be certified only in "exceptional circumstances," *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, No. 14-MD-2589 (JMF), 2019 WL 3202745, at *1 (S.D.N.Y. July 16, 2019) (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)); *see also German ex rel. German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995) (explaining that certification of interlocutory appeals is "not intended as a vehicle to provide early review of difficult rulings in hard cases").

To satisfy the first prong of the test, the question at issue must be "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) (internal quotation marks omitted). Moreover, the question must be "controlling," meaning that "reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656 (AJN), 2015 WL 876456, at *3-4 (S.D.N.Y. Mar. 2, 2015) (Nathan, J.) (quoting *Glatt v. Fox Searchlight Pictures Inc.*, No. 11-CV-6784 (WHP), 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)).

Courts in this Circuit have found the second prong — whether there is substantial ground for difference of opinion — met where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Enron Corp.*, No. 06-CV-7828 (SAS), 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007). "A mere claim that a district court's decision was incorrect," *id.*, or "the mere presence of a disputed issue that is

a question of first impression, standing alone," *In re Flor*, 79 F.3d at 284, is insufficient.  A district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is *substantial* ground for dispute." *Id.*

Finally, courts "place particular weight" on the third prong of the test: "whether immediate appeal will materially advance the ultimate termination of the litigation." *Transp. Workers Union of Am. v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005); *see also United States v. Wells Fargo Bank, N.A.*, No. 12-CV-7257 (JMF), 2015 WL 14072740, at *1 (S.D.N.Y. Nov. 2, 2015) (describing the third prong as the "most important").  This requirement, which is "closely connected" to the first prong in practice, is met when an intermediate appeal "promises to advance the time for trial or to shorten the time required for trial." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quoting *Transp. Workers Union*, 358 F. Supp. 2d at 350)).  In evaluating this factor, "courts must consider the institutional efficiency of both the district court and the appellate court." *Wells Fargo*, 2015 WL 14072740, at *1 (quoting *Tocco v. Real Time Resolutions, Inc.*, No. 14-CV-810 (WHP), 2015 WL 5086390, at *2 (S.D.N.Y. Mar. 4, 2015)).

## DISCUSSION

Although the question is close, the Court concludes that certification is warranted with respect to whether unfinished frames and receivers qualified as "firearms" under federal law during the Relevant Time Period.  Because "the statutory procedure specifies appeal of the *order*, rather than certification of the questions," that is enough to grant Defendants' motion and the Court could in theory avoid reaching whether the PLCAA question independently warrants immediate appellate review.  *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1157 (2d

Cir. 1986) (emphasis added).  The Second Circuit, however, has observed that it is "helpful for a district court to frame the controlling questions of law that the order involves."  *Id.*  Accordingly, the Court will briefly discuss the PLCAA question as well.

**A.  Whether Defendants' Products Were "Firearms" Under Federal Law**

The question of whether Defendants' products were, during the Relevant Time Period, "firearms" under federal law is a controlling question of law and, thus, satisfies the first prong of the test.  As the State argues, and true to the posture of the case, the Court's interpretation of the statute was intertwined with its "review of the [Second Amended Complaint]'s *factual* allegations as to whether Defendants' products satisfy the federal definition."  ECF No. 267 ("State's Opp'n"), at 6 (emphasis added); *see MTD Op.*, 2024 WL 756474, at *5-9.  But because "a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes" at the motion-to-dismiss stage, *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020), the principal question presented by Defendants' motion to dismiss was whether the State's factual allegations, taken as true, described "firearms" within the meaning of federal law, *see, e.g.*, ECF No. 175, at 11 (Brownells arguing in its opening motion-to-dismiss brief that Defendants' products were not "firearms" under federal law because, "[a]s the [Second Amended Complaint] itself acknowledges, converting an unfinished frame into something that will expel a projectile requires additional parts, specialized tools to drill holes and mill parts, the knowledge of how to perform those precise actions, and time to complete the necessary steps"); ECF No. 205, at 26-28 (the State citing to the same factual allegations to show that it had sufficiently alleged that Defendants' products were "firearms" under federal law).  In other words, the Court's interpretation of Section 921(a)(3) and its assessment of the State's factual allegations were both

integral to the analysis, but they were distinct from one other.  Accordingly, the question of whether Defendants' products were "firearms" under Section 921(a)(3) is a question of law.

