**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>    Plaintiff,<br><br>    v.<br><br>ARM OR ALLY, LLC; BLACKHAWK MANUFACTURING GROUP, INC., A/K/A 80 PERCENT ARMS, INC. OR 80 PERCENT ARMS; SALVO TECHNOLOGIES, INC., A/K/A 80P BUILDER OR 80P FREEDOM CO.; BROWNELLS, INC., A/K/A BROWNELLS OR BOB BROWNELL'S; GS PERFORMANCE, LLC, A/K/A GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM TACTICAL; PRIMARY ARMS, LLC; RAINIER ARMS, LLC; AND ROCK SLIDE USA, LLC,<br><br>    Defendants. | Case No. 22-cv-06124 (JMF) |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

David H. Thompson\*
Brian W. Barnes\*
Athanasia O. Livas\*
**COOPER & KIRK PLLC**
1523 New Hampshire Ave., NW
Washington, DC 20036
Phone: (202) 220-9600
\* Admitted *pro hac vice*

*Attorneys for Defendants Brownells, Inc., a/k/a Brownells or Bob Brownell's, Salvo Technologies, Inc., a/k/a 80p Builder or 80p Freedom Co., Primary Arms, LLC, and Rock Slide USA, LLC*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................3

    I.      Factual Background ..............................................................................................3

    II.     Statutory and Regulatory Background ..........................................................................4

        A.      The Gun Control Act and the ATF's Rules .............................................................4

        B.      The Protection of Lawful Commerce in Arms Act ...................................................6

    III.    Procedural History ...............................................................................................6

ARGUMENT ....................................................................................................................8

    I.      The State Has Not Plausibly Alleged that Defendants' Unfinished Frames or
           Receivers Are "Firearms" Under Federal Law. ........................................................8

    II.     Even If Unfinished Frames or Receivers Were Firearms, the PLCAA Guarantees
           Most Defendants Immunity from Suit. ..................................................................10

        A.      The Clear Text and Stated Purposes of the PLCAA Foreclose the State's
              Lawsuit. ....................................................................................................10

        B.      The State Cannot Invoke the PLCAA's Predicate Exception. ...............................14

            1.      The State's Claims Based on Statutes of General Applicability Cannot
                   Satisfy the Predicate Exception. ...................................................................15

            2.      Even if the State Could Otherwise Satisfy the Predicate Exception, the
                   State Has Not Established Proximate Causation. ...........................................17

    III.    The Fair Notice Issues of *VanDerStok* Are Even Further Heightened Here. .............18

CONCLUSION ................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Bondi v. VanDerStok*,
    604 U.S. 458 (2025)...................................................................1, 3, 5, 6, 8, 9, 18, 19, 20

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008)..........................................................................11, 12, 14, 16

*District of Columbia v. Beretta U.S.A. Corp.*,
    940 A.2d 163 (D.C. Ct. App. 2008)...............................................................................18

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
    91 F.4th 511 (1st Cir. 2024)......................................................................................2, 17

*Gun Owners of Am., Inc. v. Garland*,
    19 F.4th 890 (6th Cir. 2021) ..........................................................................................5

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) ................................................................................11, 17

*Podpeskar v. Dannon Co.*,
    No. 16-cv-8478-KBF, 2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017)..............................18

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025)..........................................................1, 2, 11, 12, 13, 15, 17

*VanDerStok v. Garland*,
    625 F. Supp. 3d 570 (N.D. Tex. 2022) ...........................................................................5

*VanDerStok v. Garland*,
    No. 4:22-CV-00691-O, 2022 WL 6081194 (N.D. Tex. Sep. 26, 2022) ...........................5

*VanDerStok v. Garland*,
    86 F.4th 179 (5th Cir. 2023) ..................................................................................3, 4, 5

## Statutes, Codes, and Legislative Materials

15 U.S.C.
        § 7901(a)(3) ...............................................................................................................6
        § 7901(a)(4) ...............................................................................................................6
        § 7901(a)(5) ...............................................................................................................6
        § 7901(a)(6) .................................................................................................10, 13, 14
        § 7901(a)(8) .......................................................................................................10, 13
        § 7902.........................................................................................................................6
        § 7902(a) ..................................................................................................................10
        § 7903(5)(A) .................................................................................6, 10, 11, 12, 13
        §§ 7903(5)(A)(i)–(vi).............................................................................................11
        § 7903(5)(A)(ii) ......................................................................................................11
        § 7903(5)(A)(iii) .............................................................................................6, 14, 16

18 U.S.C.
    § 921, *et seq.* ................................................................................................................4
    § 921(a)(3) ...................................................................................................................4
    § 921(a)(3)(B) .............................................................................................................8
    § 922(t) ........................................................................................................................4
    § 923(a) .......................................................................................................................4
    § 923(g)(1)(A) ............................................................................................................4
    § 923(i) ........................................................................................................................4

27 C.F.R. § 478.12(c) ...............................................................................................................5

N.Y. Exec. Law § 63(12) .....................................................................................................7, 15

New York General Business Law
    § 349 ..........................................................................................................................15
    § 350 ..........................................................................................................................16

*Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652
    (Apr. 26, 2022) (to be codified at 27 C.F.R. pts. 447, 478–79) ..........................................3

*Internal Revenue Serv., Dep't of the Treasury*, 33 Fed. Reg. 18555 (Dec. 14, 1968)
    (to be codified at 26 C.F.R. pt. 178) .................................................................................5

