**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>        Plaintiff,<br><br>    v.<br><br>ARM OR ALLY, LLC; BLACKHAWK MANUFACTURING GROUP, INC., A/K/A 80 PERCENT ARMS, INC. OR 80 PERCENT ARMS; SALVO TECHNOLOGIES, INC., A/K/A 80P BUILDER OR 80P FREEDOM CO.; BROWNELLS, INC., A/K/A BROWNELLS OR BOB BROWNELL'S; GS PERFORMANCE, LLC, A/K/A GLOCKSTORE OR GSPC; INDIE GUNS, LLC; KM TACTICAL; PRIMARY ARMS, LLC; RAINIER ARMS, LLC; AND ROCK SLIDE USA, LLC,<br><br>        Defendants. | Case No. 22-cv-06124 (JMF) |

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

David H. Thompson*
Brian W. Barnes*
**COOPER & KIRK PLLC**
1523 New Hampshire Ave., NW
Washington, DC 20036
Phone: (202) 220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
*Admitted *pro hac vice*

*Attorneys for Defendants Brownells, Inc., a/k/a Brownells or Bob Brownell's, Salvo Technologies, Inc., a/k/a 80p Builder or 80p Freedom Co., Primary Arms, LLC, and Rock Slide USA, LLC*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................1

    I.      The State Has Not Plausibly Alleged that Defendants' Unfinished Frames or Receivers Are "Firearms" Under Federal Law. ............................................................1

    II.    Even If Unfinished Frames or Receivers Were Firearms, the PLCAA Guarantees Most Defendants Immunity from Suit. ...........................................................................6

    III.   The State Has Not Established Proximate Causation and this Court's Previously Cited Precedent on Proximate Cause Was Overruled. ........................................................9

    IV.   The Fair Notice Issues Aired in *VanDerStok* Further Require Partial or Full Dismissal. ............................................................................................................................9

CONCLUSION ...................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page(s)**

*Bondi v. VanDerStok*,
    604 U.S. 458 (2025)..........................................................................1, 2, 3, 4, 5, 9, 10, 11

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025)..............................................................................................1, 6, 9

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
    91 F.4th 511 (1st Cir. 2024)..........................................................................................9

*Humphries v. Mitsubishi Chem. Am., Inc.*,
    1:23-cv-06214, 2026 WL 1493504, at \*6 (S.D.N.Y. May 28, 2026)..................................5

**Codes and Laws**

18 U.S.C. § 921(a)(3)(B) ........................................................................................................1

15 U.S.C. § 7903(5)(A)...........................................................................................................8

Jose Webster Untraceable Firearms Act,
    *codified as amended at* N.Y. Penal Law § 265.01(8) ............................................................10

**Other Authorities**

Reply Br. of Petitioners at 1, *VanDerStok*, 604 U.S. 458 (U.S. Sep. 12, 2024) (No. 23-852) ....4, 5

*Senate Bill S14A*, N.Y. STATE SENATE, https://perma.cc/NK9Y-2AR7 ........................................10

Int. No. 1553-A § 3, N.Y. CITY COUNCIL, https://perma.cc/M849-BTFX ....................................10

**INTRODUCTION**

The State largely bypasses the core holdings of the Supreme Court's recent precedents, as well as Defendants' arguments applying them to this case. Meanwhile, the State accuses Defendants of relitigating issues already decided by this Court. In reality, it is the State that continues to make the same arguments without recognition of the Supreme Court's recent instructions. Both *Bondi v. VanDerStok*, 604 U.S. 458 (2025), and *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025), counsel toward dismissal of the State's suit.

**ARGUMENT**

I.      **The State Has Not Plausibly Alleged that Defendants' Unfinished Frames or Receivers Are "Firearms" Under Federal Law.**

The State alleges that Defendants violated federal law by selling unfinished frames and receivers into New York. The necessary legal premise of the State's suit is that all unfinished frames and receivers are and have always been "firearm[s]," as defined by the Gun Control Act, 18 U.S.C. § 921(a)(3)(B), and therefore were subject to regulation even *before* ATF changed its rule to define some of these items as firearms and *before* the Supreme Court declared that *some* versions of these products can legally be defined as firearms consistent with the Gun Control Act.[1] The problem with the State's theory is it lacks factual allegations supporting it, as required by *VanDerStok*'s product-by-product framework.