The question is also *controlling*.  It is true, as the State argues, that reversal of this Court's answer to the "firearms" question would not "terminate this action."  *In re A2P SMS Antitrust Litig*., 2015 WL 876456, at *3.  After all, only four of the State's seven causes of action are premised on Defendants' alleged violations of federal law.  *See* SAC ¶¶ 596-605, 618-23.  Moreover, reversal would not even extinguish those four claims, as they are also premised on alleged violations of state and local law.  *See id.*  But the first prong can be satisfied even when the question "is not the model of a 'controlling question,'" as long as reversal of the district court's opinion could "significantly affect the conduct of the action" and have "precedential value for a large number of cases."  *A2P SMS Antitrust Litig*., 2015 WL 876456, at *3; *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[T]he resolution of an issue need not necessarily terminate an action in order to be 'controlling.'"); *Atlantica Holdings*, 2014 WL 1881075, at *1 (granting certification on the basis that the question "would, at a minimum, 'importantly affect the conduct of this action'").  That is the case here.  More than half of the allegations underlying the State's claim under Executive Law Section 63(12) concern violations of federal law — which hold up only if Defendants' products were "firearms" within the meaning of Section 921(a)(3) — and its deceptive marketing claims rely in substantial part on the allegation that Defendants misrepresented federal "legal requirements applicable to their sales of guns" — which again, are relevant only if Defendants' products qualified as "firearms." *See* SAC ¶¶ 596-605, 618-23.  Furthermore, these allegations are *the* reason that this case, which was originally filed in New York state court, is in federal court; Defendants removed the case,

and the Court denied the State's motion to remand, on the ground that the question of "whether the products at issue are 'firearms' or 'component parts' thereof within the meaning of federal law" is a "substantial question of federal law." *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70, 76, 83 (S.D.N.Y. 2022) ("*Remand Op.*") (ECF No. 58).  Accordingly, reversal of the Court's holding that Defendants' products qualified as "firearms" under federal law during the Relevant Time Period would "significantly affect the conduct of the action" by removing much of the support for the State's marquee claims under New York's Executive Law and General Business Law.

Finally and briefly, while it is unclear whether the Second Circuit's intervention on this question would have "precedential value for a large number of cases" in the Circuit, *A2P SMS Antitrust Litig.*, 2015 WL 876456, at *3, there is no doubt that the question is important, *see Balintulo*, 727 F.3d at 186 (holding that a district court "should not hesitate to certify an interlocutory appeal" where, among other things, a ruling "is of special consequence").  For confirmation that these criteria are implicated here, one need not look further than the flurry of litigation surrounding the new regulation adopted by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") classifying unfinished frames and receivers as firearms under federal law and the Supreme Court's recent grant of certiorari on a nearly identical question in one of those cases.  *See Garland v. VanDerStok*, No. 23-852, 2024 WL 1706014 (S. Ct. Apr. 22, 2024) (granting certiorari to consider whether "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive" is a "firearm" or "frame or receiver" regulated under federal law, *see* Petition for Writ of Certiorari, *VanDerStok* (No. 23-852)); *see also California v. ATF*, No. 20-CV-6761 (EMC), 2024 WL 779604, at *17-20 (N.D. Cal. Feb. 26, 2024); *Polymer80, Inc. v. Garland*, No. 23-CV-

29 (RO), 2023 WL 3605430, at *5-9 (N.D. Tex. Mar. 19, 2023).  Moreover, as the Court

observed in its Opinion denying the State's motion to remand, the question of whether

unfinished frames and receivers are "firearms" under federal law has "sweeping consequences

for the regulatory flexibility of the ATF, the enforcement powers of federal prosecutors, the

scope of a state's authority to regulate these products, and the potential liability of thousands of

individuals who have acquired these products."  *Remand Op.*, 644 F. Supp. 3d at 80.