Protection of Lawful Commerce in Arms Act, Pub. L. No. 109-92, 119 Stat. 2095 (2005) .........10

S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112 .............................................4

S. Res. 397, 109th Cong., 151 Cong. Rec. S9087-01 (2005) ........................................................11

**Other Authorities**

Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*,
    54 St. Mary's L.J. 35 (2023) ...............................................................................................3

**INTRODUCTION**

In this suit, the State of New York attempts what Congress and now the Supreme Court have said it cannot do: impose massive retroactive civil liability on private members of the firearm industry for alleged societal harms caused by unrelated third parties. To make matters more attenuated, it was not Defendants' products themselves, but firearms built by third parties using Defendants' products, that caused the alleged harm. Although the State makes little effort to plead facts alleging particular products as to particular Defendants, the State's general focus is on products that may ultimately become a firearm's frame or receiver, made of metal or plastic and incapable of firing or explosion. These items had long been declared not to be firearms by the chief federal agency regulating firearms.

Undeterred, the State turned to the courts in an effort to hold Defendants, private companies, responsible for the State's alleged "public health and safety crisis caused by gun violence." Second Am. Compl. ¶ 1, Doc. 157 (Mar. 13, 2023) ("SAC"). As recent Supreme Court caselaw now makes clear, this adventuresome effort is foreclosed by two different statutory commands.[1]

*First*, the Protection of Lawful Commerce in Arms Act ("PLCAA"), as recently reaffirmed by the Supreme Court, bars the State's suit. Before 2005, America's firearm industry faced a tidal wave of public nuisance lawsuits in which plaintiffs asked the courts to use their common lawmaking power to regulate the industry. Congress saw the myriad problems with these suits and took decisive legislative action to stop them. In 2005, Congress enacted the PLCAA, which

---

[1] Consistent with the Court's instructions, *see* Order, Doc. 286 (Apr. 30, 2026), Defendants submit this joint motion focusing only on the effect of the Supreme Court's recent decisions in *Bondi v. VanDerStok*, 604 U.S. 458 (2025) and *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025). Defendants preserve for further proceedings the right to raise any additional arguments beyond the scope of the Court's limiting instructions for this motion.

conferred broad immunity from suit for any claims against the firearms industry for the unlawful misuse of its products. Congress drew a few narrow exceptions, including the predicate exception, which the State tries unsuccessfully to invoke. The State has brought the very type of suit that Congress expressly foreclosed, and several Defendants are immune. The Supreme Court in *Smith & Wesson Brands, Inc.*, 605 U.S. 280, reaffirmed the PLCAA's broad protections. There, the Supreme Court reversed the First Circuit decision on which this Court's earlier motion to dismiss opinion principally relied. *See* Op. & Order at 27–29, Doc. 245 (Feb. 23, 2024) ("Initial MTD Op.") (citing *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511 (1st Cir. 2024)); *Smith & Wesson*, 605 U.S. at 299 (reversing and remanding). And were there any lingering doubt that the PLCAA applies to the alleged products at issue, the Supreme Court in *VanDerStok* resolved it by establishing that some so-called parts kits are "firearms" under federal law.

*Second*, the State bases its suit on a reading of the Gun Control Act ("GCA") that its factual allegations cannot bear. The Supreme Court in *VanDerStok* made clear that *some* weapons parts kits of the kind the State describes *could* be properly defined as firearms under the GCA. But *VanDerStok* rejected the kind of facial reasoning that would render *all* weapons parts kits either firearms or not firearms. Rather, a product-by-product inquiry is required. And the State has failed to even attempt that showing, relying on sweeping generalizations rather than alleged facts.

Because the PLCAA immunizes several Defendants and the State has failed to plausibly allege that particular products of Defendants were firearms subject to the GCA, the motion to dismiss should be granted.

2

## BACKGROUND

### I.    Factual Background

Unfinished frames or receivers are component parts that, when a gunsmith further machines and combines with other parts, can constitute a functioning frame or receiver and eventually, a working firearm. *See* SAC ¶¶ 20–21. Privately manufactured firearms, known by some as "ghost guns," are often made from these component "firearm parts kits, standalone frame or receiver parts, and easy-to-complete frames or receivers." *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652, 24652 (Apr. 26, 2022) (to be codified at 27 C.F.R. pts. 447, 478–79).

Private gunsmithing holds a storied place in American history. "Because gunsmithing was a universal need in early America, many early Americans who were professionals in other occupations engaged in gunsmithing as an additional occupation or hobby." Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 St. Mary's L.J. 35, 66 (2023). Indeed, "[t]he tradition of at-home gun-making predates this nation's founding, extends through the revolution, and reaches modern times." *VanDerStok v. Garland*, 86 F.4th 179, 185 (5th Cir. 2023), *reversed and remanded sub nom. Bondi v. VanDerStok,* 604 U.S. 458; *see also* Greenlee, *supra*, at 48 ("During the Revolutionary War, when the British attempted to prevent the Americans from acquiring firearms and ammunition, the Americans needed to build their own arms to survive.").