If *VanDerStok* makes anything clear, it is that a plaintiff may not rely on general or facial reasoning to define an entire class of products. *See VanDerStok*, 604 U.S. at 459 ("While other products may be so far from finished that they cannot fairly be described as frames or receivers,

---

[1] As explained further *infra*, the state and local laws on which the State relies cannot fully cover the conduct the State alleges because those laws have effective dates beginning in 2022 and 2020, respectively. So the State must establish that the alleged products were always firearms under federal law to support the bulk of its suit.

the facial challenge fails because the statute plainly reaches some partially complete items."); *id.* at 513 (Alito, J., dissenting) ("The Court points to a gun kit that is all-but-assembled and a frame that is as close to completion as possible. As applied to those extreme situations, the Court holds— and I agree—the rule does not deviate from the statute." (citations omitted)).

Even still, the State continues to discuss "ghost guns" in the abstract, sweeping in the broadest generalities and only discussing those products that are *most* easily converted to a working firearm. *See* Pl's. Opp. to Defs.' Mot. to Dismiss, Doc. 289 at 7 (June 4, 2026) ("MTD Resp."). But the Supreme Court foreclosed that approach and emphasized that unfinished frames or receivers may not be classified categorically. Per the Court's decision, the particulars of the products alleged *matter* for purposes of whether those products may qualify as a firearm under federal law. That instruction is especially relevant here, where the State has chosen to bring a sweeping collective suit against ten defendants who have made or sold many different products at different times.

The Supreme Court's rejection of the argument that *no* unfinished frames or receivers could constitute firearms, *see id.* at 5 (arguing that the Supreme Court rejected the Fifth Circuit's reasoning also rejected by this Court), does not hand victory to the State, as it seems to think. True enough, the Supreme Court foreclosed the Defendants' first-line argument that unfinished frames or receivers categorically cannot be firearms. But the Court *also* did not adopt the State's position that *all* unfinished frames or receivers categorically *are* firearms. *See VanDerStok*, 604 U.S. at 477 ("Once again, the plaintiffs ask us to endorse that categorical conclusion. And, once again, we find we cannot. The GCA reaches . . . some 'partially complete' frames or receivers." (citation omitted)). Instead, the Court adopted a middle approach wherein unfinished frames or receivers *may* be firearms—but the inquiry depends entirely on the specifics of the product alleged and

2

requires a product-by-product analysis. The statute does not "reach[] every piece or part that can be used to produce a firearm," or "any combination of parts susceptible of conversion into a frame or receiver with sufficient time, tools, and expertise." *Id*. at 474, 481.

To be sure, the Second Amended Complaint does contain an extensive number of paragraphs related to the various sales and activities of Defendants. *See* MTD Resp. at 10 (boasting that the Second Amended Complaint contained "467 paragraphs" on the Defendants' activities) (citing Second Amended Compl., Doc. 157 ¶¶ 106-573 (Mar. 13, 2023) ("SAC")). Yet despite their considerable breadth, these allegations fail to accomplish what *VanDerStok* requires. For example, take the first Defendant listed: Arm or Ally. The State's allegations focus on the number of packages Arm or Ally sent, SAC ¶ 130, the number of visitors on its website, *id.* ¶ 117, and descriptions of people Arm or Ally sold to and the later wrongdoings of those third parties, *see, e.g.*, *id.* ¶¶ 134–40; ¶¶ 143–47. But there is no analysis of Arm or Ally's actual products. The State simply asserts that some packages "contained unfinished frames and receivers." *Id.* at ¶ 133. The same is true for the other Defendants. *See generally id.* ¶¶ 106–573. Under *VanDerStok*, not every unfinished frame or receiver is a firearm, and simply calling something an "unfinished frame or receiver" is not enough to establish that product as a firearm under federal law.[2]

Seeking to avoid the reality that its Complaint simply lacks the requisite product-by-product allegations required by *VanDerStok*, the State diverts to non-sequiturs that do nothing to improve its argument. For example, the State emphasizes that some Defendants offered video links

---

[2] The notion that the Supreme Court simply conducted an "eye test" belies the Court's extensive analysis. MTD Resp. at 9. The *VanDerStok* Court did not hold that a product is a "firearm" merely because it visually resembles a finished frame. Rather, the Court's analysis of the Polymer80 product turned on the fact that the "Buy Build Shoot" kit contained "'*all of the necessary components* to build' a Glock-variant semiautomatic pistol" and could be assembled in about twenty minutes using common tools. *VanDerStok*, 604 U.S. at 468–69 (emphasis added). The State has not alleged that any Defendant's products satisfy the *VanDerStok* framework.