Next, although the issue is even closer, the Court concludes that there is substantial

ground for difference of opinion on the question of whether unfinished frames and receivers

were "firearms" under federal law.  The Court is unpersuaded that "there is conflicting authority

on the issue" or that "the issue is particularly difficult and of first impression for the Second

Circuit."  *In re Enron Corp.*, 2007 WL 2780394, at *1.  As discussed in the February 23, 2024

Opinion, the Court's conclusion that the State plausibly alleges that Defendants' products were

"firearms" under federal law is consistent with the plain meaning of Section 921(a)(3) and

relevant Second Circuit caselaw, most notably the holding in *United States v. Rivera*, 415 F.3d

284, 286 (2d Cir. 2005), that "an inoperable weapon falls within" the statutory definition.  *See*

*MTD Op.*, 2024 WL 756474, at *5-7.  And while Defendants point to the Fifth Circuit's contrary

ruling in *VanDerStok* as "conflicting authority," *see* ECF No. 266-1 ("Defs.' Mem."), at 5-6,

courts in this Circuit have held that "[d]isagreement among courts outside the circuit does not

alone support the certification of an interlocutory appeal," *In re Barclays Liquidity Cross & High*

*Frequency Trading Litig.*, 2019 WL 3202745, at *2 (collecting cases); *see also Falberg v.*

*Goldman Sachs Grp., Inc.*, No. 19-CR-9910 (ER), 2020 WL 7695711, at *5 (S.D.N.Y. Dec. 28,

2020) ("[A] circuit split alone does not necessitate an interlocutory appeal.").

That said, the Supreme Court's grant of certiorari in *VanDerStok* has pushed that Fifth Circuit decision into this case's (and this Circuit's) orbit, as the Supreme Court's decision will almost certainly have a large effect on this case.  Given that, and the absence of any Second Circuit case directly addressing the precise question here — that is, whether unfinished frames and receivers like Defendants' products were "firearms" under Section 921(a)(3) during the Relevant Time Period — the Court is inclined to treat the fact that the Fifth Circuit "reached the opposite conclusion" (not to mention, the disagreement even *within* the Fifth Circuit, *compare VanDerStok v. Garland*, 86 F.4th 179, 191-95 (5th Cir. 2023), *with id.* at 210-11 (Oldham, J., concurring)) as confirmation that there is a substantial ground for difference of opinion for the purposes of certifying an interlocutory appeal.  Defs.' Mem. 5.  That is true even though at least one court in this Circuit has held that "[i]t [is] imprudent to certify an issue for interlocutory appeal that will be resolved by the Supreme Court during the present Term."  *Doe v. Karadzic*, No. 93-CV-878 (PKL), 1999 WL 6360, at *4 (S.D.N.Y. Jan. 7, 1999).  In *Doe*, the question at issue had been argued in the Supreme Court one month earlier and was "thus [to] be resolved shortly."  *Id.*  That is not the case here, as the Supreme Court granted certiorari just last month, the case will not be fully briefed until late August, and the earliest that oral argument will be held is in October of this year.  *See* Docket, No. 23-852 (S. Ct. Apr. 29, 2024) (extending briefing deadlines).  In these circumstances, the Court concludes that it would be prudent to let the Second Circuit choose whether to weigh in on the novel question at hand or to await the Supreme Court's guidance in *VanDerStok*.

That leaves the third prong, whether an immediate appeal may materially advance the litigation.  A reversal of this Court's holding on the "firearms" question would almost definitely "shorten the time required for trial," as it would substantially reduce the factual predicates for the

State's most complicated claims, if not result in the case being remanded to state court.  *Capitol Records*, 972 F. Supp. 2d at 551.  At worst, an immediate appeal would make no difference to the progress of the litigation.  That is because Defendants have already appealed the Court's PLCAA ruling to the Second Circuit, invoking the Second Circuit's appellate jurisdiction under the collateral order doctrine.  *See* ECF No. 260.  The case is currently stayed on the consent of both parties during the pendency of that appeal.  *See* ECF Nos. 262, 263.  To be clear, the Court does *not* accept Defendants' argument that certification is warranted because it would "give the Court of Appeals the opportunity to . . . be assured of its own appellate jurisdiction without expending judicial resources analyzing the collateral order question for the first time."  Defs.' Mem. 9.  To hold as much would create a perverse incentive to frivolously appeal adverse rulings by invoking the collateral order doctrine, in the hopes that getting one's foot in the door would lead to it being opened wide.[2]  Instead, the Court concludes that certification is appropriate because it may materially advance this litigation by resolving an important and partially dispositive issue.