"The federal government has never required a license to build a firearm for personal use." Greenlee, *supra*, at 80. "In fact, there were *no* restrictions on the manufacture of arms for personal use in America during the seventeenth, eighteenth, or nineteenth centuries." *Id*. at 78. Because these kits and standalone parts were not considered "firearms" under any reasonable interpretation of the relevant statute's definitions, "manufacturers of such kits are neither subject to licensing

requirements nor required to conduct background checks on purchasers." *VanDerStok*, 86 F.4th at

185. And "Congress made it exceedingly clear when enacting" the Gun Control Act, the statute

that defines and regulates firearms, "that 'this title is not intended to discourage or eliminate the

private ownership or use of firearms by law-abiding citizens for lawful purposes.'" *Id.* (quoting

Act to Amend Title 18 of the U.S. Code, Pub. L. No. 90-618, § 101, 82 Stat. 1213, 1213 (1968)).

## II.    Statutory and Regulatory Background

### A. The Gun Control Act and the ATF's Rules

The Gun Control Act of 1968 ("GCA") provides the structure by which "firearms" are

defined, taxed, and regulated in the United States. *See VanDerStok*, 86 F.4th at 183. The GCA

requires manufacturers and dealers of firearms to have a federal firearms license; such

manufacturers are known as "FFLs." When they sell or transfer "firearms," FFLs are generally

required to conduct background checks, record the transfer, and serialize the firearm. *See* 18 U.S.C.

§§ 922(t), 923(a), 923(g)(1)(A), 923(i).

The GCA establishes a four-part definition of what constitutes a "firearm." *See id*. § 921,

*et seq.* As defined in the Gun Control Act, and as it has stood unamended since 1968,

> The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

*Id*. § 921(a)(3). This definition superseded the earlier Federal Firearms Act definition, in which

"any part or parts of such a weapon [we]re included." S. REP. NO. 90-1097 (1968), *reprinted in*

1968 U.S.C.C.A.N. 2112, 2200.

4

The Attorney General has delegated to the ATF the power "to administer, enforce, and exercise the functions and powers of the Attorney General" under the Gun Control Act. *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 897 (6th Cir. 2021).

ATF in turn established a definition for "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." *Internal Revenue Serv., Dep't of the Treasury*, 33 Fed. Reg. 18555, 18558 (Dec. 14, 1968) (to be codified at 26 C.F.R. pt. 178).

This definition prevailed for around half a century, until 2022. In August 2022, however, ATF expanded its definition to "include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a . . . receiver." 27 C.F.R. § 478.12(c).

ATF's new definition was challenged as exceeding ATF's authority and the plain text of the GCA. A district court, analyzing whether ATF's expansion to include unfinished frames or receivers as "firearms" could be reconciled with the statutory text, enjoined the new rule. *VanDerStok v. Garland*, 625 F. Supp. 3d 570, 578 (N.D. Tex. 2022), *op. clarified*, No. 4:22-CV-00691-O, 2022 WL 6081194 (N.D. Tex. Sep. 26, 2022) ("The Final Rule's redefinition of 'frame or receiver' conflicts with the statute's plain meaning."). The Fifth Circuit agreed, analyzing the GCA's text and holding that ATF's effort to define unfinished frames or receivers and unfinished parts kits as "firearms" cannot be squared with the statute's text. *VanDerStok*, 86 F.4th at 182.

The Supreme Court granted certiorari and held that ATF's rule was not *facially* inconsistent with the Gun Control Act, reasoning that some unfinished frames or receivers *may* be properly classified as firearms. The Court rejected what it construed to be a facial challenge because, in its view, the GCA reaches "at least some kits," *VanDerStok*, 604 U.S. at 468, and "at least some

5

'partially complete' frames or receivers," *id.* at 477. The Court did not resolve the question for all relevant products and explicitly rejected such "facial" reasoning. *Id.* at 459 ("While other products may be so far from finished that they cannot fairly be described as frames or receivers, the facial challenge fails because the statute plainly reaches some partially complete items.").

## B.  The Protection of Lawful Commerce in Arms Act

Congress passed the PLCAA in 2005 to address the problem of lawsuits brought by plaintiffs and state entities against America's firearms industry for harms resulting from the criminal misuse of legal products. 15 U.S.C. § 7901(a)(3).

Congress declared that law-abiding firearm companies cannot be held "liable for the harm caused by those who criminally or unlawfully misuse firearm products." *Id*. § 7901(a)(5). Congress reasoned that if a company complies with the "heav[y]" array of regulations governing the firearms industry, *id*. § 7901(a)(4), it should not also be held liable in a "civil action" for injuries "resulting from the criminal or unlawful misuse" of legal products, *id*. § 7903(5)(A).

The PLCAA establishes complete statutory immunity from suit. Where the PLCAA applies, no covered action may be "brought" in "any Federal or State court." *Id*. § 7902. The PLCAA also includes, as relevant here, one narrow exception to its broad grant of immunity. What is often called the PLCAA's "predicate exception" permits suit only when a company "knowingly" violates a state or federal firearms law, *and* that violation "was a proximate cause" of whatever harm the suit alleges. *Id*. § 7903(5)(A)(iii).

## III.    Procedural History

The Attorney General of New York sued ten companies that allegedly manufactured or sold component parts of frames or receivers that, through the effort of an individual gunsmith, could later be converted into a frame or receiver and eventually a working firearm.