3

or call lines to help customers put their parts kits together. *See*, *e.g.*, MTD Resp. at 8 ("Some of the Defendants provide further assistance by uploading videos demonstrating how to 'transform this 'not a firearm' into a fully functioning 9mm handgun." (quoting SAC ¶ 376)); *see id.* (citing "a step-by-step guide" and "telephone 'tech line'"). To the extent these facts have any relevance, they show the opposite of what the State intends: that the parts kits were difficult enough to put together that private gunsmiths who purchased them had to call in for help or watch video tutorials in order to produce a functioning firearm. And again, the statute does not "reach[] every piece or part that can be used to produce a firearm," nor to "any combination of parts susceptible of conversion into a frame or receiver with sufficient time, tools, and expertise." *VanDerStok*, 604 U.S. at 474, 481.

And the State's argument that all unfinished frames or receivers qualify as statutory firearms because "they have no other function or purpose" than to ultimately become firearms is foreclosed by *VanDerStok*. MTD Resp. at 1, 8. After all, the Court held that some unfinished frames or receivers that also would serve no purpose but to ultimately become working firearms cannot be classified as firearms under federal law. *See VanDerStok*, 604 U.S. at 459 (acknowledging that the statute reaches "some" but not all unfinished frames or receivers).

The State also hinges much of its case on marketing statements some Defendants are alleged to have made to potential customers. *See* MTD Resp. at 8 ("The status of Defendants' products as 'firearms,' . . . are best demonstrated by Defendants' own marketing statements."). But Petitioners in *VanDerStok* highlighted the very same kinds of marketing statements. *See, e.g.*, Reply Br. of Petitioners at 1, *VanDerStok*, 604 U.S. 458 (U.S. Sep. 12, 2024) (No. 23-852) (collecting marketing statements including that conversion to a firearm only required "a small amount of finishing," was "dummy proof," "ridiculously easy," and "capable of completion in as

4

little as 15 minutes." (citation omitted)); *see id.* at 14–15 (similar). Yet marketing statements played no role in the Supreme Court's analysis. That makes sense, since sweeping marketing assurances have little role to play in a detailed product-by-product analysis. *See VanDerStok*, 604 U.S. at 468 (analyzing in detail the mechanics of one Polymer 80 kit). Were marketing statements relevant, the Court's decision could have been much shorter, simpler, and would have had no need for examining the particular mechanisms and functions of individual frames. *See id*. In sum, the Supreme Court paid no apparent mind to marketing puffery despite Petitioners highlighting them front-and-center, as the State does here.

Finally, the Complaint lumps all Defendants together and makes general allegations about them as a collective despite no alleged connection between Defendants. The State essentially admits that it has taken this liability-for-one, liability-for-all approach, but argues that this method of pleading is permissible. The State relies on *Humphries v. Mitsubishi Chem. Am., Inc*., for the proposition that "the Second Circuit has also made clear that Plaintiffs do not always need to 'separate out claims against individual defendants[.]'" No. 1:23-cv-06214, 2026 WL 1493504, at *6 (S.D.N.Y. May 28, 2026) (citation omitted); MTD Resp. at 10 (same). But even in that very same sentence (omitted from the State's recitation of the quote), the Court admonished that "'lumping' defendants together may in many instances be improper[.]" *Id.* And only where the plaintiff had alleged "the *same* common set of facts" as to "two fiduciary defendants" did the Court permit this group pleading. *Id.* (emphasis added). Here, by contrast, there is no alleged connection between Defendants and thus no same common set of facts. Indeed, Defendants sold different products, which would be clear if the State engaged in the product-by-product analysis directed by the Supreme Court.