For these reasons, the Court concludes that whether Defendants' products were, during the Relevant Time Period, "firearms" under federal law is a question warranting certification of an interlocutory appeal under Section 1292(b).

---

[2]       Nor, contrary to Defendants suggestion, *see* Defs.' Mem. 9-10; ECF No. 268 ("Defs.' Reply"), at 7-8, does *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2014 WL 1881075, at *2 — in which this Court certified a question for interlocutory appeal based in part on the fact that another question in the case, involving sovereign immunity, had been appealed as of right — call for certification here.  Among other things, Defendants overlook the fact that the Second Circuit declined to accept the appeal.  *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 116-17 (2d Cir. 2016).

**B.  Whether the PLCAA Bars Some of the State's Claims for Seven of the Defendants**

As noted, the Court could stop there, as certification would allow for consideration on appeal of Defendants' argument that they are entitled to immunity under the PLCAA as well. *Banco Cafetero Panama*, 797 F.2d at 1157.  That said, the Second Circuit has noted that "it is helpful for a district court to frame the controlling questions of law that [an] order involves" even where one of the rulings in that order has already been deemed appropriate for certification.  *Id.* Accordingly, the Court will address whether certification would be independently warranted with respect to the question of "whether certain Defendants are entitled to immunity from suit under" the PLCAA "if unfinished frames or receivers are determined to be firearms" under federal law. Defs.' Mem. 1.  The Court concludes that it would not.

First, as Defendants themselves acknowledge, reversal of the Court's PLCAA ruling would not affect the claims against KM Tactical and Rock Slide USA, as these Defendants do not hold federal firearm licenses and, thus, are plainly not entitled to PLCAA immunity.  Defs.' Mem. 1 n.1; *see also* State's Opp'n 8, 15.  Thus, it is far from clear that reversal of the Court's PLCAA ruling would "materially advance the ultimate termination of the litigation." *Transp. Workers Union of Am.*, 358 F. Supp. 2d at 350.  That is, even if the Second Circuit were to reverse the Court's PLCAA ruling, the Court — and later, a jury — would have to adjudicate just as many claims and nearly as many factual and legal questions.  And while reversal could conceivably save the other seven Defendants time on discovery, courts are to consider "the institutional efficiency of [] the district court and the appellate court," not the parties' convenience.  *Wells Fargo*, 2015 WL 14072740, at *1.

Second, Defendants identify a dizzying array of subquestions on the topic of PLCAA immunity, but they fail to explain how any of them meet the criteria for certification under

Section 1292(b).  These subquestions include "whether [the Court] misread *Rehaif v. United States*, 139 S. Ct. 2191 (2019) and/or *Ruan v. United States*, 597 U.S. 450 (2022)" for the purpose of determining whether the State sufficiently alleges that Defendants knowingly violated the relevant laws; "whether statutes of general applicability can satisfy the PLCAA's predicate exception"; "whether the language of the PLCAA or [Second Circuit case law] require the violated statute to also provide the cause of action"; and what "the legal standard [is] for proximate causation required to find liability under the PLCAA's predicate exception."  Defs.' Reply 5 n.2; *see also* Defs.' Mem. 8-9 (listing "[o]ther aspects of the Court's analysis of the PLCAA" that "also present substantial grounds for differences of opinion" without explaining why they should be certified for interlocutory appeal under Section 1292(b)).  The Court need not, and will not, consider "issues adverted to in [such] a perfunctory manner, unaccompanied by some effort at developed argumentation."  *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001); *accord Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

Third, the sole aspect of the Court's PLCAA ruling to which Defendants dedicate some substantive analysis plainly fails to satisfy the criteria for certification under Section 1292(b).  Defendants contend that the PLCAA bars the State's claims under Executive Law Section 63(12) and General Business Law Sections 349, 350 and 898-c because, as a threshold matter, these claims "result[] from the criminal or unlawful use of a [firearm] by [a] person or a third party" and therefore are "qualified civil liability action[s]" within the meaning of 15 U.S.C. § 7903(5)(A).  Defs.' Mem. 6-8.  But the Court rejected that argument based on the State's fulsome factual allegations of Defendants' own "repeated or persistent illegal conduct" rather than on any interpretation or analysis of the PLCAA.  *See MTD Op.*, 2024 WL 756474, at *10, *12; *see also* SAC ¶¶ 599, 604, 620, 623.  Thus, that aspect of the Court's ruling involves no

question of law, let alone one that is controlling or about which there is substantial ground for difference of opinion.