6

The State brought several civil-enforcement and tort claims under New York law that generally fit into four buckets. First, the State asserted causes of action under New York Executive Law Section 63(12), which permit the Attorney General to sue "any person [who] shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business." N.Y. EXEC. LAW § 63(12). Second, the State asserted causes of action under Section 63(12) and New York General Business Law Sections 349 and 350 to allege that Defendants misrepresented their products as "legal." SAC ¶¶ 601–05, 618–23. Third, the State claimed that "gun industry member[s]" created a "public nuisance" under New York General Business Law § 898 and should jointly and severally "endow[] . . . an abatement fund that will allow the State to eliminate the public nuisance." *Id.* ¶¶ 4, 606–17. And finally, the State brought claims pursuant to the common-law doctrines of negligence per se and negligent entrustment. *Id.* ¶¶ 624–34.

Nine of the ten Defendants moved to dismiss.[2] Several Defendants argued that they were entitled to immunity from suit under the PLCAA. Defendants also made other arguments on the merits, including that unfinished frames or receivers do not qualify as "firearms" under the relevant statutory and regulatory framework. This Court in large part denied Defendants' motion to dismiss, rejecting PLCAA immunity and finding that some of the products described in the complaint are "firearms" under federal law. This Court also denied several Defendants' motion to sever. *See* Initial MTD Op. at 48–49. However, it dismissed the State's negligence per se claim. *Id.* at 50. Following that order, at the parties' request, this Court stayed proceedings while Defendants pursued an expedited interlocutory appeal. *See* Joint Ltr., Doc. 262 (Mar. 25, 2024). The parties

---

[2] The last Defendant, Indie Guns, was subject to default judgment. *See* Default Judgment at 2–5, Doc. 250 (Mar. 4, 2024).

also agreed to an expedited briefing schedule for Defendants' motion to certify an immediate appeal under 28 U.S.C. § 1292(b). *Id.*

On March 22, 2024, Defendants filed an interlocutory appeal pursuant to the collateral-order doctrine for the denial of PLCAA immunity. On May 20, 2024, this Court granted Defendants' motion to certify an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), *see* Op. & Order at 2, Doc. 269 (May 20, 2024), and Defendants accordingly filed a petition for permission to appeal with the Second Circuit. On June 20, 2024, the Second Circuit deferred consideration of the petition, referred it to the panel considering Defendants' already-pending interlocutory appeal, and consolidated the appeals. On October 3, 2024, after oral argument, the Second Circuit held the appeals in abeyance pending the Supreme Court's decision in *VanDerStok*, 604 U.S. 458, which was issued on March 26, 2025. In a summary order issued on February 26, 2026, the Second Circuit remanded for further proceedings in this Court in light of the Supreme Court's intervening guidance in *VanDerStok* and *Smith & Wesson*. After a status conference, this Court directed the Defendants to file a motion limited to the effects of this intervening precedent.

## **ARGUMENT**

### I.    **The State Has Not Plausibly Alleged that Defendants' Unfinished Frames or Receivers Are "Firearms" Under Federal Law.**

Even if this Court were to find that Defendants are not entitled to immunity, discussed *infra*, dismissal of the State's claims would be proper.

The State alleges that Defendants violated federal law by selling unfinished parts of frames and receivers into New York State. The basis for the State's theory is that the unfinished frames and receivers that Defendants sold were "firearms," as defined in the Gun Control Act, 18 U.S.C. § 921(a)(3)(B), and therefore subject to regulation.

8

The problem with that theory is it lacks adequate factual allegations supporting it, as required by *VanDerStok*'s product-by-product framework. As an initial matter, the complaint lumps all Defendants together and makes general allegations about them collectively. Although the Complaint is devoid of any allegations of a connection between the Defendants, the State attempts to attribute actions of one Defendant to each and every Defendant. This is a blatant pleading deficiency.

Even putting that critical error aside, *VanDerStok* makes clear that the State cannot rely on generalizations or facial reasoning as to an entire class of products. Indeed, the Court specifically rejected what it construed as a facial challenge as to all potential products of this nature, recognizing the vast spectrum of what may be called weapons part kits or unfinished frames or receivers and choosing instead to focus the inquiry on whether particular products are sufficiently "finished" to constitute a firearm under federal law. *See VanDerStok*, 604 U.S. at 459 ("While other products may be so far from finished that they cannot fairly be described as frames or receivers, the facial challenge fails because the statute plainly reaches *some* partially complete items." (emphasis added)); *see also id.* at 513 (Alito, J., dissenting) ("The Court points to a gun kit that is all-but-assembled and a frame that is as close to completion as possible. As applied to those extreme situations, the Court holds—and I agree—the rule does not deviate from the statute." (citations omitted)).

It is the State's burden to plead facts, not the Defendants' burden to rebut unknown allegations. And the State needs more than generalized allegations divorced from any analysis of particular Defendants' particular products.

9

II.    **Even If Unfinished Frames or Receivers Were Firearms, the PLCAA Guarantees Most Defendants Immunity from Suit.**

Even if this Court were to hold that the State's generalized allegations that all unfinished frames or receivers are "firearms" suffice despite *VanDerStok*'s instruction for a particularized, product-by-product analysis, dismissal of the State's remaining claims would nevertheless be proper because the PLCAA's broad grant of immunity applies to several Defendants here.

A.    **The Clear Text and Stated Purposes of the PLCAA Foreclose the State's Lawsuit.**

The PLCAA was enacted to "prohibit civil liability actions from being brought or continued against manufacturers, distributors, dealers, or importers of firearms or ammunition for damages, injunctive or other relief resulting from the misuse of their products by others." *See* Protection of Lawful Commerce in Arms Act, Pub. L. No. 109-92, 119 Stat. 2095, 2095 (2005).