5

II.    **Even If Unfinished Frames or Receivers Were Firearms, the PLCAA Guarantees Most Defendants Immunity from Suit.**

Even if this Court were to hold that the State's allegations suffice despite *VanDerStok*'s requirement of a product-by-product analysis, dismissal of the State's remaining claims would be proper because the PLCAA immunity applies to several Defendants here.[3]

The State claims that Defendants' arguments are "relitigating" issues on which *Smith & Wesson* had no bearing. *See* MTD Resp. at 19–20. That is mistaken. The State simply ignores the Supreme Court's critical holdings, which are binding and highly relevant. The State is the one that rehashes old arguments by arguing again that various laws of general applicability can circumvent the Supreme Court's narrow interpretation of the predicate exception without paying any mind to the Supreme Court's recent contrary instruction. *See id.* at 19–21.

*First*, the State spills much ink attempting to distinguish its suit from the one the Supreme Court barred in *Smith & Wesson*. Namely, the State contends that its suit targets acts committed directly by Defendants themselves, not harm caused by third parties. But the State ignores that Mexico's suit in *Smith & Wesson also* included allegations of upstream misconduct by gun manufacturers. *See Smith & Wesson*, 605 U.S. at 299. And despite the allegations of upstream misconduct by the manufacturer itself, the Supreme Court described the suit as "closely resembl[ing] the ones Congress had in mind" because it fundamentally sought to hold the manufacturer liable for "the harm caused by those who criminally or unlawfully use firearms." *Id.* at 299 (quotation marks omitted). For this reason alone, the State's theory cannot stand and the Court's earlier reasoning that the PLCAA only bars those suits that "solely" allege third-party

---

[3] Defendants agree, as already noted in their motion to dismiss opening brief and elsewhere, that the PLCAA does not apply to KM Tactical and Rock Slide USA, who are not manufacturers as defined by the PLCAA and thus not covered by the statute's grant of immunity. *See* MTD Resp. at 14 n.8.

misconduct is inconsistent with the Supreme Court's holding and reasoning. *Compare* Op. & Order, Doc. 245 at 24–25 (Feb. 23, 2024) ("Initial MTD Op."). By ignoring this critical point in binding precedent, the State has forfeited any contrary argument.

The gravamen of the State's complaint is not that Defendants participated in specific criminal transactions, but that Defendants' products ended up in the hands of criminals who misused them. That is precisely the theory the Supreme Court found barred by the PLCAA. *See id*. at 298-99. The absence of an intermediary distributor does not transform routine commercial activity into the kind of affirmative, directed misconduct required by *Smith & Wesson*.

*Second*, the State is wrong to assert that the Supreme Court did not recognize a broad view of the PLCAA. MTD Resp. at 17–18. The Court considered and rejected a "capacious" reading of the predicate exception that "would swallow most of the rule." *Smith & Wesson*, 605 U.S. at 299.

*Third*, the State ignores the Court's holding that the predicate exception requires plausible allegations that the manufacturer committed or aided and abetted a "*gun-sale violation*," *id.* at 286 (emphasis added), a "violation[] of *gun laws*," *id*. at 288 (emphasis added), or a "*firearms violation*[]," *id*. (emphasis added). In other words, "applicable" in the predicate exception refers to statutes specifically regulating guns—not statutes of general applicability like the ones the State attempts to invoke.

And the State's chosen statutes cannot meet the *Smith & Wesson* test for a violation of "gun laws." *Id.* at 288. The express application to "any person" or "any business" means the statutes are of "general applicability," not statutes directed toward firearms industry members for the violation of gun laws. Indeed, the General Business Law statutes are specifically entitled *general*. The State fails to address Defendants' argument that this holding forecloses this Court's earlier holding adopting the State's "nesting" theory of liability. *See* Initial MTD Op. at 25.

Further, even if *Smith & Wesson* recognized some carve-out for upstream conduct by the manufacturer (which it did not), the State's characterization of its suit as focusing only on conduct by the manufacturers is belied by the allegations in the Second Amended Complaint. The complaint focuses extensively on acts by third-party purchasers, including those charged with crimes. *See, e.g.*, SAC ¶¶ 140, 196, 230, 299, 359. Simply put, the Complaint seeks damages from Defendants "resulting from the criminal or unlawful misuse" of their products. 15 U.S.C. § 7903(5)(A). This is far removed from the situation where "a plaintiff can show . . . that, say, a [distributor] committed a gun-sale violation proximately causing the harm at issue[.]" MTD Resp. at 18 (quoting *Smith & Wesson*, 605 U.S. at 286). And only there "can [a suit] proceed, even though it arises from a third party's later misuse of a gun." *Smith & Wesson*, 605 U.S. at 286.