Defendants' arguments fail to persuade the Court otherwise.  To begin, Defendants' invocation of a decision from the District of New Jersey as evidence of a "substantial difference in opinion" is downright puzzling.  *See* Defs.' Mem. 6 (citing *National Shooting Sports Foundation v. Platkin*, No. 22-CV-6646 (ZNQ), 2023 WL 1380388, at *5-7 (D.N.J. Jan. 31, 2023) ("*NSSF*")).  For starters, Defendants' briefing does not clarify which aspect of the Court's PLCAA ruling that decision purportedly contradicts.  The cited portion of *NSSF* primarily concerns whether the New Jersey public nuisance law aimed at the firearms industry falls into the PLCAA's "predicate exception"; in reaching an answer in the negative, the court emphasized that the law "would subject [the firearms industry] to civil liability for the harm *solely caused* by the criminal or unlawful misuse of firearm or ammunition products by others."  *NSSF*, 2023 WL 1380388, at *7 (emphasis added).  Whatever the case, *NSSF* is entirely consistent with both of this Court's parallel rulings that (1) the PLCAA does not bar the State's claim under General Business Law Section 898-c because it does not seek liability "for the harm *solely* caused" by the illegal misuse of firearms by third parties, 15 U.S.C. § 7901(b)(1), and (2) General Business Law Section 898-c is a qualifying predicate law under Section 7903(5)(A)(iii).  *MTD Op.*, 2024 WL 756474, at *12.[3]  Indeed, Defendants do not even try to argue that General Business Law Section 898-c suffers from the same defects as New Jersey's public nuisance law.  The mere fact that

---

[3]     In fact, Defendants did not even dispute the second of these two rulings in their motion-to-dismiss briefing.  *See MTD Op.*, 2024 WL 756474, at *12 (noting that Defendants did "not dispute that General Business Law Section 898-c is a state statute that expressly regulates firearms" (cleaned up)).

another district court enjoined a different public nuisance law aimed at the firearms industry does not automatically make that opinion contrary to the Court's February 23, 2024 Opinion.

Nor does *Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 543-44 (D. Ariz. 2021), upon which Defendants also rely, affect the Court's Section 1292(b) analysis or conclusion. Defendants are correct that *Travieso* contradicts the Court's ruling that the PLCAA does not preempt the State's claim under General Business Law Section 898-c "even though the State's theory as to that claim involves 'the criminal or unlawful misuse' of firearms by third parties." *MTD Op.*, 2024 WL 756474, at *12; *see Travieso*, 526 F. Supp. 3d at 543 (rejecting the plaintiff's argument that the PLCAA prohibits only those actions seeking liability for "harm *solely caused*" by third parties, explaining that such a "construction . . . renders the predicate exception entirely superfluous").  But as the Court explained above, "[d]isagreement among courts outside the circuit does not alone support the certification of an interlocutory appeal." *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 2019 WL 3202745, at *2.  And in any case, the *Travieso* court's position is contradicted by the text of the PLCAA, which states that the PLCAA was enacted "[t]o prohibit causes of action against [members of the firearms industry] for the harm *solely* caused by the criminal or unlawful misuse of firearm products . . . by others."  15 U.S.C. § 7901(b)(1) (emphasis added).  Thus "the strength of the arguments in opposition to the challenged ruling" does not suggest that "the issue for appeal is truly one on which there is *substantial* ground for dispute."  *In re Flor*, 79 F.3d at 284.

In short, the Court concludes that certification would *not* independently be warranted for the PLCAA ruling in the Court's February 23, 2024 Order, although the Second Circuit would have jurisdiction to review that ruling if it accepts the Court's conclusion that interlocutory appeal is appropriate with respect to the "firearms" question.

**CONCLUSION**

In light of the foregoing, Defendants' motion to certify an interlocutory appeal is

GRANTED.  The Clerk of Court is directed to terminate ECF No. 266.


      SO ORDERED.

Date:  May 20, 2024
      New York, New York

                             JESSE M. FURMAN
                           United States District Judge