In addition to this broadly stated grant of immunity, Congress specified its purposes in passing the PLCAA. The Act is intended to foreclose the "possibility of imposing liability on an entire industry for harm that is solely caused by others," as such a suit is "an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, [and] invites the disassembly and destabilization of other industries." 15 U.S.C. § 7901(a)(6). Congress also expressed concern about the "Federal Government, States, municipalities, private interest groups and others attempt[ing] to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce." *Id.* § 7901(a)(8). Such suits, the statute says, risk "threatening the Separation of Powers [] and weakening and undermining important principles of federalism." *Id.*

The PLCAA's principal substantive provision states: "A qualified civil liability action may not be brought in any Federal or State court." *Id.* § 7902(a). A "qualified civil liability action," in turn, is any "civil action . . . brought by any person against a manufacturer or seller of a qualified

10

product . . . for damages . . . or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." *Id.* § 7903(5)(A).

The PLCAA provides a few limited exceptions from its express prohibition on qualified civil liability actions. *See id.* § 7903(5)(A)(i)–(vi). These exceptions are narrowly drawn and demonstrate that "Congress clearly intended to preempt common-law claims, such as general tort theories of liability." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009). In particular, the exception found in § 7903(5)(A)(ii) illuminates Congress's intent to prohibit general negligence claims. The *only* permissible claims predicated on negligence are for "negligent entrustment or negligence per se[.]" 15 U.S.C. § 7903(5)(A)(ii). Congress's express inclusion of this exception reveals that it directly considered whether tort and negligence claims should survive enactment of the PLCAA and concluded that only these two named forms of negligence can proceed. This is confirmed by the Act's legislative history, which reveals that Congress expressly rejected calls to add an exception in the PLCAA for "gross negligence or recklessness" because doing so would have "effectively 'gut[ted]' the Act." *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403–04 (2d Cir. 2008) (quoting *Ileto v. Glock, Inc.*, 421 F. Supp. 2d 1274, 1294 (C.D. Cal. 2006)); *see also* S. Res. 397, 109th Cong., 151 Cong. Rec. S9087-01, S9374-01 (2005).

The Supreme Court recently reaffirmed the PLCAA's broad protections. *First*, the Court explained that the PLCAA precludes suits seeking to hold gun manufacturers liable for "downstream harms resulting from misuse of their products." *Smith & Wesson*, 605 U.S. at 298. The State's action falls squarely within this category. *See* SAC ¶ 1, p. 17 (admitting that the suit attempts to "fix[]" the State's "public health and safety crisis caused by gun violence"). Notably, although Mexico's suit in *Smith & Wesson* also included allegations of upstream misconduct by gun manufacturers themselves, the Supreme Court nevertheless described it as "closely

11

resembl[ing] the ones Congress had in mind"—it sought to hold manufacturers liable for "the harm caused by those who criminally or unlawfully use firearms." *Smith & Wesson*, 605 U.S. at 299 (cleaned up). Thus, the Supreme Court's reasoning forecloses the conclusion that the PLCAA bars only those suits that "solely" allege third-party misconduct. *Compare* Initial MTD Op. at 24–25.

*Second*, the Supreme Court unanimously declined to adopt a "capacious" reading of the predicate exception that "would swallow most of the rule," underscoring that statutory exceptions must be interpreted narrowly. *Smith & Wesson*, 605 U.S. at 299. The predicate exception requires a plausible allegation that the gun manufacturer committed or aided and abetted a "gun-sale violation," *id.* at 286, a "violation[] of gun laws," *id*. at 288, or a "firearms violation[]," *id*. In other words, "applicable" in the predicate exception refers to statutes specifically regulating the firearms industry—not statutes of general applicability. The State's argument that any state law capable of being applied to the firearms industry is a predicate law would "swallow most of the rule." *See id.* at 299; *see also Beretta*, 524 F.3d at 403. In sum, the Supreme Court strongly reaffirmed that the PLCAA bars suits for downstream harm from the firearms industry's products.

Applying Congress's instructions and this binding Supreme Court precedent, the face of the Complaint makes evident that the State's claims are prohibited "qualified civil liability action[s]" under the PLCAA. *See* 15 U.S.C. § 7903(5)(A). The State has admitted that the products sold at issue are "qualified product[s]" under the PLCAA. *See* Mem. of Law in Supp. of the N.Y. State Att'y Gen's. Mot. for Remand at 2, 13–14, Doc. 43 (Aug. 17, 2022). And the State's claims are predicated upon the underlying alleged wrongdoing of the *purchasers* of the products—*i.e.*, by impermissible possession or use of the products. Indeed, the complaint expressly recounts in detail facts concerning the individual purchasers, including facts about the purchasers who were "indicted and pled guilty" to crimes. Am. Compl. ¶ 227, Doc. 72 (Dec. 22, 2022); *see id.* ¶¶ 231,

235–39, 241, 245–46, 249, 252–54, 256, 259–62, 265, 269–70, 274, 277–78, 282–85. Accordingly, the complaint seeks damages from Defendants "resulting from the criminal or unlawful misuse" of their products. *See* 15 U.S.C. § 7903(5)(A). Further, the State is not shy about its intent to use this lawsuit to achieve legislative goals, which is precisely the end-run around separation-of-powers principles that the PLCAA was intended to prevent. The Amended Complaint asserts that the underlying goal of this lawsuit is "to fix this avoidable crisis." *See* Am. Compl. at p. 80; *see also id.* ¶¶ 451, 461–463. The PLCAA was intended to prevent States from "circumvent[ing] the Legislative branch of government" and "undermining important principles of federalism." 15 U.S.C. § 7901(a)(8).