*Finally*, the State fails to address—and thus forfeits—Defendants' argument that *Smith & Wesson* renders this Court's earlier holding that PLCAA immunity applies only where a plaintiff seeks liability for conduct committed "*solely*" by third parties and not where conduct by the Defendants is alleged, *see* Initial MTD Op. at 24–25 (upholding the State's claims under New York Executive Law section 63(12) and New York General Business Law sections 349 and 350 on this basis), untenable. This Court found that Defendants' arguments could be "easily rejected" by pointing to conduct that the State alleged Defendants took themselves—selling, transporting, and marketing the products. *Id.* But the same was true in *Smith & Wesson*, where Mexico's suit likewise included allegations of upstream misconduct by gun manufacturers themselves, *see Smith & Wesson*, 605 U.S. at 294–98; *see also id.* at 297 (discussing alleged "design and marketing decisions"), yet the Supreme Court did not find these allegations to be a basis to deny PLCAA immunity. The same must be true here.

**III.     The State Has Not Established Proximate Causation and this Court's Previously Cited Precedent on Proximate Cause Was Overruled.**

The State largely ignores the substance of Defendants' arguments on proximate causation. True, the Supreme Court in *Smith & Wesson* did not reach the issue of proximate causation, as Defendants candidly acknowledged. *See* MTD Opening Br. at 17. But the Court *did* reverse the First Circuit's decision in *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511 (1st Cir. 2024), the authority on which this Court principally relied in its earlier proximate cause analysis. *Id.*; *see* Initial MTD Op. at 27–29; *see Smith & Wesson*, 605 U.S. at 299 (reversing and remanding). The First Circuit's decision no longer stands, and the analysis this Court adopted from that decision cannot continue to support the State's proximate cause theory.

**IV.     Fair Notice Issues Aired in *VanDerStok* Further Require Dismissal.**

Finally, the State cannot undermine the fair notice concerns raised in *VanDerStok*. The State attempts to narrow Justice Kavanaugh's concurrence so that its reasoning only applies in one narrow factual context. *See* MTD Resp. at 11–12. Meanwhile, the State accuses Defendants of mischaracterizing Justice Kavanaugh's opinion. But the passage Defendants quoted speaks for itself: "an individual or business acting in good faith might nonetheless have substantial difficulty determining when weapon parts kits or unfinished frames or receivers qualify as firearms—and thereby become subject to the Gun Control Act's licensing, recordkeeping, serialization, and background-check requirements." *VanDerStok*, 604 U.S. at 486 (Kavanaugh, J., concurring). The fundamental point is both clear and relevant: the new rule that an unfinished frame or receiver can qualify as a firearm raises serious concerns about fair notice and establishing mens rea even for *prospective* liability.

Here, the problem is heightened where the State seeks to impose retroactive liability for sales that occurred when the products in question were widely understood *not to be firearms*. The

State disputes this, asserting that it "is not seeking to hold Defendants retroactively liable following the promulgation of the 2022 rule." MTD Resp. at 12. But that cannot be right. As the Supreme Court acknowledged, unfinished frames or receivers were not considered firearms prior to ATF's rule change in 2022. *VanDerStok*, 604 U.S. at 465; *see id.* at 480 ("Without question, ATF's new rule seeks to regulate a greater variety of unfinished frames and receivers than the agency has in the past"). The federal regulator of firearms previously instructed Defendants—and the rest of the public—that "a frame or receiver parts kit" was not a firearm. *Id.* at 465. The State now seeks to punish Defendants for conduct committed in the past that was legal at the time it was committed. That is the definition of retroactive punishment. And it is not only retroactive punishment—it is retroactive punishment contrary to the past assurances of regulatory authority.

And to be clear, most of the State's case does require a finding that Defendants violated federal law, not just state or local laws. *Contra* MTD Resp. at 4 n.3. This is because New York State's statutory prohibition on sales of the relevant products only went into effect on April 26, 2022, and the effective date of the New York City ordinance was February 23, 2020. *See* Jose Webster Untraceable Firearms Act, *codified as amended at* N.Y. Penal Law § 265.01(8) ("This Act shall take effect on the one hundred eightieth day after it shall have become a law."); *Senate Bill S14A*, N.Y. STATE SENATE, https://perma.cc/NK9Y-2AR7 (bill signed by Governor on October 28, 2021); Int. No. 1553-A § 3, N.Y. CITY COUNCIL, https://perma.cc/M849-BTF. So, although the State tries to downplay the importance of the federal definition, state and local laws would only have potential relevance to sales alleged *after* those effective dates. For any conduct before those dates, the State's theory requires a plausible allegation that Defendants violated federal law.