Further, the Supreme Court's analysis in *Smith & Wesson* forecloses this Court's earlier reasoning that PLCAA immunity applies only where a plaintiff seeks to hold parties covered by the PLCAA liable for conduct committed "*solely*" by third parties and not where any conduct by the Defendants is alleged. *See* Initial MTD Op. at 24–25 (upholding the State's claims under New York Executive Law section 63(12) and New York General Business Law sections 349 and 350 on this basis). This Court found Defendants' arguments could be "easily rejected" by pointing to conduct that the State alleged Defendants took themselves—selling, transporting, and marketing the products. *Id.* But the same was true in *Smith & Wesson*, where Mexico's suit likewise included allegations of upstream misconduct by gun manufacturers themselves, *see Smith & Wesson*, 605 U.S. at 294–98; *see also id.* at 297 (discussing alleged "design and marketing decisions"), yet the Supreme Court did not deny PLCAA immunity on this basis.

In its earlier opinion, this Court cited the statute's provision explaining its purposes. *See* Initial MTD Op. at 24, 30. But even there, Congress only expressed concern that "[*t*]*he possibility* of imposing liability on an entire industry for harm that is *solely* caused by others is an abuse of

the legal system." 15 U.S.C. § 7901(a)(6) (emphasis added). In other words, imposing liability for harm "solely" caused by third parties is one extreme, imaginable case that could arise *without* the PLCAA's protections. It does not follow that the PLCAA, by reference to this extreme situation the statute seeks to foreclose, somehow implicitly limited its reach only to such extreme cases. And, importantly, that categorical reasoning cannot be squared with the way the Supreme Court approached allegations of upstream conduct by the manufacturer in *Smith & Wesson*. This makes sense, as it would be the rare case where a plaintiff did not allege *any* conduct—not even the selling of products—by the named Defendants.

In sum, as recently reaffirmed by the Supreme Court, Congress's broad protections may not be unduly narrowed, and the broad statutory protection applies here.

### B.    The State Cannot Invoke the PLCAA's Predicate Exception.

The predicate exception to the PLCAA only exempts from immunity "an action in which a . . . seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." *Id.* § 7903(5)(A)(iii); *see Beretta*, 524 F.3d at 389–90. The predicate exception contains three requirements: (1) there must be an alleged violation of a predicate State or Federal statute applicable to the sale or marketing of a qualified product (a firearm), (2) the Defendants must have "knowingly violated" that statute, and (3) that violation must be a "proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii); *see generally Beretta*, 524 F.3d at 390.

None of these requirements is satisfied, and so each provides an independent basis on which the State's claims must be dismissed under the PLCAA.

1.  **The State's Claims Based on Statutes of General Applicability Cannot Satisfy the Predicate Exception.**

The State's claims fail to meet the predicate exception's first requirement because the State's claims of illegal conduct and misrepresentation are based upon statutes of general applicability, not statutes regulating firearms.

In *Smith & Wesson*, the Supreme Court made clear that the predicate exception must be read narrowly and cannot "swallow most of the rule." 605 U.S. at 299. Rather, to succeed in invoking the exception, a plaintiff must plausibly allege that a gun manufacturer committed or aided and abetted a "gun-sale violation," *id.* at 286, a "violation[] of gun laws," *id.* at 288, or a "firearms violation[]," *id.* In this way, the predicate exception's limitation to "applicable" laws refers to those specifically regulating the firearms industry—not statutes of general applicability.

Here, by contrast, the State is attempting to shoehorn its claims under statutes of general applicability—Executive Law § 63(12) and two provisions of New York's General Business Law—in an obvious end-run around the PLCAA. Counts One, Two, Three, Seven, Eight, and Eleven are all brought under New York Executive Law § 63(12), which provides the exclusive basis and vehicle for the State's requested relief on those counts. *See* Am. Compl. ¶¶ 466, 469, 472, 478, 481, 486, 506, 509, 511, 517, 528, 537 & Prayer for Relief at pp. 95–96, ¶¶ 1–2.

Executive Law § 63(12) provides, "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality . . . the attorney general may apply . . . for an order enjoining the continuance of such . . . fraudulent or illegal acts [and] directing restitution and damages." N.Y. EXEC. LAW § 63(12). New York General Business Law § 349 provides that "[d]eceptive . . . acts or practices in the conduct of *any* business, trade or commerce . . . are hereby declared unlawful." (emphasis added). And similarly, General Business

15

Law § 350 provides that *any* "[f]alse advertising in the conduct of *any* business, trade or commerce . . . is hereby declared unlawful." (emphasis added).

These statutes cannot meet the test for statutes directed toward firearm manufacturers or sellers. Each statute, by its terms, applies generally to "any person" or "any business." The express application to "any person" or "any business" categorically renders the statutes ones of "general applicability," not statutes directed toward firearms manufacturers or sellers. Indeed, the two General Business Law statutes are specifically entitled *general*.