10

The State argues that because all Defendants did not seek voluntary ATF classification for all of their products, they "knowingly" sold firearms in violation of federal law. *See* MTD Resp. at 13. But if the failure to seek optional regulatory guidance established mens rea, any person who fails to ask the government whether their conduct is legal could be deemed to have "knowingly" violated the law—an extraordinary proposition with no support in the law.

The fair notice principles aired in *VanDerStok* go directly to the predicate exception's requirement that Defendants "knowingly" violated a predicate statute. And fair notice should at least limit the relevant alleged conduct to that occurring after the ATF's rule change, which the Supreme Court recognized sought to "expand" existing prohibitions. *VanDerStok*, 604 U.S. at 465.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted.

Date: June 15, 2026                          Respectfully submitted,

Steven Jay Harfenist                         /s/David H. Thompson
**HARFENIST KRAUT & PERLSTEIN,**             **COOPER & KIRK, PLLC**
**LLP**                                      David H. Thompson*
3000 Marcus Avenue                           Brian W. Barnes*
Suite 2e1                                    1523 New Hampshire Ave., NW
Lake Success, NY 11042                       Washington, DC 20036
516-355-9600                                 (202) 220-9600
Fax: 516-355-9601                            Fax: (202) 220-9601
sharfenist@hkplaw.com                        dthompson@cooperkirk.com
*Attorney for Arm or Ally LLC*               bbarnes@cooperkirk.com
                                             *Attorneys for Brownells, Inc., a/k/a*
                                             *Brownells or Bob Brownell's; Salvo*
V.R. Bohman                                   *Technologies, Inc., a/k/a 80P Builder or*
Cameron Schlagel                             *80P Freedom Co.; Primary Arms, LLC;*
**SNELL & WILMER, LLP**                      *and Rock Slide USA, LLC*
1700 S. Pavilion Center Dr. Suite 700        *Admitted pro hac vice
Las Vegas, NV 89135
(702) 784-5200
vbohman@swlaw.com
cschlagel@swlaw.com
*Attorney for Blackhawk Manufacturing*
*Group, Inc.*

11

Matthew D. Fender
**MCGUIREWOODS LLP**
Gateway Plaza, 800 East Canal Street
Richmond, VA 23219
804-775-1076
Fax: 804-698-2209
mfender@mcguirewoods.com

Jason Cowley
**MCGUIREWOODS LLP**
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
704-343-2030
jcowley@mcguirewoods.com

Jean Paul Bradshaw, II
**LATHROP GPM LLP**
2345 Grand Blvd., Ste. 2200
Kansas City, MO 64108-2612
816-460-5507
Fax: 816-292-2001
jeanpaul.bradshaw@lathropgpm.com

Shoshanah Mae Shanes
**LATHROP GPM LLP**
7701 Forsyth Blvd.
Suite 500
Clayton, MO 63105
224-456-7099
shoshanah.shanes@lathropgpm.com

Tobias Jacob Fischer
**MCGUIREWOODS LLP**
1251 Avenue of the Americas
20th Floor
New York, NY 10020
212-548-2143
tfischer@mcguirewoods.com
*Attorneys for KM Tactical*

Ryan Lawrence Erdreich
Richard Frederick Brueckner, Jr.
**PISCIOTTI LALLIS ERDREICH**
30 Columbia Turnpike
Suite 205
Florham Park, NJ 07932
973-245-8100
rerdreich@pisciotti.com

Christopher Adams
**GREENBAUM ROWE SMITH & DAVIS NEW JERSEY**
331 Newman Springs Road
Building 1, Suite 122
Red Bank, NJ 07701
732-476-2692
cadams@greenbaumlaw.com

Jessica Maria Carroll
**GREENBAUM ROWE SMITH & DAVIS**
75 Livingston Ave.
Roseland, NJ 07068
973-577-1910
Fax: 973-577-1911
jcarroll@greenbaumlaw.com
*Attorneys for Rainier Arms, LLC*

*Attorneys for Defendants*

12