This Court acknowledged that "Executive Law Section 63(12) itself does not fall comfortably within any of [the statute's] buckets." Initial MTD Op. at 25. But it nevertheless accepted the State's novel "nesting" theory of liability by which it asserts a cause of action or claim for relief under a statute of general applicability and then piggybacks on the general cause of action with allegations related to statutes regulating firearms. The Court reasoned that "Executive Law Section 63(12) is not the relevant law for purposes of the predicate exception, as it merely provides the vehicle by which the State alleges violations of state or federal laws regulating firearms." *Id.*

But the "vehicle by which the State alleges violations of state or federal law" is the key inquiry, not a threshold to be easily bypassed. The PLCAA exempts "*an action* in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). Thus, the *action* itself—and naturally, the *causes of action*—must be based on the violation of a statute related to firearms. If the State lacks a cause of action to bring the kind of "action" the exception envisions, *id.*, then it has not satisfied the requirement of the narrow exception as described in *Smith & Wesson*, no matter what other statutes it may reference. *See also Beretta*, 524 F.3d at 404.

16

The State's nuisance claims likewise fail to satisfy the predicate exception. Those claims allege that the Defendants' activities "constitute . . . public nuisance[s]." *See* Am. Compl. ¶¶ 495, 500. They are brought under New York General Business Law § 898-b. But these counts too are prohibited by the PLCAA because they are premised on "general tort theories of liability that traditionally have been embodied in the common law." *Ileto*, 565 F.3d at 1135.

And here again, this Court's "solely" analysis cannot support a denial of PLCAA immunity because that reasoning is foreclosed by *Smith & Wesson*, where the plaintiff likewise alleged some conduct by the defendant itself. *Compare* Initial MTD Op. at 29–30 (citing § 7902(b)(1)); *see id.* at 30 ("The State's public nuisance claim is also based on Defendants' own conduct[.]"), *with, e.g.*, *Smith & Wesson*, 605 U.S. at 297 (discussing the defendant's alleged "design and marketing decisions" (citation omitted)).

### 2. Even if the State Could Otherwise Satisfy the Predicate Exception, the State Has Not Established Proximate Causation.

Next, even if the Court disagrees with all the foregoing, Congress was explicit that "an action" under the predicate exception must be based on a Defendant's violation that "was a *proximate cause* of the harm for which relief is sought." *Smith & Wesson*, 605 U.S. at 286 (quoting 15 U.S.C. § 7903(5)(A)(iii)) (emphasis added). The State has failed to allege proximate cause.

To be sure, the Supreme Court in *Smith & Wesson* did not reach the question of proximate cause because it decided the case in Smith & Wesson's favor on other grounds. But the Court did reverse the First Circuit's decision in *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511 (1st Cir. 2024), an authority on which this Court principally relied in its earlier analysis. *See* Initial MTD Op. at 27–29; *see Smith & Wesson*, 605 U.S. at 299 (reversing and remanding).

In the PLCAA, Congress has already identified the intervening actions that break the causal chain and bar a liability action—the criminal or unlawful misuse of qualified products by third parties. *See District of Columbia v. Beretta USA Corp.*, 940 A.2d 163, 171 (D.C. Ct. App. 2008) (noting the government needed "proof" of "proximate cause" "*despite* the misuse of the firearm by a third person"; it is "implausible" Congress would permit an action based on a mere "causal link" (emphasis added)).

The State has made no effort to allege proximate causation on any count. And the Amended Complaint repeatedly highlights the alleged criminal misconduct of third parties. *See, e.g.*, Am. Compl. ¶¶ 227, 231, 238–39, 241 (alleging criminal misconduct of various individuals). Thus, far from being a case where Defendants must wait to accumulate evidence about the intervention of third parties to break the causal chain of any alleged harm, the State admits the role of third parties on the face of the complaint. *Cf. Podpeskar v. Dannon Co.*, No. 16-cv-8478-KBF, 2017 WL 6001845, at *3 (S.D.N.Y. Dec. 3, 2017).

III.    **The Fair Notice Issues of *VanDerStok* Are Even Further Heightened Here.**

Finally, the Court's reasoning in *VanDerStok* amplifies the serious fair notice issues present in this lawsuit brought by a State to impose retroactive civil liability following a change in the federal regulator's position on particular products. The Supreme Court repeatedly recognized that, "[i]n its 2022 rule, ATF sought to *expand* th[e] definition" of frames or receivers to include "a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit." *VanDerStok*, 604 U.S. at 465 (citation omitted) (emphasis added); *see id.* at 480 (noting that "[w]ithout question, ATF's new rule seeks to regulate a greater variety of unfinished frames and receivers than the agency has in the past").

18

Justice Kavanaugh explained that "an individual or business acting in good faith might nonetheless have substantial difficulty determining when weapon parts kits or unfinished frames or receivers qualify as firearms—and thereby become subject to the Gun Control Act's licensing, recordkeeping, serialization, and background-check requirements." *Id.* at 486 (Kavanaugh, J., concurring).  And he emphasized the due process and fair notice concerns that would arise if someone faced enforcement despite being unaware that their conduct violated the law.  *Id*. at 486–87.

Those concerns are even more serious here.  Not only does the State attempt to impose backward-looking liability following a change in the federal regulatory landscape, but it does so following repeated assurances that the GCA did not reach unfinished frames or receivers like those at issue.  This is not merely a question of clarity going forward, but of private parties being hailed into Court and threatened with massive penalties for complying with administrative guidance that was operative and valid *at the relevant time*. Liability may not fairly be imposed on those who followed all operative and authoritative guidance.

The fair notice principles aired in *VanDerStok* are relevant here for at least two reasons. First, the lack of fair notice goes directly to the predicate exception's requirement that Defendants "knowingly" violated a predicate statute. If, as Justice Kavanaugh points out, fair notice of prohibited conduct can be questioned *going forward*, surely knowledge cannot be imputed for the same interpretation going *backwards* before the Supreme Court's opinion and ATF's acknowledged change in law. Second, the principle of fair notice should, if not entirely defeat the State's suit, at least limit the relevant alleged conduct to that which occurred *after* the ATF's change in rule. After all, the Supreme Court recognized that ATF sought to "expand" existing prohibitions with its 2022 rule change. *VanDerStok*, 604 U.S. at 465. Thus, to the extent

19

Defendants may be held liable at all, the only relevant conduct would be any conduct occurring after the 2022 change in rule, when Defendants at least arguably had *some* notice—although query whether that notice would be sufficient, *id.* at 486–87 (Kavanaugh, J., concurring)—that the alleged products could potentially be considered firearms under federal law.

***

The State has not hidden its ambitious intentions with this lawsuit: to "fix[]" the State's "public health and safety crisis caused by gun violence." SAC ¶ 1, p. 17. But this suit is not the proper channel for that lofty goal. For one, the State has not even attempted to allege on a product-by-product basis that the unfinished component parts the State has focused on are "firearms" under federal law. For another, even if it could plausibly allege that all of the alleged products were firearms under federal law, Congress has barred the very kind of suit the State has brought here. Recent Supreme Court precedent makes both conclusions all the more clear, and this case should be dismissed. The State's policy goals should be pursued not via retrospective liability in litigation, but via the legislative branch.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss should be granted.

Date: May 21, 2026                              Respectfully submitted,

| | |
|---|---|
| Steven Jay Harfenist | /s/David H. Thompson |
| **HARFENIST KRAUT &** | **COOPER & KIRK, PLLC** |
| **PERLSTEIN, LLP** | David H. Thompson* |
| 3000 Marcus Avenue | Brian W. Barnes* |
| Suite 2e1 | Athanasia O. Livas* |
| Lake Success, NY 11042 | 1523 New Hampshire Ave., NW |
| 516-355-9600 | Washington, DC 20036 |
| Fax: 516-355-9601 | (202) 220-9600 |
| sharfenist@hkplaw.com | Fax: (202) 220-9601 |
| *Attorney for Arm or Ally LLC* | dthompson@cooperkirk.com |

20

V.R. Bohman
Cameron Schlagel
**SNELL & WILMER, LLP**
1700 S. Pavilion Center Dr. Suite 700
Las Vegas, NV 89135
(702) 784-5200
vbohman@swlaw.com
cschlagel@swlaw.com
*Attorney for Blackhawk Manufacturing
Group, Inc.*

Matthew D. Fender
**MCGUIREWOODS LLP**
Gateway Plaza, 800 East Canal Street
Richmond, VA 23219
804-775-1076
Fax: 804-698-2209
mfender@mcguirewoods.com

Jason Cowley
**MCGUIREWOODS LLP**
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
704-343-2030
jcowley@mcguirewoods.com

Jean Paul Bradshaw, II
**LATHROP GPM LLP**
2345 Grand Blvd., Ste. 2200
Kansas City, MO 64108-2612
816-460-5507
Fax: 816-292-2001
jeanpaul.bradshaw@lathropgpm.com

Shoshanah Mae Shanes
**LATHROP GPM LLP**
7701 Forsyth Blvd.
Suite 500
Clayton, MO 63105
224-456-7099
shoshanah.shanes@lathropgpm.com

bbarnes@cooperkirk.com
alivas@cooperkirk.com
*Attorneys for Brownells, Inc., a/k/a
Brownells or Bob Brownell's; Salvo
Technologies, Inc., a/k/a 80P Builder or
80P Freedom Co.; Primary Arms, LLC;
and Rock Slide USA, LLC*

\*Admitted *pro hac vice*

Ryan Lawrence Erdreich
Richard Frederick Brueckner, Jr.
**PISCIOTTI LALLIS ERDREICH**
30 Columbia Turnpike
Suite 205
Florham Park, NJ 07932
973-245-8100
rerdreich@pisciotti.com

Christopher Adams
**GREENBAUM ROWE SMITH &
DAVIS
NEW JERSEY**
331 Newman Springs Road
Building 1, Suite 122
Red Bank, NJ 07701
732-476-2692
cadams@greenbaumlaw.com

Jessica Maria Carroll
**GREENBAUM ROWE SMITH &
DAVIS**
75 Livingston Ave.
Roseland, NJ 07068
973-577-1910
Fax: 973-577-1911
jcarroll@greenbaumlaw.com
*Attorneys for Rainier Arms, LLC*

Tobias Jacob Fischer
**MCGUIREWOODS LLP**
1251 Avenue of the Americas
20th Floor
New York, NY 10020
212-548-2143
tfischer@mcguirewoods.com
*Attorneys for KM Tactical*

*Attorneys for Defendants*

22